**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Philip Charvat on behalf of himself and others similarly situated, | ) ) | |
|     Plaintiff, | ) ) | Case No. 1:12-cv-5746 |
| v. | ) ) | Judge Zagel |
| Travel Services, | ) | Magistrate Judge Valdez |
| Carnival Corporation & PLC, | ) | |
| Royal Caribbean International, | ) | |
| Norwegian Cruise Line | ) | |
|     Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS[1]**

## I. INTRODUCTION

Evidence uncovered to date, even without the benefit of discovery, demonstrates that a massive campaign of illegal telemarketing is ongoing, and has been ongoing for several years, that promotes the goods and services of the defendants Carnival Corporation, Royal Caribbean International, and Norwegian Cruise Line (collectively, the "Cruise Defendants"). As detailed *infra.,* Mr. Charvat, through his counsel, has already uncovered evidence to indicate that the

---

[1] The Cruise Defendants have filed two Motions to Dismiss. The first motion (Document #28 filed on 9/28/2012) was filed on behalf of Carnival. The second motion (Document #31 filed on 10/3/2012), was filed on behalf of Royal Caribbean and Norwegian. This opposition memorandum responds to both motions. In addition, the plaintiff has moved to amend the Class Action Complaint, in part, to correct minor deficiencies in the naming of the corporate defendants and to identify "Travel Services"- which is actually several corporate entities operating out of the same address and all involved in telemarketing on behalf of Carnival, Royal Caribbean and Norwegian. The Second Amended Class Complaint also discloses in more detail the exact nature of the illegal telemarketing at issue in this case, and the nature of the relationships between the various defendants all recently discovered by class counsel as a result of their ongoing investigation. A copy of the proposed Second Amended Class Action Complaint is attached at Exhibit 1. In addition, the Second Amended Complaint does not include a count for identification violations under the TCPA. Accordingly, class counsel assent to this Court's dismissal of Count Two of the Amended Complaint that asserts a claim for violations of the TCPA's identification requirements.

Cruise Defendants are utilizing an Illinois based telemarketing call center, using the fictitious trade name "Travel Services," to promote their goods and services via widespread via pre-recorded message (a practice known as "Robocall" telemarketing). Robocall telemarketing without a consumers' prior express consent is prohibited by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b). The Cruise Defendants have moved to dismiss. They claim they are not liable for Robocalls transmitted on their behalf by Travel Services, and from which they unquestionably profit and benefit, because they did not "initiate" the Robocalls. The Cruise Defendants, in an effort to escape massive liability, contend that "initiate," as that term is set forth at 47 U.S.C. §227(b), means to physically dial. The Cruise Defendants claim that since they did not physically dial the Robocalls at issue, they did not "initiate" such calls and bear no responsibility for any violations of the TCPA- even though they unquestionably profited and benefitted from such illegal calls.

As detailed below, the position of the Cruise Defendants is contrary to case law exactly on point from District Courts within the Seventh Circuit, and is contrary to the common definition of the term "initiate", particularly in the context of its interpretation as it applies to a consumer protection statute. Such position is also contrary to the Federal Communications Commission's ("FCC") long standing warning that liability for TCPA violations extends past the entity that physically dials the call to those on whose behalf such a call is made. For these reasons, the motions to dismiss should be denied.

## II. RELEVANT FACTS

### A. The Calls to Mr. Charvat

On or about February 11, 2011, Mr. Charvat received a telephone call on his residential telephone line ("Call One"). Call One was a pre-recorded message that informed Mr. Charvat that he had been "selected" to receive a "free" cruise with Carnival, Royal Caribbean or Norwegian Cruise Lines. Call One was connected to an individual named "Sampson" who stated he worked for a company called "Travel Services." Sampson informed Mr. Charvat that Travel Services was running a one day promotion for a free cruise to "fill" empty rooms for the cruise lines of the Cruise Defendants. Sampson informed the plaintiff that Travel Services was a "vendor" of Carnival, Royal Caribbean and Norwegian.[2]

On or about June 11, 2011, Mr. Charvat received a telephone call on his residential telephone line ("Call Two"). Call Two was a pre-recorded message that informed Mr. Charvat that he had been "selected" to receive a cruise with Carnival, Royal Caribbean or Norwegian. Call Two was then transferred to a live representative who stated they worked for "Travel Services." When Mr. Charvat identified himself, Call Two was terminated.[3]

On or about or about September 8, 2011, Mr. Charvat received a telephone call ("Call Three") on his residential telephone line. Call Three was a pre-recorded message that informed Mr. Charvat that he had been "selected" to receive a cruise with Carnival, Royal Caribbean or Norwegian. Call Three was connected to an individual named "Marie" who stated she worked

---

[2] See Exhibit 1, Proposed Second Amended Class Action Complaint at Paragraphs 28-34.
[3] Id. at Paragraphs 35-38.

for a company called "Travel Services." "Marie" informed Mr. Charvat that Travel Services was running a one day promotion for Royal Caribbean, Carnival or Norwegian.[4]

On or about July 9, 2012, Mr. Charvat received a telephone call on his residential telephone line ("Call Four"). Call Four was a pre-recorded message that informed Mr. Charvat that he had been "selected" to receive a cruise with Carnival, Royal Caribbean or Norwegian. Call Four was connected to an individual named Joanna Harrison. Ms. Harrison informed Mr. Charvat that the Defendants Carnival, Royal Caribbean and Norwegian "hired" Travel Services "to help them fill up empty cabins."[5]

### B. The Allegations Set Forth In The First Amended Class Complaint

In the First Amended Class Action Complaint, which is the subject of the pending motions to dismiss, Mr. Charvat alleges that:

- He did not consent to receive robocalls from any of the defendants;[6]

- He did not have a relationship with any of the defendants and did not fill out any "contest entry form", as indicated in the pre-recorded messages that were delivered to his residential phone line;[7]

- Travel Services was a "vendor" of the defendant cruise lines, who "hired" Travel Services to fill up cabin rooms aboard their ships;[8]

- Carnival, Royal Caribbean and Norwegian Cruise Lines retained Travel Services, and similar entities, to sell their products and services;[9]

---

[4] Id. at Paragraphs 39-44.
[5] Id. at Paragraphs 45-50.
[6] See Amended Complaint (Dkt. No. 23) at Paragraph 38.
[7] Id at Paragraph 37.
[8] Id at Paragraphs 12 and 33.
[9] Id at Paragraph 52.

- Carnival, Royal Caribbean and Norwegian Cruise Lines accepted the business brought to them by Travel Services and similar entities.[10]

### C. The Allegations Set Forth In The Proposed Second Amended Class Complaint

As set forth in the Proposed Second Amended Class Complaint, neither Mr. Charvat nor anyone in his family, have any relationship with any of the Defendants, did not consent to receive Robocalls from the Defendants, and did not fill out any "contest entry form" as indicated in the pre-recorded message.[11] Neither Mr. Charvat nor anyone in his family gave their prior express consent to receive Robocalls from or on behalf of the Defendants. In addition, Mr. Charvat alleges in the Second Amended Class Action Complaint that:

- Carnival, Royal Caribbean and Norwegian authorized Travel Services to telemarket on their behalf.

- Carnival, Royal Caribbean and Norwegian allowed Travel Services to telemarket using their trade names.

- Carnival, Royal Caribbean and Norwegian allowed Travel Services to prominently display their corporate logos on Travel Services web sites.

- Carnival, Royal Caribbean and Norwegian had the authority and ability to control the telemarketing practices of Travel Services.

- Carnival, Royal Caribbean and Norwegian knew that Travel Services was engaged in telemarketing on their behalf via Robocall and failed to inquire as to whether Travel Services' marketing practices were in compliance with the law.

---

[10] Id at Paragraph 53.
[11] See Exhibit 1, at Paragraphs 51-52. In the past, the Cruise Defendants have insinuated that someone in Mr. Charvat's household consented to receive Robocalls from the Cruise Defendants. Counsel have been asked to produce evidence of such purported consent. Aside from the insinuation, which has been ample, nothing has been produced.

- Carnival, Royal Caribbean and Norwegian received telemarketing complaints from consumers explicitly informing these entities that Travel Services was engaged in illegal Robocall telemarketing.

- In response, Carnival, Royal Caribbean and Norwegian referred such complaints to Travel Services and took no action to discipline Travel Services.

- Carnival, Royal Caribbean and Norwegian all benefitted and profited by Robocall telemarketing conducted on their behalf by Travel Services.

- By authorizing or allowing Travel Services to telemarket on their behalf, Carnival, Royal Caribbean and Norwegian all caused, facilitated, or set going the Robocall telemarketing campaign at issue in this litigation.[12]

### III. APPLICABLE TELEMARKETING LAW

#### A. *The TCPA Prohibits Telemarketing Via Robocall*

On December 20, 1991, Congress enacted the TCPA, in an effort to address certain telemarketing practices widely considered invasive of consumer privacy. In enacting the TCPA, Congress specifically imposed heightened restrictions on the widespread practice of telemarketing via Robocall:

> It is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape of a voice recording service, and do not disconnect the line even after the customer hangs up the telephone. For all these reasons, it is legitimate and consistent with the Constitution to impose greater restrictions on automated calls than on calls placed by lived persons.

---

[12] Id. at Paragraphs 53-61.

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 2736, 2737, at para. 25 (April 17, 1992). With respect to the Cruise Defendants' motion to dismiss, subsection 227(b)(1)(B) of the TCPA provides:

> It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States - (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior ex-press consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

### IV. ARGUMENT

#### A. *The Pending FCC Referral Regarding Liability for Third Party Robocall Telemarketing and the FCC's Consistent Position Regarding Liability*

The question as to the factors to consider when determining whether an illegal Robocall is made for a defendant's benefit by a third party, thereby subjecting the defendant to TCPA liability, is currently pending before the FCC. This matter is summarized below.

In 2009, Mr. Charvat sued Echostar Satellite, the national provider of DISH satellite television services and a serial violator of the TCPA, after he received numerous Robocalls promoting DISH goods and services ("Charvat v. DISH"). Mr. Charvat alleged that DISH was liable for calls made on behalf of DISH even if such calls were made by third parties. After full discovery, DISH moved for summary judgment, claiming that since it did not physically dial the calls at issue, it was not responsible for any violation of telemarketing law. The trial judge granted summary judgment in favor of DISH. *See Charvat v. Echostar Satellite, LLC, 676 F.Supp.2d 668 (S.D.Ohio Dec. 15 2009)*.

Mr. Charvat appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit then sought the guidance from the Federal Communications Commission, via an *amicus brief,* as to whether DISH was liable for Robocalls made on its behalf but physically dialed by third parties. As to DISH's claim that it could not be liable for calls that it did not physically "initiate," the FCC unequivocally advised the Sixth Circuit:

> *In the view of the federal government, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call.* ***Under those circumstances, the entity is properly deemed to have initiated the call through another.***

See Exhibit 2, Brief For The Federal Communications Commission and the United States as Amici Curiae, submitted to the Sixth Circuit Court of Appeals in Charvat v. Echostar Satellite at *9-11, No. 09-4525 (November 15, 2010). In its submission, the FCC went further to explain that "*its rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations of the TCPA."* Id. at 10.

Accordingly, the FCC recognized that DISH could be liable for Robocalls physically dialed by a third party so long as the Robocalls were made for the benefit of DISH. The Sixth Circuit then granted the FCC's request and referred the questions on appeal to the FCC for its review, resolution and its ultimate referral back to the Sixth Circuit for disposition. *See Charvat v. Echostar Satellite, LLC, 630 F.3d 459 (6th Cir. Dec. 30, 2010)*[13]. Thereafter, the parties in Charvat v. DISH filed a petition with the FCC setting forth the issues to be resolved. In response to the FCC's request for comments on these issues, the United States Department of Justice, the

---

[13] In support of its Motion to Dismiss, Carnival cites to *Charvat v. Echostar Satellite, LLC, 630 F.3d 459 (6th Cir. Dec. 30, 2010)* but does not reference that the Sixth Circuit has sought the FCC's guidance as to the exact legal issue raised by the Cruise Defendants in their Motions to Dismiss.

Federal Trade Commission and the Attorneys General from California, Illinois, North Carolina and Ohio, all submitted extensive briefing and commentary unanimously *rejecting* the assertion advocated for here by the Cruise Defendants, that an entity who benefits from illegal Robocall telemarketing, conducted on its behalf, may avoid liability for such calls if such calls were physically transmitted by third parties.[14] As of this date, the FCC has yet to rule. It should be noted, however, that the FCC in its amicus submission to the Sixth Circuit in Charvat v. DISH has already made clear that entities like the Cruise Defendants can "initiate" a Robocall through a third party such as Travel Services, and liability for a TCPA Robocall violation is not limited to the single entity that physically dials the call.

> **B. The Entity That Benefits From A Telemarketing Call Both "Initiates" The Call and Is Responsible To Ensure Compliance With The TCPA. As Such, The <u>Cruise Line Defendants Are Responsible for the TCPA Violations Alleged</u>**

Ever since the TCPA was enacted, the FCC, the entity explicitly authorized by Congress to interpret and enforce the TCPA, has repeatedly made clear that the TCPA's broad restrictions on various forms of "telephone solicitations" cannot be evaded simply by utilizing third parties to physically transmit illegal calls. The FCC has repeatedly warned:

> We take this opportunity to reiterate that a company on whose behalf a *telephone solicitation* is made bears the responsibility for *any* violation of our telemarketing rules and calls placed by a third party on behalf of that company *are treated as if the company itself placed the call.*

---

[14] The Executive Summary of the States of California, Illinois, North Carolina and Ohio relating to the FCC CG Docket No. 11-50; the Comment of the Federal Trade Commission; the Comments of the United States; the Reply Comments of the States of California, Illinois, North Carolina and Ohio; the Reply Comment of the Federal Trade Commission, and the Comment of the United States, are all attached as Exhibit 3.

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 20 F.C.C.R. 13664 at ¶7 (August 17, 2005) (emphasis added). *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability *in the context of a Robocall* sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).[15]

Simply stated, if a telephone solicitation in violation of any provision of the TCPA is made for an entity's benefit by a third party, the FCC has opined that the solicitation should be treated as if it was made by the entity itself. A consumer need not prove that the entity who benefited from a telephone solicitation or unsolicited advertisement that was made was directly involved in the telemarketing at issue, or controlled the methods and means of such telemarketing. In this regard, the TCPA is essentially a strict liability statute. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 2009 WL 2496568 at *3 (N.D.Ill. Aug. 12, 2009).[16]

---

[15] A copy of this opinion in which the FCC explicitly recognizes that where Robocalls are made by a third party, liability for Robocall telemarketing in violation of the TCPA extends to the entity for who's benefit such a call was made, is attached at Exhibit 4. *See also In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order,* 10 F.C.C.R. 12391 at ¶13 (1995) ("our rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations"); *See also* the Comment of the Federal Trade Commission; the Comments of the United States; the Reply Comments of the States of California, Illinois, North Carolina and Ohio; the Reply Comment of the Federal Trade Commission, and the Comment of the United States, at Exhibit 3.

[16] *See also Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004), *aff'd* 442 F.2d 1239 (10th Cir. 2006) (same); *Penzer Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008); *Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading Pa.*, 314 F.Supp.2d 1094, 1103 (D.Kan. 2004) (same);

In an attempt to avoid liability for illegal telemarketing conducted on their behalf, and from which they undeniably benefit, the Cruise Defendants urge a narrow and restrictive reading of particular sections of the TCPA that ignores the manner in which the TCPA has been interpreted and enforced by the FCC, and the courts, for the past twenty years. Specifically, the Cruise Defendants argue that since explicit "on behalf of" language does not appear in the text of the Robocall prohibition found at 47 U.S.C. 227 § (b)(1)(B), the only entity that can be liable for Robocalls violative of the TCPA is the single entity that "initiates" the call. The Cruise Defendants then go on to contend that "initiate"- as that term appears in the TCPA's prohibition against Robocall telemarketing found at 47 U.S.C. 227 § (b)(1)(B)- means to physically dial a call.

First, and most elementary, the Cruise Defendants offer no support for their claim that the definition of the term "initiate" as it appears in the TCPA's Robocall prohibition found at 47 U.S.C. 227 § (b)(1)(B), is somehow limited to the individual or entity who physically dials the Robocall. The definition of "initiate" is "to cause or facilitate the beginning of; set going." *Merriam-Webster Dictionary,* www.merriam-webster.com). By authorizing the Cruise Defendants to telemarket on their behalf, by allowing Travel Services to telemarket using their trade names, by allowing Travel Services to prominently display the logos of the Cruise Defendants on their web sites, and by compensating Travel Services for selling cruises, the Cruise Defendants facilitated the beginning or and/or set into motion the facts that ultimately led to the illegal Robocall telemarketing campaign at issue. The Cruise Defendants' cramped reading of the term "initiate" would also fail to effectuate the TCPA's intent to protect consumers from intrusive and abusive telemarketing practices and

---

*Accounting Outsourcing, LLC, v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ("the TCPA ... impose[s] strict liability for [its] civil damages provisions").

11

should be rejected. Under the Cruise Defendants' interpretation, it could order, authorize, design, implement, ratify and profit greatly from an illegal telemarketing campaign, and avoid all TCPA liability merely by hiring a third party to dial the illegal call.

Second, the Cruise Defendants ignore that the Robocalls made to Mr. Charvat's residential phone line were "telephone solicitations" seeking to sell the Cruise Defendants' goods and services and similarly ignore the fact that the FCC has repeatedly warned that the TCPA's broad restrictions on various forms of "telephone solicitations" (be they facsimiles, robo-calls, or live calls) cannot be evaded simply by utilizing third parties to physically transmit illegal calls. *See Exhibit 4, In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability ***in the context of a Robocall*** sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)). The Robocalls physically dialed by Travel Services were made for the benefit of the Cruise Defendants. Accordingly, the Cruise Defendants are responsible for ensuring that such calls are compliant with the TCPA.

Finally, directly contrary to the Cruise Defendants contention that TCPA Robocall liability is limited to the individual or entity who physically dials the Robocall are two decisions from the District of Illinois. First, in *United States v. Dish Network, LLC* ("*US v. Dish*"), 667 F. Supp. 2d 952 (C.D. Ill. 2009), *certification of interlocutory appeal denied*, No. 09-3073, 2010 WL 376774, 2010 U.S. Dist. LEXIS 8957 (C.D. Ill. Feb. 4, 2010), the Federal Trade Commission initiated litigation against DISH for telemarketing via Robocall and to consumers

whose numbers were listed on the Do Not Call Registry. Like the Cruise Defendants here, DISH argued that the calls were made by "independent contractors" that it did not control. The Court rejected this argument recognizing that no formal agency relationship was necessary to impose TCPA liability on Dish and that liability would extend to Dish if its representatives "acted as Dish Network's representatives, or for the benefit of Dish Network." 667 F. Supp.2d at 963. Second, just last year, Judge Bucklo rejected an identical argument made by the Cruise Defendants here, that was made by ADT, who claimed it was not responsible for Robocalls sent to consumers by third parties. *See Desai v. ADT Sec. Servs., Inc.*, 2011 WL 2837435 at *1 (N.D. Ill. July 18, 2011) ("The term 'initiate' is broad enough to include cases where . . . a party has encouraged or otherwise prompted its authorized dealers to make calls on its behalf.").

As the Plaintiff has sufficiently alleged that the Robocalls were dialed by Travel Services for the benefit of all the defendants, the Cruise Lines' argument that it cannot be held liable under the TCPA unless it physically dials the call should be denied.

### C. *The Cruise Defendants Are Liable For Robocalls Physically Dialed by Travel Services Pursuant to Theories of Agency and Vicarious Liability*

The Cruise Defendants next contend that Mr. Charvat has failed to plead sufficient facts to state a claim for violations of the TCPA under theories of agency.[17] To the extent any deficiencies in Mr. Charvat's complaint ever existed, the Proposed Second Amended Class Action Complaint, attached at Exhibit 1, lays out in detail the specific facts which support Mr.

---

[17] *See* Motion to Dismiss of Norwegian and Royal Caribbean at pg. 4.; Motion to Dismiss of Carnival at pg. 6.

13

Charvat's liability claims against the Cruise Defendants under theories of agency and vicarious liability.

As to the application of agency law to enforce the TCPA, Courts across the country have applied agency principles to overcome defendants' efforts to shield themselves from liability by marketing their products and services via third parties. *See Brentwood Travel v. Annex Computers, Inc.*, No. 00AC-13051, 2001 WL 36018637 (Mo. Cir. Ct. Mar. 18, 2001) (holding that FCC "obviously" construed TCPA's facsimile provision to proscribe indirect actions "by way of an agent . . . . This is wholly reasonable, since if liability could be avoided by using such an intermediary, advertisers could use a series of fly-by-night fax advertising firms to send waves of unsolicited faxes, and be insulated from liability" (internal quotation marks omitted)).[18] Additionally, as with other federal tort statutes, common law vicarious liability principles apply to claims made under the TCPA. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("When Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.").

Mr. Charvat has made allegations that the Cruise Defendants prompted, encouraged and ratified the Robocall telemarketing campaign at issue, that Travel Services served as an agent of the Cruise Defendants, that Travel Services and the Cruise Defendants are all participants in a joint

---

[18] *See also Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468, 472 (Ga. Ct. App. 2000) (holding that the trial court was correct to deny motion for summary judgment when evidence presented a jury question as to defendant's "right to control the means, method and manner" of actions performed by independent contractor which potentially gave rise to TCPA liability, stating "an advertiser may not avoid liability under the TCPA solely on the basis that the transmission was executed by an independent contractor"); *Worsham v. Nationwide Ins. Agency*, 772 A.2d 868, 878 (Md. Ct. Spec. App. 2001) (rejecting defendant's reliance on "independent contractor" language in its contract with local agents, and noting, "[t]he TCPA reaches not only the entity making the telephone solicitation, but also any entity 'on whose behalf' such calls are made").

venture, and that the Cruise Defendants participated in, caused and commenced the illegal Robocall telemarketing campaign of Travel Services and allowed it to continue for several years.  *See First Amended Complaint* at Paragraphs 12, 33 and 52; *Proposed Second Amended Complaint* at Paragraphs 53-61.  At a minimum, once the Cruise Defendants obtained actual knowledge that Travel Services was telemarketing on their behalf via Robocall, they facilitated the continued illegal Robocall telemarketing of Travel Services by failing to act and by allowing such illegal conduct to continue.

## V.    CONCLUSION

The Cruise Defendants have put forth no viable argument as to why this case must be dismissed, their contention that TCPA Robocall liability is limited solely to the entity physically dials a call is wrong.  As such, their motion should be denied.  Independent of this analysis, the Plaintiff has sufficiently alleged that the Cruise Defendants are liable for the Robocalls physically dialed by Travel Services pursuant to theories of agency and vicarious liability.  If this Court were to agree that TCPA liability for an illegal Robocall ends with the entity who physically dialed the Robocall, the legal protections afforded consumers by the TCPA against intrusive telemarketing would be eviscerated.

        Respectfully submitted,

        /s/ Edward A. Broderick
        Edward A. Broderick
        Broderick Law, P.C.
        125 Summer St., Suite 1030
        Boston, MA  02110
        (617) 738-7080
        (617) 314-7783 *facsimile*
        *Pro Hac Vice*

        Matthew P. McCue
        The Law Office of Matthew P. McCue
        1 South Ave., Third Floor
        Natick, MA 01760
        (508) 655-1415
        *Pro Hac Vice*

        Alexander H. Burke
        Burke Law Offices, LLC
        155 N. Michigan Ave., Suite 9020
        Chicago, IL 60601
        Phone: (312) 729-5288
        aburke@burkelawllc.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 25, 2012, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/ Edward A. Broderick
        Edward A. Broderick