**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Philip Charvat on behalf of himself and others | ) | |
| similarly situated, | ) | |
|     Plaintiff, | ) | Case No. 1:12-cv-5746 |
| | ) | |
| v. | ) | Judge Zagel |
| | ) | |
| Elizabeth Valente, Resort Marketing Group, Inc., | ) | |
| Travel Service Network, Inc., TSN Travel, Inc., | ) | |
| TSN International, Inc., TSN Marketing LLC, | ) | Magistrate Judge Valdez |
| Carnival Corporation & PLC, | ) | |
| Royal Caribbean Cruises, Ltd., | ) | |
| NCL (Bahamas) Ltd. | ) | JURY DEMANDED |
|     Defendants. | ) | |

**Plaintiff's Answer and Affirmative Defenses to Defendant
Resort Marketing Group, Inc.'s Counterclaims**

Plaintiff Philip Charvat respectfully submits his Answer and Affirmative Defenses to the

Counterclaims of the Defendant Resort Marketing Group, Inc. ("Defendant"), as follows:

PLAINTIFF'S ANSWER TO THE COUNTERCLAIMS OF THE DEFENDANT

Introduction

Plaintiff, Counter-Defendant, Philip Charvat, has long maintained a pattern and practice

of secretly and surreptitiously recording his incoming telephone calls for the purpose of

facilitating his role as a serial-plaintiff who has initiated over 100 telemarketing-related lawsuits

stemming from purported violations of the Telephone Consumer Protection Act (hereinafter, the

"TCPA") and similar state statutes. To do so, Charvat has acquired, possesses and uses audio

recording or "eavesdropping" equipment on his home phone lines to secretly tape record his

incoming telephone calls. Charvat records his telephone conversations on those incoming calls without disclosing to the callers that he is tapping the conversations, and Charvat proceeds with taping these telephone conversations without ever obtaining the consent of the other party or parties being tape recorded.

As part of this on-going pattern and practice, Charvat has secretly tape recorded calls that he receives from out-of-state callers, like the calls that he allegedly received in the present Lawsuit from parties in Illinois. Illinois, like eleven ("11") other states, requires the consent of all the parties to a telephone conversation to having their call tape recorded. *See e.g.,* Illinois Eavesdropping Act, 720 ILCS 5/14-2(a)(2). By secretly and surreptitiously recording the telephone calls that he received in this Lawsuit from callers in Illinois without obtaining the callers' consent, Charvat has violated the Illinois Eavesdropping Act, 720 ILCS 5/14-2. Defendant, Counter-Plaintiff is entitled to injunctive relief, actual damages and punitive damages.

**ANSWER:** Denied.

## Jurisdiction and Venue

1.     The underlying action seeks to allege purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

**ANSWER:** Admit.

2.      The Court has subject matter jurisdiction over federal questions arising under the laws of the United States, pursuant to 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over the state law claims set forth herein pursuant to 28 U.S.C. § 1367.

**ANSWER:** Admit.

3.      Venue is proper in the Northern District of Illinois, Eastern Division as the acts giving rise to the claims alleged herein occurred in this judicial district.

**ANSWER:** Denied to the extent that the acts giving rise to the counter-claim arose in Ohio.

**The Parties**

4.      Counter-Plaintiff, Resort Marketing Group, Inc., was at all times relevant hereto, a Nevada corporation with its principal place of business in Illinois and does business under the trade name "Travel Services."

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth as to the corporate status of Resort Marketing Group, Inc. The Plaintiff admits that Resort Marketing Group, Inc. did not properly identify itself in its interactions with the Plaintiff as required by law, instead utilizing the not properly registered fictitious trade name "Travel Services."

5.      Counter-Defendant, Philip Charvat, is an individual residing in Westerville, Ohio.

**ANSWER:** Admit.

**<u>Factual Allegations Common To All Claims</u>**

6.  Charvat, with the assistance of his family members, has maintained a pattern and practice of conduct intended to generate incoming telephone calls from telemarketers so that Charvat can file a subsequent law suit against them and obtain damages as a means of supplementing his income.

**<u>ANSWER:</u>** Denied.

7.    To that end, Charvat has acquired, possesses, maintains and uses an elaborate audio-recording or "eavesdropping" operation and system on his two home telephone lines, which eavesdropping operation he uses to secretly and surreptitiously tape record the incoming telephone calls received on his residence telephone numbers of (614) 895-1XXX and (614) 895-8XXX (hereinafter, the "Charvat Residence Telephone Numbers") (telephone numbers redacted to protect the Plaintiff, Counter-Defendant).

**<u>ANSWER:</u>** Denied.

8.    On information and belief, Charvat records the incoming telephone calls received on his Residence Telephone Numbers without disclosing to the callers that he is taping the conversation. In addition, Charvat proceeds with taping the incoming telephone conversations without obtaining the consent of the other party or parties being tape recorded.

**<u>ANSWER:</u>** Plaintiff admits that he records many illegal telemarketing calls made to his home in Ohio.  The remaining allegations in Paragraph 8 consist of legal conclusions to which no response is required.

9.    As part of this pattern and practice, Charvat also prepared the form of a "log," and maintains that log near his home telephones so that he can list the incoming calls on his Residence Telephone Numbers, and enter information about the incoming calls on the log.

**ANSWER:** Denied.

10.    Charvat directed and instructed his wife, Sandra, and his daughters, Catie and Allison, on how to secretly and surreptitiously tape record the incoming telephone calls received on the Residence Telephone Numbers, what to say on the telephone calls, and how to fill in the call log.

**ANSWER:** Denied.

11.    On information and belief, Charvat has also maintained a pattern and practice of researching, on the internet and elsewhere, and seeking out companies, telemarketers and individuals that generate marketing telephone calls like the calls that are at issue in this Lawsuit.

**ANSWER:** Denied.

12.    On information and belief, Charvat and his family members also seek to invite and/or facilitate incoming marketing telephone calls to Charvat Residence Telephone Numbers by providing various companies, telemarketers and individuals with personal information, consent and the Charvat Residence Telephone Numbers to call.

**ANSWER:** Denied.

13.     On information and belief, Charvat's family members knowingly participate in and further Charvet's pattern and practice of secretly and surreptitiously tape recording incoming marketing telephone calls received on the Residence Telephone Numbers, including interstate telephone calls, as well as interstate telephone calls from Illinois and the eleven (11) other states that prohibit tape recording telephone conversations without the consent of all of the parties on the telephone call.

**ANSWER:** Denied.

14.     As part of this pattern and practice, Charvat and his family members also take steps to facilitate lengthy calls with the incoming callers, such as staying on the call, pressing "1" to be connected to an individual, feigning interest in the marketed product to keep the call going, asking questions about the products, and failing to ask the callers to be placed on the "Do Not Call" List.

**ANSWER:** Denied.  Plaintiff further answers that federal government entities, including but not limited to the Federal Trade Commission, have affirmatively stated that in order to investigate possible illegal telemarketing they will "pos[e] as consumers….without the necessity of identification or prior notice." *See* e.g. Consent Decree entered in the *United States of America v. Credit Bureau Collection Services*, United States District Court for the Southern District of Ohio (Eastern Division), C.A. No. 10-cv-169 (2010).

15.     As part of this pattern and practice, Charvat and his family members also often use *69 to track and gather information about an interstate caller.

**ANSWER:** Denied.

16.     On information and belief, Charvat maintains some of the secret tape recordings and log information for use in subsequent Lawsuits like the present one, and the recordings that he does not maintain are erased or recorded over.

**ANSWER:** Plaintiff admits that he records many illegal telemarketing calls made to his home in the state of Ohio.  Plaintiff saves those recordings that are necessary to document illegal telemarketing calls for potential use as evidence in a court of law.

17.     On or about February 11, 2011, Charvat received a telephone call on his Residence Telephone Number from a Travel Services agent, representative and employee identified as "Sampson".

**ANSWER:** Denied.  The plaintiff admits that on February 11, 2011, he received a pre-recorded telephone call ("Robocall") fraudulently promoting the goods and services of the cruise defendants from an entity that erroneously claimed it was "Travel Services."  The Robocall fraudulently informed the Plaintiff that he had been "personally selected" to receive a cruise with Carnival, Royal Carribean or a Norwegian Cruise Line.  The plaintiff did not "receive" a call from "Sampson."  He received a call from an automated dialing system using a pre-recorded

voice. Plaintiff has reason to believe that the same illegal Robocall was sent to many other consumers throughout the United States. The plaintiff admits that the Robocall was transferred to a live operator who identified himself as "Sampson" after the plaintiff "pressed 1" to further explore the identity of the entity making the illegal Robocall to his home in Ohio.

18. Sampson began the call by stating that Travel Services was in the business of selling cruises on various cruise lines to individuals such as Charvat.

**ANSWER:** Denied. The telephone call "started" with a Robocall advertising the services of the cruise defendants. The Robocall fraudulently informed the Plaintiff that he had been "personally selected" to receive a cruise. The representative to whom the call was transferred fraudulently identified the entity making the call as "Travel Services."

19. Over the course of the telephone call, Charvat spoke with Sampson for more than three ("3") minutes.

**ANSWER:** Admit.

20. Charvat secretly and surreptitiously recorded this telephone conversation with Sampson in its entirety.

**ANSWER:** Denied as to the characterization that Mr. Charvat "secretly and surreptitiously" did anything. Plaintiff admits that he records many calls made to his home telephone lines by entities engaged in illegal and/or fraudulent telemarketing.

21.    Charvat did not inform Sampson that Charvat was tape recording the telephone conversation.

**ANSWER:**  Plaintiff admits that he did not inform the caller who had initiated an illegal Robocall to his residence in the state of Ohio that the call was going to be recorded in order to properly authenticate and document for the Court for future legal proceedings as to the defendant's illegal and/or fraudulent telemarketing campaign.

22.    Charvat did not seek Sampson's consent to tape recording their entire telephone conversation as is required in Illinois.

ANSWER:  Plaintiff admits that he did not seek consent from the caller who initiated an illegal Robocall to his residence in the state of Ohio to record the illegal and/or fraudulent telemarketing call.

23.    Sampson did not, and does not, consent to Charvat's act of tape recording any or all of their telephone conversation.

ANSWER:  Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 23.

24.    At no point during this telephone call with Sampson did Charvat ever ask Sampson to place Charvat on Travel Services' "Do Not Call" List.

**ANSWER:** Admit.

25.     On or about September 8, 2011, Charvat received a telephone call on his Residential Telephone Number from a Travel Services agent, representative and employee identified as "Marie".

**ANSWER:** Denied.  The plaintiff admits that on September 8, 2011, he received a Robocall fraudulently promoting the goods and services of the cruise defendants from an entity that fraudulently claimed it was "Travel Services."  The Robocall fraudulently informed the Plaintiff that he had "filled out an entry form" to receive a cruise from Royal Carribean, Carnival or Norwegian Cruise Lines and had been "selected."  The plaintiff did not "receive" a call from "Marie."  He "received a call from an automated dialing system using a pre-recorded voice. Plaintiff has reason to believe that the same illegal Robocall was sent to many other consumers throughout the United States.  The plaintiff admits that the Robocall was transferred to a live operator who identified herself as "Marie" after the plaintiff "pressed 1" to further explore the identity of the entity making the illegal Robocall to his home in Ohio.

26.     Marie began the call by stating that Travel Services was in the business of selling cruises on various cruise lines to individuals such as Charvat.

**ANSWER:** Denied, as the telephone call started with a pre-recorded message advertising the services of the Defendants. The Robocall fraudulently informed the Plaintiff that he had been "selected" after filling out a "contest entry form" to receive a cruise.

27. Over the course of the telephone call, Charvat spoke with Marie for more than three ("3") minutes.

**ANSWER:** Admit.

28. Charvat secretly and surreptitiously recorded this telephone conversation with Marie in its entirety.

**ANSWER:** Denied.

29. Charvat did not inform Marie that Charvat was tape recording the telephone conversation.

**ANSWER:** Plaintiff admits that he did not inform the caller who had initiated an illegal and fraudulent Robocall to his residence in the state of Ohio that the call was going to be recorded in order to properly authenticate and document for the Court for future legal proceedings as to the defendant's illegal telemarketing campaign and fraudulent representations.

30. Charvat did not seek Marie's consent to tape recording their entire telephone conversation as required in Illinois.

**ANSWER:** Plaintiff admits that he did not seek consent from the Robocall made to his home in Ohio by the defendants.

31. Marie did not, and does not, consent to Charvat's act of tape recording any or all of their telephone conversation.

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 31.

32.     At no point during this telephone call did Charvat ever ask Marie to place Charvat on Travel Services' "Do Not Call" List.

**ANSWER:** Admit.

33.     On or about July 9, 2012, Charvat received a telephone call on his Residential Telephone Number from a Travel Services agent, representative and employee identified as Joanna Harrison.

**ANSWER:** Denied.  The plaintiff admits that on July 9, 2012, he received a Robocall fraudulently promoting the goods and services of the cruise defendants from an entity that fraudulently identified itself as "Travel Services."  The Robocall fraudulently informed the Plaintiff that he had "filled out an entry form" to receive a cruise from Royal Carribean, Carnival or Norwegian Cruise Lines and had been "selected."  The plaintiff did not "receive" a call from "Joanna Harrison."  He "received a call from an automated dialing system using a pre-recorded voice.  Plaintiff has reason to believe that the same illegal Robocall was sent to many other consumers throughout the United States.  The plaintiff admits that the Robocall was transferred to a live operator who identified herself as "Joanna Harrison" after the plaintiff "pressed 1" to further explore the identity of the entity making the illegal Robocall to his home in Ohio.

34.     Ms. Harrison began the call by stating that Travel Services was in the business of selling cruises on various cruise lines to individuals such as Charvat.

**ANSWER:**  Denied, as the telephone call started with a pre-recorded message advertising the services of the Defendants.  The Robocall fraudulently informed the Plaintiff that he had won a contest for a cruise.

35.     Over the course of the telephone call, Charvat spoke with Ms. Harrison for more than two ("2") minutes.

**ANSWER:**  Admit.

36.     Charvat secretly and surreptitiously recorded this telephone conversation with Ms. Harrison in its entirety.

**ANSWER:**  Denied.

37.     Charvat did not inform Ms. Harrison that Charvat was tape recording the telephone conversation.

**ANSWER:**  Plaintiff admits that he did not inform the caller who had initiated an illegal and/or fraudulent Robocall telemarketing call to his residence in the state of Ohio that the call was going to be recorded.  Plaintiff denies the remaining allegations in Paragraph 37.

38.     Charvat did not seek Ms. Harrison's consent to tape recording their entire telephone conversation.

**ANSWER:**  Plaintiff admits that he did not seek consent from the Robocall made to his home in Ohio by the defendants to tape record the call.

39.     Ms. Harrison did not, and does not, consent to Charvat's act of tape recording any or all of their telephone conversation.

**ANSWER:**  Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 39.

40.     At no point during this telephone call did Charvat ever ask Ms. Harrison to place Charvat on Travel Services' "Do Not Call" List.

**ANSWER:**  Admit.  Answering further, Mr. Charvat's residential phone numbers have been on the Federal Trade Commission's Do Not Call Registry since September 11, 2011.

## Causes of Action

### Violation of the Illinois Eavesdropping Act 720 ILCS 5/14-2(a)(1)

41.     Resort Marketing Group, Inc., hereby realleges Paragraphs 1-40 as if fully set forth herein.

**ANSWER:**  Plaintiff repeats and realleges its responses to all prior Paragraphs in the Defendant's Counterclaims.

42.     One or more of the telephone calls outlined in Paragraphs 17 through 40 above (the "Recorded Conversations") originated from within the State of Illinois, in that they were made to Charvat's residence by Travel Services agents, representatives and employees who were located in Illinois at the time the calls were placed to Charvat.

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 42.

43.     Charvat knowingly and intentionally used eavesdropping devices such as audio recording equipment to secretly and surreptitiously record the Recorded Conversations made by Travel Services agents, representatives and employees located in Illinois.

**ANSWER:** Denied.

44.     Travel Services' agents, representatives and employees did not and do not consent to Charvat's recording of the Recorded Conversations.

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 44.

Violation of the Illinois Eavesdropping Act 720 ILCS 5/14-2(a)(2)

45.     Resort Marketing Group, Inc. realleges Paragraphs 1-44 as if fully set forth herein.

**ANSWER:**  Plaintiff repeats and realleges its responses to all prior Paragraphs in the Defendant's Counterclaims.

46.     One or more of the telephone calls outlined in Paragraphs 17 through 40 above (the "Recorded Conversations") originated from within the State of Illinois, in that they were made to Charvat's residence by Travel Services agents, representatives and employees who were located in Illinois at the time the calls were placed to Charvat.

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 46.

47.     At all times relevant to the claims made herein, Charvat has been in possession of eavesdropping devices such as audio recording equipment primarily useful for the purpose of surreptitious hearing or recording of oral conversations between Charvat and others in violation of Illinois law.

**ANSWER:** Denied**.**

48.     Charvat knows or has reason to know that the design of said eavesdropping devices such as audio recording equipment renders them primarily useful for the purpose of surreptitious hearing or recording of oral conversations between Charvat and others in violation of Illinois law.

**ANSWER:** Denied.

49.     Charvat knowingly and intentionally assembled and used eavesdropping devices such as audio recording equipment to record the Recorded Conversations with agents, representatives and employees of Travel Services in violation of Illinois law.

**ANSWER:** Denied.

Violation of the Illinois Eavesdropping Act 720 ILCS 5/14-2(a)(3)

50.     Resort Marketing Group, Inc. realleges paragraphs 1-49 as if fully set forth herein.

**ANSWER:** Plaintiff repeats and realleges its responses to all prior Paragraphs in the Defendant's Counterclaims.

51.     One or more of the telephone calls outlined in Paragraphs 17 through 40 above (the "Recorded Conversations") originated from within the State of Illinois, in that they were made to Charvat's residence by Travel Services agents, representatives and employees who were located in Illinois at the time the calls were placed to Charvat.

**ANSWER:** Plaintiff lacks sufficient knowledge or information to answer the truth of the allegations in Paragraph 51.

52.     Charvat knowingly and intentionally recorded the Recorded Conversations through the use of eavesdropping devices such as audio recording equipment and without the consent of Travel Services' agents, representatives and employees.

**ANSWER:** Denied.

53.     Charvat has knowingly and intentionally used and divulged the Recorded Conversations, and the information contained therein, in support of his First Amended Complaint in this lawsuit against Resort Marketing Group, Inc. which he filed publicly with the Clerk of the Court in the Northern District of Illinois. Court filings such as Charvat's First Amended Complaint are court records accessible to the general public.

**ANSWER:** Admit..

54.     Upon information and belief, Charvat has divulged the substance of the Recorded Conversations to other third-parties.

**ANSWER:** Denied.

55.     Charvat knows or reasonably should know that the Recorded Conversations, and the information contained therein, were obtained through the use of eavesdropping devices such as audio recording equipment.

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIMS

### FIRST AFFIRMATIVE DEFENSE

The Defendant Resort Marketing Group has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group claims, causes of action and damages as alleged against the Plaintiff Charvat in their counterclaim are barred or limited by the Defendant's pattern and practice of illegal conduct as alleged the Second Amended Complaint, including the Defendant's acts of knowingly and intentionally transmitting fraudulent pre-recorded messages to individuals with whom it had no established business relationship or prior express consent advertising the other businesses' goods or services.

### THIRD AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group's claims, causes of action and damages as alleged against the Plaintiff in their Counterclaim are barred or limited by the equitable doctrine of laches and/or the doctrine of unclean hands based on their pattern and practice of sending telephone calls that included fraudulent pre-recorded messages to individuals in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

FOURTH AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group's claims, causes of action and damages as alleged against Plaintiff in their Counterclaim are barred or limited because Resort Marketing Group knowingly and voluntarily waived their rights relative to the transmissions of telemarketing calls based on their pattern of conduct as alleged in the Second Amended Complaint, including their pattern and practice of sending telephone calls that included fraudulent pre-recorded messages to individuals in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and state and federal law relating to fraudulent telemarketing.

FIFTH AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group's claims, causes of action and damages as alleged against the Plaintiff in its Counterclaim are barred or limited to the extent that the Defendant failed to mitigate, minimize or avoid any of his alleged harm or damages based on their pattern and practice of sending telephone calls that included pre-recorded messages to individuals in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

SIXTH AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group's claims, causes of action and damages as alleged against the Plaintiff in its Counterclaim are barred as a matter of law because the State of Illinois has no jurisdiction over the acts of a resident in the State of Ohio who acts solely in Ohio and was did not initiate any contact with any individual or entity in the State of Illinois

but rather was the victim of an illegal intrusion into the privacy of his home by a foreign individual or entity.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant Resort Marketing Group's claims, causes of action and damages as alleged against the Plaintiff in its Counterclaim are barred as a matter of law because all of the predicate acts were those of Defendants knowingly choosing to place the calls into the State of Ohio, in order to do business in the State of Ohio, and thereby subjected Defendants to the laws of the State of Ohio. Defendants thereby assumed the risks of having telephone calls recorded in accord with the provisions of federal and Ohio law.

## EIGHTH AFFIRMATIVE DEFENSE

Defendant's claims causes of action and damages as alleged against the Plaintiff in its Counterclaim are barred as a matter of law because a business has no expectation of privacy in delivering either a pre-recorded message to scores of individuals or having a person read a previously prepared sales script to a prospective customer which script, and its variations, are read to scores of individuals.

## NINTH AFFIRMATIVE DEFENSE

As applied to the conduct of a consumer seeking to document illegal and fraudulent telemarketing calls made to his home in Ohio by unidentified third parties, the Illinois Wiretap Statute is violative of the Plaintiff's rights as protected by the First Amendment of the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

The Illinois Wiretap Act does not apply under circumstances where a party to the call

tapes the call due to a suspicion that a crime is being or might be committed.

## ELEVENTH AFFIRMATIVE DEFENSE

The Illinois Wiretap Act does not apply to telephone solicitations.

## ELEVENTH AFFIRMATIVE DEFENSE

The defendant has not sustained any damages.

## TWELFTH AFFIRMATIVE DEFENSE

A corporation under Illinois law has no personal right of privacy and, therefore, cannot

assert a cause of action for invasion of privacy.

Respectfully submitted,

*/s/ Edward A. Broderick*
Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 314-7783 *facsimile*
ted@broderick-law.com
*Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Pro Hac Vice*

Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
(617) 314-7783 *facsimile*
ted@broderick-law.com
*Pro Hac Vice*

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Phone: (312) 729-5288
aburke@burkelawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed through the ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF),

and copies have been electronically mailed to counsel of record.

*/s/ Edward A. Broderick*
Edward A. Broderick