## Jeff Becker

| | |
|---|---|
| **From:** | Patricia Mathis <pmathis@xcastlabs.com> |
| **Sent:** | Wednesday, June 12, 2013 9:38 PM |
| **To:** | ABurke@BurkeLawLLC.com; ted@broderick-law.com |
| **Cc:** | Jeff Becker; cmacizor@fflegal.com; sbzrlaw@gmail.com |
| **Subject:** | [*** GFI-SPAM? ***] - ***MAY BE SPAM*** RE: Charvat v. Resort Marketing and related claims - Email found in subject |

| | |
|---|---|
| **Importance:** | High |

Gentlemen:

   This email follows up on my earlier email to you of May 24, 2013, in which I made what I hoped would be a comprehensive and conclusive response to the various inquiries and subpoenas you have sent to XCastLabs.   As I indicated in that email, we are a third party in this dispute and will cooperate in accord with all legal requirements.  Given that I still do not have a clear understanding of what it is you want nor have we had ample time to review this matter properly, I will try again to summarize what I believe are the critical issues.

   1.  Producing these documents would be quite burdensome and possibly not even relevant to what you may be trying to resolve.  As I indicated in my previous email, XCast is simply a transport carrier, so we would not have most of the information your vast discovery request entails.  We do not have insight into who our customers do business with or how they conduct their internal affairs. We do not provide any telemarketing services.  We are not responsible for the generation or maintenance of our customer's "Do Not Call" lists.  We do not provide any call recording or third party verification services.   We are simply the pipe through which our customer's communications travel.  As such we have literally billions of call records associated with our many--literally hundreds of customers--of various customers' call records covering the various epochs you have inquired about.  The extraction of a record associated with any single number or any set of numbers requires manpower and computer power.  As a small company we have a limited amount of both.   Because of the overwhelming size of billions of call records each year, they are stored in different ways--depending on the historical date of such calls.  We would be required to research multiple databases and process queries from each database, generate reports from the various epochs you have inquired about, reconcile all call records with billing records to reflect actual terminated calls; then we would have to go through elaborate formatting and cross-checking to ensure there was no inclusion of a call that did not belong to the inquiry or single customer under consideration.  In sum, this is a very time-consuming project and can't be brushed aside as "no big deal--just put it on a hard drive and send it to us"--as one of you have opined.

   2.  We believe are are bound by the provisions of the Storage Communications Act and would be subject to extreme penalties for any violation of it.  While this Act may be

obscure to some, the discussion going on over the last week in the public square and involving major legal scholars about privacy--including the Attorney General, many Senators and Congressmen, and the President of the United States, will hopefully raise awareness about the sensitivity of communications and internet companies revealing any information that might be considered private.

3. Not withstanding any of the above, XCast has fully complied with Judge Zagel's November 29, 2012 order asking us to produce certain documents associated with the "Plaintiff's individual claims...including any calls placed to his telephone number(s.) We provided that to you on January 11, 2012. I am not aware of any attempt by you to modify that order yet youapparently filed a Motion to Compel without providing timely notice to anyone within XCast with decision-making authority.

As I indicated in this email--and previously--we are certainly willing to cooperate with you in sorting this out and providing any and all information that is legally permissible for us to provide. But we must have some process for reviewing this matter in a more rational way.

Thank you,

Patricia Mathis

---

**From:** Patricia Mathis
**Sent:** Friday, May 24, 2013 6:18 PM
**To:** aburke@burkellc.com; ted@broderick-law.com
**Cc:** jbecker@smbtrials.com; cmacizor@fflegal.com; sbzrlaw@gmail.com
**Subject:** Charvat v. Resort Marketing and related claims

Gentlemen:

It has come to my attention that certain among you plan to request the court to compel the production of certain documents by XCast Labs, Inc. regarding Case 1:12-cv-05746, Document #131; filed 5/22/2013.

This motion sets forth certain assumptions, namely that one Rory Pickens of Broderick Law, PC, spoke on the telephone with an "XCast representative Stephen Snow, on or about April 17, 2013."Mr. Snow is a front-line employee of XCast who may have randomly answered an incoming call from said Mr. Pickens. Mr. Snow has no role in legal oversight over XCast affairs and is not authorized to respond to subpoenas or any other legal matter involving the company. It is the policy and legal responsibility of XCast to respond only to official signed orders from a court. If Mr. Snow responded to an unknown caller requesting confidential information, he would have been acting appropriately and in accord with standard best practices of the company. We found no evidence that Mr. Pickens or others associated with this particular request made efforts to "negotiate a compromise, or otherwise convince XCast to produce any more materials." XCast has no information or evidence that Mr. Pickens ever contacted XCast again.

2

XCast has responded to previous requests from law groups associated with the matter of Chavat v. Travel Services , including a party named Anthony Paronich.  Our records indicated that XCast sent to the Broderick Law firm certain legally permissible documents on January 11, 2013.  There was some apparent confusion when communication was initially sent to a "Mr. Hill" and XCast has never had an employee by that name.  It is my understanding that  Mr. Paronich was informed during a subsequent phone calls in late 2012 that XCast was restrained under the requirements several statues--including the Storage Communications Act--from disclosing certain information except under court order and in the case of SCA with proper show cause for criminal activity.  (See attached.)

Around April 10, 2013, XCast received an unsigned subpoena submitted by one Edward A. Brokerick regarding a different--but apparently related--matter in which they requested that XCast reveal the identity of a subscriber whose calls might have passed through the XCast's switch on a May 2, 2008.  (XCast was not formed until after that date and would not necessarily have access to call records from the company whose assets XCast acquired.)  It appears that this is the matter under consideration for a current Order to Compel.

Finally, this motion indicates that XCast has not lodged any objections to producing the sought documents.  It is my information and belief that this is incorrect.  The company has explained in some detail in conversations with Mr. Paronich that the company is constrained under federal statutes regarding the nature of information it can release.  Also, it is not true that producing these documents "is not overly burdensome to XCast."  XCast is a small company with limited resources and no legal staff.  Producing the records requested in this very broad and shifting discovery could be quite burdensome. And of course the request would need to conform to federal statutes which aggressively restrain our release of private information.

To be clear, XCast is a third party in this apparently complex matter.  The company will cooperate fully in any legal process within the constraints regarding our own limitations as spelled out in multiple federal statutes regarding the release of certain information held by carriers.  However, I should point out that XCast is not likely to have in its possession—or ever had in its possession—certain of the data requested in this latest May 22, 2013 motion, given that XCast's role was simply as a transport mechanism.

Given this information, it is my hope that you will immediately withdraw this motion so that I might have an opportunity to discuss the matter next week with our outside counsel.  I believe that if we can clarify the matters I have raised in this email, the interests of all parties can be addressed in an efficient and legally permissible way.

Thank you,
Patricia Mathis
310.861.4700, extension 5350