UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Philip Charvat on behalf of himself and others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 1:12-cv-5746 |
| v. | ) ) | Judge Wood |
| Elizabeth Valente, Resort Marketing Group, Inc., Travel Service Network, Inc., TSN Travel, Inc., TSN International, Inc., TSN Marketing LLC, Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., NCL (Bahamas) Ltd., | ) ) ) ) ) ) ) | Magistrate Judge Rowland |
| *Defendants.* | ) ) | |

**ROYAL CARIBBEAN CRUISES, LTD APPEAL OF PORTION OF MAGISTRATE'S ORDER ON ITS MOTION TO COMPEL ANSWERS, OR BETTER ANSWERS, TO FIRST REQUEST FOR PRODUCTION**

**I.     Issues Before the Court**

This appeal stems from Royal Caribbean Cruises Ltd.'s ("RCL") Motion to Compel Answers, or Better Answers, to its First Request for Production, which the Magistrate Judge granted in part and denied in part. [DE 214, 214-1, 214-2, 21-3; 229]. RCL seeks the Court's review of three items that the Magistrate Judge denied, to wit: (1) the Plaintiff need not produce his income tax returns (Request #10); (2) the Plaintiff need not produce documents relating to his TCPA litigation internet activity   (Request #40); and (3) the Plaintiff need not produce documents pertinent to prior litigation (Requests ## 59-60).

By denying certain of RCL's discovery requests, the Magistrate Judge made a determination as to the relevance and dispositive nature of the Plaintiff's litigation history on his ability to act as a class representative and that such a determination was improper, because that

issue was never referred, and it was premature, because the motion at issue is a *discovery motion*. It is well-settled that information need not be relevant or admissible to be discoverable. "Under the liberal standard of discovery relevance, material is discoverable if it is admissible or 'reasonably calculated to lead to admissible evidence.'" *APC Filtration, Inc. v. Becker*, 2007 WL 3046233 (N.D. Ill. Oct. 12, 2007) (*quoting* Fed. R. Civ. P. 26(b)(1)). The information sought in the discovery requests discussed below is, at a minimum, discoverable. This information may be considered in determining the Plaintiff's credibility, his fitness to act as a class representative, and the overall superiority and predominance of the class action mechanism in prosecuting this particular lawsuit. For these reasons, RCL respectfully requests that this Court overrule the Magistrate Judge's November 20, 2014 ruling as set forth below.

## II. Basis for the Requested Discovery and Procedural History

In order to understand why RCL requires the production of the discovery subject to this appeal, a brief background on the case as it has developed to date is essential. This is a case where a serial Plaintiff who earns money from suing companies for purported Telephone Consumer Protection Act ("TCPA") violations brought a class action suit against a fully independent travel agency, Defendant Resort Marketing Group[1] ("RMG"), for alleged TCPA violations. In his Complaint, the Plaintiff included three highly competitive cruise lines as Defendants under a "vicarious liability theory." The premise of the Plaintiff's class action against the competitor cruise lines is that the independent travel agency purportedly sold cruise packages for the them via illegal telemarketing, and at the direction and control of these cruise lines. [DE 58 ¶¶ 18-72].

The facts developed through discovery, however, do not support the Plaintiff's agency theory. First of all, the manager of RMG and co-defendant, Beth Valente, has testified that there

---

[1] RMG is also referred to as "Travel Services" in certain documents and by certain witnesses.

are absolutely no contractual agreements between RMG and Carnival Corporation, Royal Caribbean Cruises, Ltd. or NCL (Bahamas) Ltd. to place robocalls on their behalf.[2] To the contrary, the contacts between RMG and the cruise lines that have been produced to date explicitly prohibit RMG from making automatic or pre-recorded calls on or behalf of the cruise lines. In addition, Ms. Valente testified that RMG telemarketed from 2010 through 2014 to for the purpose of promoting and selling memberships in *RMG's travel and vacation club*, <u>not</u> to promote the competitor cruise lines and sell their cruises. At the time of RMG's telemarketing calls, consumers did not purchase any cruises; rather, they received a free trial membership to the RMG travel and vacation club and pre-paid for taxes for a cruise that RMG may or may not book for them within the next eighteen months, depending on whether or not the consumer wished to go on the free cruise *<u>offered by RMG</u>*.  The telemarketing was thus for the benefit and profit of RMG, <u>not</u> the Defendants and competitor Cruise Lines.

     The Plaintiff avoided dismissal on the vicarious liability theory because out of the four (4) residential telephone calls that he received from RMG, during two (2) of the calls, the Defendant travel agency employees made reference to RMG being hired by the competitor Cruise Line Defendants to "fill empty cabins" and another travel agency employee said that the call was made "on behalf" of each of the competitor Cruise Line Defendants. [DE 67-1 pp. 1-3, 5-9].  Significantly, RMG has produced many telephone scripts it used during telemarketing calls, and not one script contains any language indicating that RMG works on behalf of the Defendant Cruise Lines nor do they say anything about being hired by them or filling cabins for them.

     A former employee of RMG was also deposed in this case because she was one of the telemarketers whose voice was on one of the calls placed to Mr. Charvat.  *See* Fourth Telephone

---

[2] The Defendant Cruise Lines have also responded to discovery confirming that there are no such contracts.

Call received by the Plaintiff at DE 67-1 pp. 5-9; Deposition of Telicia Compton at 109:16-24; 110:1. Ms. Compton definitively testified that the purpose of the call was to market and promote a free membership in RMG's travel and vacation, *not* the cruise lines. *See* Deposition of Telicia Compton at 73:14-24, 74:1-4, 112:1-9, 21-24; 113:1-9, 14-24, 114:1-4, Ex. "C." She conceded that the statement that she made during her call, that the travel agency was hired by the cruise lines, was not on her telemarketing script and that no one ever told her to say this, she was not trained to say this, and, that by saying it, she went off script. *See* Deposition of Telicia Compton at 69:12-24; 70:1-9, 17-24; 71:1-2; 72:4-17; 73:14-24; 74:1-4.

This case is therefore very different from the typical TCPA class action case, in which all putative class members may have received an identical unwanted fax or telephone same call from a distributor hired by a manufacturer to sell the manufacturer's products. In this case, there are no agreements between the cruise lines regarding telemarketing endeavors, and there is no evidence that RCL or NCL were even aware that RMG was making automated pre-recorded calls prior to the filing of this lawsuit. Only two of four calls made any reference to being hired by the cruise lines to support a vicarious liability theory. The manager of RMG has testified that RMG was making calls for its own benefit and profit and using the Cruise Line Defendants cruises as an incentive to consumers to join their vacation and travel club. RCL and NCL have served interrogatory answers confirming that they were not aware that RMG was promoting its travel and vacation club memberships by offering promotional free cruises via automated pre-recorded telephone calls.

Ms. Valente, RMG's Manager, testified that each of the calls made to the Plaintiff were placed because the travel agency purchased a lead wherein the Plaintiff's daughter had invited contact, which is undisputedly a defense in TCPA cases. *See* Deposition of Defendant, Beth

Valente pp. 172 l.21-173 l.18; 176 l.21-177 l.4.  The Plaintiff, however, has denied that he or anyone else in his family consented to be contacted. [DE 58 ¶¶ 51].  Thus, the Plaintiff's prior express consent is very much at issue in this case.  The Plaintiff himself has filed over 100 TCPA cases, and in one case, during the pendency of a Motion for Sanctions that had been filed against him, he entered into a settlement agreement and agreed order that required him to place his residential telephone numbers on the National and State Do-Not-Call registries (something that he had theretofore refused to do).  *See* Deposition of the Plaintiff pp. 3631.16-3641.10; 3661.5-17.   He nevertheless claims that he somehow still gets as many robocalls now as he did before registering his telephone numbers. *See* Deposition of the Plaintiff pp. 1661.9-1671.19. As part of his TCPA business, the Plaintiff has set up a system in his home where, for years, he and his family have recorded virtually every telephone call placed to his residence.  He has (and has instructed his family to) complete a form he created that logs information about these telephone calls, and has saved these forms in a TCPA-library. He also belongs to internet forums where he solicited information about this case from other serial TCPA plaintiffs. [DE 223-1 p. 8].

    RCL, therefore, believes that the Plaintiff is actively inviting these telephone calls to his residence by submitting requests for information and completing contest entry forms via the internet (and perhaps otherwise) that result in his being contacted on a regular basis. Significantly, when asked about inviting calls at his deposition, the Plaintiff did not deny inviting them and stated instead that "to the best of his knowledge" he does not.  *See* Deposition of the Plaintiff at p. 1681.21-1691.3.  In order to obtain the requisite proof of this scheme and of the consent defense, RCL needs to obtain discovery that sheds light on the Plaintiff's personal financial motivation for pursuing these lawsuits *and* the manner in which the Plaintiff invites these calls, including the calls in this case.

**III.     Standard of Review**

This Court's review of the Magistrate Judge's non-dispositive Order concerning RCL's Motion to Compel is governed by Rule 72(a) of the Federal Rules of Civil Procedure, which provides, "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the Magistrate's Order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed." *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.,* 2002 U.S. Dist. LEXIS 11916, *8 (N.D. Ill. 2002). However, as to pure issues of law, "there is no practical difference between review" under Rule 72(a) and 72(b), which is *de novo* review. *See PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir. 2010). Since the Magistrate Judge based her rulings on legal precedent, the appropriate review is *de novo.*

**IV.     The Magistrate Judge's Denial of RCL's Motion to Compel Several Discrete Requests for Production Misinterpreted the Legal Authorities**

**A.     The Plaintiff's Tax Returns Should Have Been Compelled**

Request for Production Number 10 sought "All of Phillip Charvat's tax returns that reflect income from filing serial TCPA litigation for the past ten (10) years." [DE 214-2 p. 9]. RCL sought these documents for three primary reasons: (1) because the Plaintiff has put his credibility at stake by claiming to be an advocate to "punish" companies for making robocalls while RCL believes he pursues these cases for his own financial gain; (2) the Plaintiff's credibility concerning his motivation for pursuing serial TCPA litigation may impact the determination of his adequacy as a potential class representative; and (3) the Plaintiff's own TCPA litigation earnings track record will show a profitable cottage industry of individual

lawsuits that were filed by the Plaintiff individually which undermines his contention in this lawsuit that a class action is a superior means of adjudication.

The Plaintiff, of course, "declined" to produce the documents because they were purportedly "not reasonably calculated to lead to discoverable evidence," and the request was "overbroad, oppressive and calculated to violation (sic) the plaintiff's privacy rights." *Id.* RCL sought to compel the tax returns because it is RCL's belief that these lawsuits are invited by the Plaintiff to earn a living and that he is less a consumer advocate and more a TCPA provocateur. RCL is simply seeking evidence to prove that the Plaintiff's primary motivation in pursuing these lawsuits is monetary in nature, and that income derived from his TCPA litigation is his primary source of personal income, and this evidence will directly contradict his testimony that he pursues TCPA litigation for other reasons. RCL believes that the Plaintiff's TCPA income will demonstrate that he has created a cottage industry of TCPA litigation, and that he is actually in this lawsuit for the money. RCL sought the Plaintiff's tax returns to demonstrate this, and if the tax returns show what RCL suspects they will, the tax returns will also undermine the Plaintiff's credibility, and therefore his adequacy, as a proposed class representative.

In response to RCL's Motion to Compel, *for the first time*, the Plaintiff argued that the Court had already ruled on this issue in connection with the travel agency's earlier request for fifteen (15) years of tax returns. [DE 221 p. 6]. The order referenced by the Plaintiff cited two cases, one involving the ability to finance litigation, which was *not* a ground for RCL moving to compel, and the other was a case stating that the "[i]nstigation of many other securities laws lawsuits cannot *of itself*, disqualify plaintiff from bringing the present suit or acting as class representative therein." *Lewis v. Black,* 74 F.R.D. 1, 3 (E.D.N.Y. 1975)(emphasis added); [DE 187 p. 2]. The only other comment in that order regarding the tax returns is that 15 years of tax

returns "borders on harassing." [DE 187 p. 4] (RFP ## 21, 25). There was no other as to how production of tax returns was harassing.

RCL replied in support of its Motion to Compel by arguing that discovery was stayed as to the Cruise Line Defendants when the Defendant travel agency, RMG, requested the Plaintiff's tax returns and RCL cannot move to compel another co-defendant's discovery or argue grounds for compelling the documents for a co-defendant. The *Lewis* case cited in the travel agency's (RMG) Order simply said that being a serial plaintiff does not *ipso facto* preclude a person from being a class representative, the clear implication being that <u>it is a factor for a Court to consider</u>. *Lewis v. Black,* 74 F.R.D. at 3; [DE 187 p. 2].

RCL also asked that the Magistrate take note of *Donaca v. Dish Network, LLC,* 2014 U.S. Dist. LEXIS 19740, *33 (D. Colo. 2014), in which the district court ruled that, among other reasons, because the plaintiff <u>derived 60% of his income from TCPA lawsuits</u> or threats to sue telemarketers, the class would not be certified. [DE 223-1 p. 6]. In that case, the court's rationale was that there exists no impediment to filing TCPA lawsuits because of the lack of a cap on statutory damages has provided plaintiffs with an easy way in which to recover money by filing individual TCPA lawsuits, and *Donaca* was proof of that.

RCL also highlighted the fact that the Plaintiff himself had made his TCPA litigation history a basis for his alleged adequacy as a class representative, which should therefore allow RCL to obtain evidence that could undermine this contention, as well as the Plaintiff's case-in-chief if the evidence shows that he entices companies to call him so he may earn substantial monies through lawsuits emanating from such calls. A plaintiff's credibility is a substantial Rule 23 factor as it relates to adequacy. *Id.* at pp. 6-7. Unlike the *Donaca* case, where the plaintiff testified about the percentage of income derived from TCPA pre-suit demands and litigation, the

Plaintiff here refused to voluntarily provide this information during his deposition. Thus, the only way in which RCL may obtain this information is through obtaining the tax return documents. [DE 223-1 p. 7]. With respect to the suggestion that the discovery is "harassing," RCL believes that the production of the requested tax returns would, at most, amount to less than 200 pages of documentation, and if the Plaintiff does not retain copies, he can easily obtain them from the Internal Revenue Service. It should also be noted that there is a protective order in place, which the Plaintiff may use to protect any confidential information in these documents.

The Magistrate Judge denied RCL's request for the Plaintiff's tax returns based on an argument and legal authorities never cited by the Plaintiff.[3] Apparently, based upon research undertaken by the Magistrate Judge, the rationale for the denial was that because the Seventh Circuit in *Murray v. GMAC Mortgage Corporation,* 434 F.3d 948 (7th Cir. 2006), ruled that: (1) in the Fair Credit Reporting Act context being a serial plaintiff does not necessarily make a plaintiff "unfit" to be a class representative; and (2) that the filing of numerous FCRA cases does not disqualify the class representative because the FCRA was designed for small claims. The Magistrate Judge ruled, therefore, "[i]n light of this binding case authority, the Court remains unpersuaded that ten years of Plaintiff's tax returns are relevant." [DE 229 p. 4].

RCL requests this Court to overrule the Magistrate Judge's denial of its Motion to Compel these tax returns. In *Murray,* the district court had initially made a determination that the plaintiff was unfit to be a class representative. The Seventh Circuit noted that while the plaintiff was a serial plaintiff, she did not "invite" the lawsuits, and it determined that the frequency of the lawsuits filed by the plaintiff did not alone disqualify her from acting as a class representative.

---

[3] The fact that the Magistrate Judge responded by making an argument advocating a ground never raised by the Plaintiff makes RCL uncomfortable. See *Marshall v. Marshall,* 403 B.R. 668, 679 (C.D. Cal. 2009)("Neutrality is absent where the Judge acts as an advocate for one side or where bias or prejudice prevents the judge from considering relevant facts or law); *U.S. v. Singer,* 710 F.2d 431, 436-37 (8th Cir. 1983)("a trial judge cannot assume the mantle of an advocate")(citing *United States v. Bland,* 697 F.2d 262, 265-66 (8th Cir. 1983).

*Id.* at 954. The Court did not, however, hold that a serial plaintiff is "fit" to act as a class representative in each and every lawsuit. On the contrary, the Court recognized that a plaintiff who invites lawsuits *may not be a fit representative*. *Id.* The Magistrate Judge seemingly missed this point, and consequently appears to have determined that the extent of an individual's role as a serial plaintiff, and his or her motivation behind for pursuing such litigation, is not discoverable. On the contrary, the Seventh Circuit's ruling in *Murray* recognizes that this issue should be analyzed on a case-by-case basis, and is dependent upon the facts presented in each case.

Another, more recent, TCPA case decided by the Seventh Circuit came to the *opposite* conclusion of the *Murray* court because *the facts developed in that case led the court to a different conclusion*. In *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011), a more recent TCPA case not referenced in the Magistrate Judge's Order the Seventh Circuit ruled that in a case, such as the one before this Court, where there is no statutory damages cap and the Defendants are potentially exposed to very large potential liability, there exists a need for a rigorous analysis of whether to certify a class. *Id.* at 724. The court determined that when a would-be class representative's credibility is at stake, adequacy is undermined and the plaintiff cannot therefore represent a class, particularly where a serial TCPA plaintiff invites violations of the TCPA. *Id.* at 727-28. The Magistrate Judge failed to consider that even if the evidence RCL seeks may be inadmissible for one purpose (challenging adequacy), that it might be admissible for another purpose (such as challenging credibility). *See Korando v. Uniroyal Goodrich Tire Co.*, 637 N.E.2d 1020 (Ill. 1994).

RCL will never be able to demonstrate that the Plaintiff has a significant financial motivation to invite these TCPA lawsuits if RCL is precluded from obtaining the evidence with

which to do so. As discussed in RCL's briefs in support of compelling the tax returns, unlike the *Donaca* plaintiff, this Plaintiff refused to testify about his percentage of income derived from TCPA cases. The only way in which RCL can obtain this information is by obtaining the tax returns. The Magistrate Judge misperceived the law cited in the Order denying RCL's Motion to Compel and in the Order denying RMG's Motion to Compel. Neither *Lewis v. Black,* 74 F.R.D. 1, nor *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, stand for the proposition that serial plaintiffs are always adequate class representatives, nor do they state that the TCPA is the perfect vehicle for class action litigation because the damages are too slight. To the contrary, as noted by Judge Posner, in the TCPA context, damages are unlimited because there is no cap. *See CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 724 (7th Cir. 2011); *See also Donaca v. Dish Network, LLC,* 2014 U.S. Dist LEXIS 19740, *2 (D. Colo. 2014).

**B.     The Magistrate Judge Should Have Ordered Plaintiff to Produce Information Pertinent to His Prior TCPA Litigation Track Record**

RCL also sought to compel responses to Requests 59 and 60, which sought documents referring or relating to (1) pre-suit letters the Plaintiff has sent prior to filing TCPA lawsuits, including this case; and (2) the number of TCPA claims (pursued through litigation or not) the Plaintiff has made and how those claims were resolved. [DE 214-2 p. 36, 223-1 pp. 12-13]. As set forth above, the Plaintiff has put his TCPA litigation history at issue by claiming that his extensive experience makes him qualified to serve as a class representative. *See* Plaintiff's Response to Interrogatory #10 at [DE 213-2 pp. 5-6]. RCL sought this information to buttress the argument that the Plaintiff's class action should fail under the predominance requirement of Rule 23 because the Plaintiff's TCPA litigation history underscores that there is no impediment for the average citizen to get the same or similar relief that the Plaintiff has in his other TCPA cases. The Plaintiff has also put this at issue by stating in his pleading that the class should be

certified because "[t]he likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation…. " [DE 58 ¶ 82]. Since the Plaintiff placed the likelihood of individuals filing suit squarely at issue in this case, there exists no better way to defend that claim than to examine the Plaintiff's own litigation history.

RCL argued before the Magistrate Judge that Request 59 merely asks for pre-suit demands, judgments and settlement information, and Request 60 asks for documents indicating the number of TCPA claims that the Plaintiff has filed by the Plaintiff and information concerning the manner in which how they were resolved; RCL certainly did not want every litigation document that the Plaintiff has generated or possesses. [DE 223-1 pp. 12-13]. The information is relevant to show that there is no impediment to putative class members filing these TCPA cases on their own under a statute with unlimited statutory damages.

As far as the TCPA class action litigation is concerned, RCL cited the *Donaca* case as an example of one court that considered prior TCPA litigation as a factor militating against certification. *Id.* and *supra.* RCL also referred to a recent class action settlement where the Plaintiff earned $30,000 while the putative plaintiffs received approximately $40 each and cases where courts have determined that putative class members would actually fare much better by filing individual lawsuits than proceeding with a class action. *Id.*; *See also Kohlenbrenner v. Dickinson,* 1996 U.S. Dist. Lexis 3144 (N.D. Ill. 1996)(court denied class certification when the small possible recovery for a class action was not superior to individual litigation); *Abrams v. United States,* 57 Fed. Cl. 439 (Fed. Cl. 2003)("This court has considered the size of potential awards in deciding whether to certify a class."); *Barnes v. United States,* 68 Fed. Cl. 492, 499 (Fed. Cl. 2005)("Essentially, under [the superiority] prong of the analysis, the court is obliged to

conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action."); [DE 223-1 p. 12].

The Magistrate Judge denied RCL's request to obtain this discovery based on the reasons given for denying RCL's request for tax returns – her belief that the *Murray* decision constitutes binding authority that a serial plaintiff is "fit" to act as class representative. [DE 229 p. 6]. Just as the adequacy of any class representative depends on the facts of each case, so does an examination of superiority. *Murray*, an FCRA case, does not negate RCL's right to explore all facts that weigh on the issue of whether, in the present matter, pursuing this lawsuit as a class action is the superior method upon which to adjudicate this case. *See CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721 (7th Cir. 2011). Thus for all of the reasons set forth *supra,* the Magistrate Judge relied too heavily on the law cited in her Order and by precluding this discovery, she effectively and improperly decided the issue for class certification purposes, and RCL respectfully requests this Court to compel the production of the documents.

After citing above-referenced precedent, the Magistrate Judge stated that Plaintiff has provided a list of all TCPA class actions in which he has been involved along with each lawsuit's case number, and she advised RCL that it could do research as to the outcome of each case. This holding misinterprets RCL's request, which seeks information related to (i) each case Plaintiff has filed and not just federal class actions and (ii) information that is not in the public record and therefore unavailable to RCL. Information pertaining to private correspondence that did not result in the filing of a lawsuit, and settlements that are not publicly filed with a court, are not accessible to RCL. Moreover, it is not a simple task for RCL to acquire information that may be in the public record pertaining to the more than 100 lawsuits Plaintiff filed—much of this

information is currently in Plaintiff's possession whereas RCL would have to pull physical files in state courts and federal courts in several states. It is much less of a burden for Plaintiff to provide this information than to require RCL to research each case. *See Meyer v. S. Pac. Lines*, 199 F.R.D. 610, n. 12 (N.D. Ill. 2001)(the court ordered defendant to produce information in response to an interrogatory even though the information was available as a matter of public record); *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 573 (E.D. Ill. 1975)("Generally an interrogatory is proper although the information sought is equally available to both parties."); *Alexander Binzel Corp. v. Nu-Tecsys Corp.*, 2000 U.S. Dist. LEXIS 5238, *29 (N.D. Ill. 2000)("The court recognizes that a party seeking discovery is not limited to facts exclusively or peculiarly within the knowledge of the opponent. This is true even where the interrogator has at his disposal an adequate or even better source of information.").

Finally, the Magistrate Judge stated that RCL has failed to explain the purpose of obtaining these documents. However, the purposes of obtaining this information relates directly to the aforementioned superiority argument, which was specifically set forth in RCL's Motion and its Reply. [DE 229 pp. 7-8; DE 214 p. 13, DE 223-1 pp. 12-13]. RCL provided ample reasons for compelling these documents. *Id.*; *see also* [DE 58 ¶¶ 82]("The likelihood that individual members of the class will not prosecute separate actions is remote due to the time and expense necessary to conduct such litigation…"). There is no better way to undermine the Plaintiff's contention than to demonstrate it through the Plaintiff's own litigation history.

C.     **The TCPA Internet Forum and Other Information Should Have Been Compelled**

RCL's Request 40 sought production of documents concerning the Plaintiff's internet activity in connection with communications between Plaintiff and with other serial TCPA plaintiffs where these plaintiffs store or discuss information relating to TCPA claims. [DE 214-2

pp. 30-31; DE 223-1 p. 8; DE 214 pp. 9-10]. The Magistrate Judge compelled production of all documents relating to *this case*, but otherwise denied all other communications. The Magistrate Judge denied RCL's request for this information based on a ruling made in response to RMG's request for similar documents in that it was "overbroad" and "not likely to lead to discoverable evidence." [DE 187 p. 3]. For all of the reasons set forth above, the Magistrate Judge erred in failing to compel production of these documents. The Plaintiff has claimed that other consumers would be unlikely to file cases, these documents will show that is simply untrue.

**IV.    Conclusion**

For all of the reasons set forth above, RCL respectfully requests this Court to overrule the denial of RCL's Motion to Compel as to the Requests referenced above, to compel production of the documents requested and for all further relief that the Court deems just and necessary.

                Respectfully submitted,

                By: /s/*Catherine J. MacIvor*
                Catherine J. MacIvor
                cmacivor@fflegal.com
                *Pro Hac Vice*
                Jeffrey E. Foreman
                jforeman@fflegal.com
                ARDC #6193309
                FOREMAN FRIEDMAN, P.A.
                One Biscayne Tower, Suite 2300
                2 South Biscayne Boulevard
                Miami, FL  33131
                Phone: 305-358-6555
                Fax: 305-374-9077
                *Attorneys for Defendants, Royal Caribbean Cruises Ltd. NCL (Bahamas) Ltd.*

## CERTIFICATE OF SERVICE

On this 4th day of December, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court, which will automatically send notice of the filing to all counsel of record. I hereby certify that I have served all counsel and/or pro se parties of record electronically in accordance with the Federal Rules of Civil Procedure.

By: /s/ *Catherine J. MacIvor*
      Catherine J. MacIvor

SERVICE LIST
CASE NO. 12-CV-5746

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Tel: 312-729-5288/Fax: 312-729-5289

Edward A. Broderick
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
Tel: 617-738-7080

Matthew P. McCue
Law Office of Matthew P. McCue
1 South Avenue – Third Floor
Natick, MA 01760
Tel: 508-655-1415
*Attorneys for Plaintiff*

Elliot S. Wiczer (ARDC #6208432)
John M. Sheldon (ARDC #6256666)
Foreman Friedman, PA
500 Skokie Blvd., Suite 325
Northbrook, IL 60062
847-849-4850

Catherine J. MacIvor (*Pro Hac Vice*)
Jeffrey E. Foreman (ARDC #6193309)
Foreman Friedman, PA
2 South Biscayne Blvd., Suite 2300
Miami, FL 33131
305-358-6555
*Attorneys for Royal Caribbean Cruises, Ltd. and NCL (Bahamas), Ltd.*

Joshua E. Bidzinski (ARDC #6302408)
Jeffrey S. Becker (ARDC #6282492)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, IL.  60611
Tel: 312-321-9100
*Attorneys for Carnival Corporation & PLC*

Michael J. Zink
Starr, Bejgiert, Zink & Rowells
35 E. Wacker Drive, Suite 1870
Chicago, IL 60601
Tel: 312-346-9420
*Attorney for Elizabeth Valente*