UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PHILIP CHARVAT**, on behalf of himself and others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**ELIZABETH VALENTE, et al.,**<br><br>**Defendants.** | No. 12 CV 5746<br><br>Magistrate Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff seeks an order compelling Defendants to fully respond to outstanding discovery requests. Specifically, Plaintiff requests that the Court order Defendants to: (1) respond to all discovery requests relating to Defendant Resort Marketing Group's (RMG's) post-Complaint telemarketing efforts; (2) produce a privilege log describing the specific documents withheld on privilege grounds; (3) produce a transcript of the Richard Borst interview; and (4) participate in an ESI protocol agreed to in advance with Plaintiff's counsel. (Dkt. 248 at 1). For the reasons stated below, the motion is granted in part.

### I. DISCUSSION

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Nevertheless, "requested discovery must be tied to the particular

claims at issue in the case." *Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *3 (N.D. Ill. Apr. 15, 2002); *see Moore v. Morgan Stanley & Co.*, No. 07 C 5606, 2008 WL 4681942, at *2 (N.D. Ill. May 30, 2008). Under Rule 37, a party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. Fed. R. Civ. P. 37(a)(3)–(4). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citation omitted); *see Cannon v. Burge*, No. 05 C 2192, 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement."); *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450; *accord Cannon*, 2010 WL 3714991, at *1. Finally, the Court has broad discretion whether to compel discovery. *See Kodish*, 235 F.R.D. at 450.

### A. Post-Complaint Discovery

Defendants refuse to produce documents and respond to interrogatories that concern the time period following the filing of the Complaint because Plaintiff has identified only a single report of post-Complaint telemarketing efforts by Defendants. (Dkt. 266 at 2–3). Plaintiff, for instance, requests "all correspondence, including emails" between the cruise lines and RMG. Whether concerning the time period

prior to or following the filing of the Complaint, it is difficult for the Court to imagine a more relevant document request.

The Complaint in this case alleges a *continuing* violation of the Telephone Consumer Protection Act of 1991 (TCPA). Post-Complaint discovery is relevant to Plaintiff's claims *and* reasonably likely to lead to discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). This would be true even without the evidence that has been produced demonstrating that a consumer complained about Defendants' telemarketing efforts after this lawsuit was filed. (Dkt. 273 at 2–3 & Ex. 1). It is commonsense that information and documents created after filing the Complaint can be relevant and must be produced. *United States v. Capitol Servs., Inc.*, 89 F.R.D. 578, 586–87 (E.D. Wis. 1981); *see Standard Oil Co. v. F.T.C.*, 475 F. Supp. 1261, 1270 (N.D. Ind. 1979) ("[I]t is simply a fact of life that in major adjudications much discovery will be post-complaint discovery."); *Liggett Grp., Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 206–07 (M.D.N.C. 1986) ("In this case, where ongoing injury is alleged, the end date for post-complaint discovery is a matter very much for the discretion of the Court.").

Defendants' relevance objections based on the fact that the discovery sought postdates the filing of the lawsuit are **overruled**.[1]

---

[1] The Court is similarly troubled by Defendants' objections to practically all of Plaintiff's general definitions. (*See* Dkt. 248, Ex. H at 6–11, Ex. K at 4–15, Ex. M at 4–15). For examples, Defendants object to Plaintiff's definitions of "Cruise Defendants," "telemarketing," "You or Your," and "pre-record" as vague, ambiguous, overly broad, unduly burdensome, and oppressive. These objections are **overruled** as frivolous.

## B. Privileged Communications

Plaintiff also contends that Defendants have entered into a joint defense agreement and "refused to produce any discovery whatsoever relating to RMG's telemarketing following the filing of this lawsuit on the basis that such information is exempt from discovery under the work-product doctrine [or] the attorney-client privilege." (Dkt. 248 at 10). Plaintiff requests that Defendants "be ordered to respond to all of Plaintiff's discovery requests without limitation." Defendants counter that Plaintiff's request is merely a veiled attempt to pierce their privileged communications. (Dkt. 266 at 2–3; *see* Dkt. 267 at 1, 4). To resolve this dispute, the Court must clarify the appropriate ambit of privilege objections.

Defendants make blanket objections to discovery requests, contending that virtually *all* post-Complaint information is protected from disclosure by the attorney-client privilege, the work-product doctrine, or the common interest doctrine. (Dkt. 248 at 10 & Exs. I–N; *see* Dkt. 266 at 2–7; Dkt. 267 at 4–5; Dkt. 273 at 6). It is as if, because counsel has become involved, the corporate Defendants are no longer operating entities subject to the federal rules of discovery. For instance, in response to Request 2, which seeks "all documents that evidence the terms of any oral contract entered between You and RMG," Royal Caribbean and Norwegian each "objects to the word 'evidence' since it would require a subjective determination on the part of [Defendant] as to whether [Defendant's] counsel believe documents 'evidence' oral contracts between [Defendant and RMG] that would violate the work-product privilege." (See Dkt. 248, Ex. K at 17). Reliance on the work product privilege in this

context borders on sanctionable conduct and is **overruled**. Moreover, use of the work product privilege in this context makes the Court question the sincerity of Royal Caribbean's invocation of the work-product doctrine in response to 28 other discovery requests.

To be clear, in this context "evidence" means the same as "show," "express," "indicate," or "demonstrate"—all common English words which require no special knowledge to understand. This request is no different than any other typical document request, which requires an attorney to review for responsiveness, relevance and privilege.

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Thus, "because the privilege is in derogation of the search for the truth, it is construed narrowly." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citation omitted); see *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (scope of privilege should be "strictly con-

fined within the narrowest possible limits"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004) ("The Illinois Supreme Court has . . . stated that it is the attorney-client privilege, not the duty to disclose, that is the exception and, therefore, the privilege ought to be strictly confined within its narrowest possible limits.") (citation omitted). As Defendants explain in their motion to compel Plaintiff to respond to deposition questions, "Attorneys do **_not_** understand the narrowness of the attorney-client privilege. The privilege protects communications, **_not_** facts." (Dkt. 241 at 13) (emphasis in original) (citing *Specht v. Google, Inc.*, 268 F.R.D. 596, 601 (N.D. Ill. 2010)). Indeed, as Defendants themselves stress, "*facts are never privileged*." (*Id.*) (emphasis in original).

The work product doctrine, formally codified in Rule 26, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). The intent of the work-product doctrine "is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992); *see Hickman v. Taylor,* 329 U.S. 495 (1947). However, the commencement of the lawsuit "does not automatically qualify a company's internal reports as work product." *E.E.O.C. v. Commonwealth Edison*, 119 F.R.D. 394, 395 (N.D. Ill. 1988). For example, the work-product doctrine "does not protect factu-

al information that a lawyer obtains when investigating a case." *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005). "If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine." *Allendale*, 145 F.R.D. at 87; *see* Fed. R. Civ. P. 26(b)(3) (advisory committee notes). "A party that asserts the work product privilege bears the burden of establishing that *the primary motivating purpose* behind the creation of a document or investigative report was to aid in possible future litigation." *Commonwealth Edison*, 119 F.R.D. at 395 (emphasis added) (citation omitted).

Finally, a claim relying on the common interest doctrine requires a demonstration that the communication at issue was made in confidence and that the client reasonably understood it to be so given. *See United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985). Moreover, the communication must have been made in furtherance of joint defense efforts. *See Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 476 (D. Colo. 1992). Significantly in this case, communications that concern only business matters are not subject to attorney-client privilege or work-product protections and, thus, are not protected by the common interest doctrine. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014) ("documents prepared for business purposes or for the purpose of obtaining advice on political, strategic, or policy issues do not receive protection") (citation omitted); *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 568 (N.D.

Ill. 2007) ("The attorney-client privilege only extends to those communications involving legal advice, not business advice or other technical information.").

Carnival raises a privilege objection to 14 Document Requests and 3 Interrogatories. Royal Caribbean and Norwegian raise privilege objections to 24 Document Requests and 5 Interrogatories. However, in the absence of a privilege log and in light of the numerous other objections raised, it is not clear whether any information is actually being withheld based on the assertion of these privileges. Defendants may not withhold documents merely because an attorney was included in the correspondence, and correspondence among the parties to the Joint Defense Agreement is not privileged *unless* the correspondence is confidential (not shared with a third party) *and* made in furtherance of joint defense efforts. Thus, documents that are purely factual in nature and are not seeking or do not contain legal advice, or documents shared with nonparties, or documents prepared for business purposes are not protected and must be produced. Here, for example, "all communications between the co-defendants that pertain to continued telemarketing endeavors and compliance as well as the business relationship" (*see* Dkt. 266 at 6) are *not privileged* and must be produced. Similarly, "communications between the parties directly" must be produced. (*Id.*). Of course, "documents relating to the defense of this action," for instance, communications among the defense counsel about the legal strategy, are covered by the work-product doctrine, as are notes from meetings with all the parties and counsel. But emails that went between either of the cruise lines and RMG before *or after* the filing of the lawsuit about their business activities

(e.g., telemarketing, pricing, FCC findings or complaints, personnel changes) are discoverable.

Defendants' privilege objections are too numerous for the Court to explicitly address each discovery request in detail. Nevertheless, the Court expects Defendants to carefully and thoroughly adhere to the letter and spirit of this Order as to each and every discovery request. To provide the parties with *additional* guidelines, the Court rules on the following specific objections:

### 1. *Communications Among Defendants*

Requests 5 and 6 to the cruise line Defendants seek correspondence between RMG and those Defendants. Defendants object in part "because a response to this request would encompass documents protected by the attorney client, work product and joint defense privileges since it is not limited to the time period prior to the commencement of this action nor does it exclude documents relating to the defense of this action." (*See* Dkt. 248, Ex. K at 19). Carnival identifies five pages of documents that it produced in response to these two document requests. (Dkt. 248, Ex. I at 14–15). Royal Caribbean and Norwegian identify approximately 150 pages of documents produced in response to these two interrogatories. (Dkt. 248, Ex. K at 19–21).

Defendants' blanket assertion of the attorney client, attorney work product and joint defense privileges objections are **overruled**. As stated previously, correspondence between the parties directly—where no counsel was included—even if it was created after the lawsuit was filed, is not privileged and must be produced. Moreo-

ver, as discussed above, documents that are purely factual in nature and don't contain legal advice, or documents shared with nonparties, or documents prepared for business purposes are not protected and must be produced.

### *2. Communications About RMG*

Requests 7–9 and 40 seek documents discussing telemarketing conducted by RMG. Defendants Royal Caribbean and Norwegian Cruise Lines object based upon the attorney client, work product and joint defense agreement.[2] (*See*, *e.g.*, Dkt. 248, Ex. K at 21–24, 45). The blanket objection is **overruled**. If counsel for Royal Caribbean prepared a memorandum based on her review of communications about RMG, that memorandum is not discoverable. But any communications among employees at Royal Caribbean about RMG and its telemarketing activities, not specifically seeking legal advice, are subject to discovery.

### *3. Websites & Discipline*

Requests 20–24, 30, and 32 to Carnival and Requests 19–23, and 31 to Royal Caribbean seek documents related to various websites or the websites' owners. Requests 24 and 25 to Royal Caribbean and Norwegian seek information related to discipline or threatened discipline issued by the cruise line for improper telemarketing efforts. The Court cautions Defendants that "facts are never privileged." Information about the various websites in the possession of the Cruise Lines is discover-

---

[2] Carnival does not raise a privilege objection to these Requests. It does however object based on relevance. Since this goes to the heart of the Plaintiff's allegations in the case, this objection is **overruled** as frivolous.

able. Similarly, factual information—but not legal advice—about discipline for improper telemarketing is discoverable.

### 4. *Valente, Borst & Allerton*

Request 10 to Royal Caribbean and Norwegian seeks documents related to Marie Valente, Richard Borst, and Madeline Allerton.[3] Defendants object to disclosing information pertaining to their investigation of facts relating to this lawsuit. (*See, e.g.*, Dkt. 248, Ex. K at 24–25). Counsel's notes of discussions with Valente's counsel for these individuals are not discoverable. But if employees of Royal Caribbean or Norwegian have email correspondence containing facts about these individuals, those are relevant and discoverable emails—whether they were generated before or after the filing of the lawsuit.

### 5. *Attorneys*

Request 44 to Carnival and Request 43 to Royal Caribbean and Norwegian seeks the identity of attorneys retained to provide representation in regards to these allegations. (*See* Dkt. 248, Ex. K at 48). Defendants contend that such documents are privileged and are inappropriate for discovery. The blanket objection is **overruled**. The identity of attorneys, even those who have not filed a formal appearance in this matter, is not privileged.

### 6. *Interrogatories Seeking Post-Complaint Information*

Interrogatory 5 seeks an explanation about RMG's authority to sell Defendants' services. Interrogatory 10 seeks details about due diligence performed to ensure

---

[3] Carnival did not raise any privilege objection to these same requests.

that RMG's telemarketing complied with the law. Interrogatories 12–13 seek a description of how complaints were investigated. These requests go to the heart of Plaintiff's allegations. Defendants contend that following commencement of the lawsuit, such information is privileged. (*See* Dkt. 248, Ex. L at 20). As discussed more thoroughly above, the commencement of the lawsuit does not automatically qualify otherwise discoverable material as work product. *Commonwealth Edison*, 119 F.R.D. at 395. The objection is **overruled**.

### 7. *Borst Transcript*

Request 13 seeks the transcript of the meeting between Mr. Borst, a former RMG employee, and defense counsel. Prior to Mr. Borst's deposition, defense counsel asked him a series of questions, under oath, in the presence of a court reporter. The Court has reviewed a copy of the transcript of the interview *in camera*. Defendants object as protected by the work-product doctrine. (*See* Dkt. 248, Ex. K at 27). The objection is **sustained**.

The Federal Rules provide that "documents and tangible things that are prepared in anticipation of litigation or trial" are discoverable only upon a showing that the party seeking discovery "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). The taking of a sworn, recorded, and transcribed witness statement by an attorney without notifying opposing counsel is proper and, absent "substantial need," is protected by the work-product doctrine. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1052–53 (7th Cir. 1998) ("Rule 26

therefore assumes that the taking of a witness statement is entirely proper, even where the statement is recorded and transcribed by a court reporter, and the rule proceeds to address the circumstances under which the statement may be discoverable."); *see Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970), *affirmed*, 400 U.S. 348 (1971) (Statements of witnesses taken by an attorney are work-product.).

Therefore, the Borst transcript is not discoverable unless Plaintiff can demonstrate that he has a substantial need for the transcript, which he has failed to do. Plaintiff contends that he needs the transcript "both for possible impeachment purposes and to explore the basis for any purported change of views on Mr. Borst's part." (Dkt. 248 at 12). But the mere need for possible impeaching material is not sufficient to allow discovery of attorney work product. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622–23 (7th Cir. 2010); *see also Gay v. P.K. Lindsay Co.*, 666 F.2d 710, 713 (1st Cir. 1981) (statement in attorney's notes that could be used to impeach witness was not discoverable when witness could have been deposed). The Court expresses no opinion as to whether Defendants can use the Borst Transcript for purposes of summary judgment or at trial in light of it not being produced during discovery. *See Pasina ex rel. Taputu v. California Cas. Indem. Exch.*, No. 08 CV 1199, 2010 WL 3860646, at *7 (D. Nev. Sept. 28, 2010) ("Even evidence offered for impeachment and rebuttal may be excluded if a party withheld it in the face of a particular discovery request."); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule [26(e)], the party is not allowed to use

that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

### 8. *Privilege Log*

In sum, Defendants are ordered to revise their discovery responses in compliance with this Order. Defendants shall then produce all responsive documents that do not meet the strict privilege and broad relevance guidelines set forth above. Defendants are also required to prepare a privilege log that satisfies the requirements of Rule 26(b)(5)(A). The Court anticipates that any remaining responsive, privileged documents will be a small subset of the "thousands and thousands of documents" that Defendants suggest are privileged. (*See, e.g.*, Dkt. 267 at 4–5). Nevertheless, the privilege log need not include post-lawsuit communications that are *only* among attorneys or *only* between attorneys and a single client. All other responsive communications where a privilege is asserted must be logged. Thus, for example, all communications that assert the joint defense privilege must be logged. The log "must describe the nature of the documents or communications not produced in a manner that, without revealing any potentially privileged information, will enable the other parties to assess the claim." *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010).

### C. ESI Protocol

At the July 30, 2014 status hearing, the Court ordered Plaintiff to hire an ESI expert to work with Carnival and agree on an efficient ESI search protocol. (Dkt. 206; Tr. 32–33, 66) ("I want [Carnival] to produce . . . the emails that you have. I

want [Carnival] to work with Plaintiff's IT person or ESI person."). Two months later, after retaining an ESI expert, Plaintiff's counsel provided Carnival's counsel with a proposed ESI protocol. (Dkt. 248 at 6). Carnival responded that it had already begun to search Carnival's files and the Court's Order required him only to "search the files my client provided to me" and "required only that [Plaintiff] retain an ESI consultant to assist in the process." (*Id.* at 6 & Ex. E). Plaintiff requests that Defendants be compelled to participate in an ESI protocol based upon search terms and custodians agreed to in advance with Plaintiff's counsel. (*Id.* at 14).

In response, Carnival asserts that it conducted a search for responsive information based on the 269 search terms provided by Plaintiff's counsel against the electronically stored data from a total of 11 custodians. (Dkt. 266 at 8–9 & Ex. E). In his reply, Plaintiff acknowledged that Carnival adopted the search terms proposed by Plaintiff's counsel, but complained that Carnival unilaterally chose the custodians without consulting Plaintiff. (Dkt. 273 at 6). Plaintiff identifies several custodians who should have been included, such as Carnival's president, his executive assistant, and the vice president of marketing, who allegedly were all aware of complaints about RMG's telemarking activities. (*Id.* 6–7).

The Court appreciates that the parties have cooperated on the selection of appropriate search terms. While Plaintiff could have had an ESI expert retained more expeditiously, and the parties should have communicated during the intervening time period, the Court is troubled by the unilateral selection of custodians by Carnival without Plaintiff's input.

Plaintiff and Carnival are ordered to promptly meet and confer, with Plaintiff's ESI expert and whomever Carnival designates, and (1) answer Plaintiff's questions about the searches that were completed and (2) agree on any follow-up searches that need to be completed. Within 30 days of the date of this Order, Plaintiff and Carnival shall file an agreed plan for completion of Carnival's ESI discovery.

## II. CONCLUSION

Plaintiff's Motion to Compel Responses to Plaintiff's Discovery [248] is **GRANTED IN PART AND DENIED IN PART**. Defendants shall amend their discovery responses and produce responsive, nonprivileged documents by March 20, 2015. Defendants shall produce their privilege logs by March 27, 2015. Plaintiff and Carnival shall file their agreed ESI discovery plan by April 3, 2015.

E N T E R:

Dated: March 3, 2015

_Mary M Rowland_
MARY M. ROWLAND
United States Magistrate Judge