UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH VALENTE, et al.,<br><br>Defendants. | No. 12 CV 5746<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

The parties seek an order concerning the ambit of relevant discovery. (*See* April 17, 2105 Hr'g Tr. 87, 95; May 1, 2015 Hr'g Tr. 40–41). They agree that there are three categories of ESI between each of the Cruise Line Defendants and Resort Marketing Group (RMG)—marketing, nonmarketing business, and personal. (5/1 Tr. 33–35). The parties also agree generally that marketing-related ESI must be produced and that purely personal ESI need not. (*Id.* 12, 23, 25, 27–29, 33–35). But Plaintiff contends that nonmarketing business ESI is relevant to his vicarious liability claim while the Cruise Line Defendants argue that it is not. (*Id.* 36–37, 42).

A. Discovery

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Nevertheless, "requested discovery must be tied to the particular

claims at issue in the case." *Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *3 (N.D. Ill. Apr. 15, 2002); *see Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Cannon v. Burge*, No. 05 C 2192, 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement."). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

**B. Vicarious Liability**

Plaintiff's Second Amended Class Action Complaint asserts that Defendants violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), which makes it unlawful to telemarket using an automatic telephone dialing system without the prior consent of the called party. Specifically, Plaintiff contends that RMG made pre-recorded telemarketing calls and that the Cruise Line Defendants are vicariously liable for these calls pursuant to principles of federal agency law.

In May 2013, the Federal Communications Commission (FCC) clarified that a seller[1] is not directly liable for a violation of the TCPA unless it "initiates" a call, but that it could "be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *In re Joint Petition Filed By Dish Network, LLC, Declaratory Ruling*, 28 FCC Rcd. 6574, 6582–83 ¶¶ 24–26

---

[1] "The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

(May 9, 2013) [hereinafter *FCC Ruling*]; *accord Toney v. Quality Res., Inc.*, —F. Supp. 3d—, No. 13 CV 0042, 2014 WL 6757978, at *9 (N.D. Ill. Dec. 1, 2014). The FCC further concluded that a seller is subject to vicarious liability "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *FCC Ruling*, 28 FCC Rcd. at 6584 ¶ 28. In June 2013, the district court determined that the *FCC Ruling* clearly applies in this action. (Dkt. 117, 141) (finding that the *FCC Ruling* makes clear that Plaintiff's claims against the Cruise Line Defendants are cognizable under a vicarious liability theory).

**C. Agency**

To determine the proper scope of discovery in this matter, the Court finds it necessary to explore federal agency law. In doing so, the Court in no way opines on the merits of Plaintiff's claims or Defendants' defenses. Agency law under federal common law and Illinois law are similar and "both accord with the Restatement of Agency." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008); *see NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013). Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "[T]o bind the principal, the agent must

have either actual or apparent authority, or the principal must ratify the agent's unauthorized actions." *ABN AMRO*, 595 F. Supp. 2d at 821.

Actual authority may be express or implied. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." *Id.* (citation omitted). "Only the words and conduct of the alleged principal, not the alleged agent, establish the [implied] authority of an agent." *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.*, 306 Ill. App. 3d 1015, 1021 (1999); *accord Opp*, 231 F.3d at 1064. Thus, implied actual authority is created "through words or conduct of the principal which, reasonably interpreted, cause . . . an agent . . . to believe that the principal consents to have an act done on his behalf." *Moriarty v. Hitzeman Funeral Home, Ltd.*, No. 98 C 3563, 1999 WL 286077, at *7 (N.D. Ill. Apr. 29, 1999).

An alternative way of showing authority is by ratification: "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). A principal can ratify an act by conduct that justifies a reasonable assumption that the person so consents. *Id.* § 4.01(2). A principal, however, "is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.* § 4.01 cmt. b. The *FCC Ruling*, quoting the Restatement, found that: "a seller may be bound by the unauthorized conduct of a telemarketer if the seller 'is aware of ongoing conduct . . . by [the telemarketer]' and the seller 'fail[s] to terminate,' or, in

some circumstances, 'promot[es] or celebrat[es]' the telemarketer." *FCC Ruling*, 28 F.C.C. Rcd. 6574, 6594 ¶ 34 n.104 (quoting Restatement (Third) of Agency § 401 cmt. d).

**D. Discussion**

Plaintiff argues that the depth and extent of the overall business relationship between each of the Cruise Line Defendants and RMG is relevant to the agency analysis. (4/17 Tr. 60, 67). Defendants contend that RMG interacts with the Cruise Line Defendants "concerning a myriad of issues" and assert that these other subjects are not relevant to the "telemarketing endeavors at issue in this Lawsuit." (Dkt. 327 at 9 n.4; *see* 4/17 Tr. 66). Instead, the Cruise Line Defendants argue that the agency analysis is limited to the their relationships with RMG only with regards to telemarketing calls. (4/17 Tr. 68, 79). After careful consideration of the parties' arguments, including two lengthy hearings on the issue, the Court disagrees.

Discovery is broad, and Plaintiff is entitled to any evidence that a factfinder could evaluate to determine whether an agency relationship existed. Regardless of whether Plaintiff is ultimately successful at proving his vicarious liability argument, he is entitled to pursue it through discovery.

As made clear by the law on agency recited above, RMG's authority to act on behalf of any one of the Cruise Line Defendants will be a fact-intensive question and will be determined by its overall business relationship with each of the Cruise Line Defendants. Significantly, an agency relationship can be based on circumstantial evidence. *Opp*, 231 F.3d at 1064 ("Implied authority is actual authority that is im-

plied by facts and circumstances and it may be proved by circumstantial evidence.") (citation omitted). So even if a Cruise Line Defendant did not give express authority to RMG to perform telemarketing activities prohibited by the TCPA, a factfinder could determine that RMG reasonably believed—through the Cruise Line's words or conduct during the course of their overall business relationship—that the Cruise Line consented to have the telemarketing performed on its behalf. *Moriarty*, 1999 WL 286077, at *7 (Implied actual authority is created "through words or conduct of the principal which, reasonably interpreted, cause . . . an agent . . . to believe that the principal consents to have an act done on [its] behalf."). Indeed, "[w]hen there is a disagreement over whether an act is actually authorized, the course of dealing between principal and agent is relevant." *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1223, 1234 (E.D. Wis. 1993) (citing *Rockford Life Insurance Co. v. Rios*, 128 Ill.App.2d 190 (1970), and Restatement (Second) of Agency § 34 (1957)); *see Steinberg v. Entrust Midwest, LLC*, No. 10 C 332, 2011 WL 250432, at *3 (N.D. Ill. Jan. 25, 2011) ("Implied authority may be found in the parties' relationship . . . ."); *City of Chicago v. St. Paul Fire & Marine Ins. Co.*, No. 97 C 5756, 1998 WL 111564, at *6 (N.D. Ill. Mar. 11, 1998) *on reconsideration*, No. 97 C 5756, 1998 WL 171787 (N.D. Ill. Apr. 10, 1998) ("Prior dealings, conduct, and statements of a purported principal and agent are sufficient to establish implied actual authority.").

Another way to establish an agency relationship is to show ratification. During this discovery stage of the case, the Court finds that correspondence between RMG and the Cruise Lines concerning nonmarketing business could be relevant to ratifi-

cation. *ABN AMRO*, 595 F. Supp. 2d at 822 ("Like authority, ratification need not be express; it may be inferred from surrounding circumstances . . . ."). For instance, the extent of control, if any, that a Cruise Line exercised over RMG's business activities other than telemarketing and the course of dealing between them can constitute circumstantial evidence of ratification. *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) (citing *FCC Ruling*); *see Resolution Trust Corp. v. Hardisty*, 269 Ill. App. 3d 613, 619 (1995) ("A previous course of dealing sanctioned or ratified by the principal is competent as having a tendency to prove an agency relationship."). Thus, discovery into the Cruise Line Defendants' nonmarketing business relationship with RMG is relevant to determining vicarious liability.

Carnival argues that this is not the typical telemarketing vicarious liability case (e.g. where Company A hires Telemarketing Company B). (4/17 Tr. 65, 77). Rather, because RMG, like many travel agencies, is able to book cruises for customers of the Cruise Lines, there will be documents that pertain to this business relationship that have no bearing on telemarketing. (*Id.* 65–66, 77–81, 85–86; *see also* 5/1 Tr. 18). If Plaintiff can establish that RMG engaged in robocalls, whether RMG was in an agency relationship *for purposes of those robocalls* with any of the Cruise Line Defendants when it made those robocalls will be a question for the district court. But in light of the fact-intensive nature of the agency question, the Court believes discovery into the individual Cruise Line Defendants' nonmarketing business relationships with RMG is relevant. Discovery into the nonmarketing as well as the marketing relationships is necessary to allow the ultimate factfinder to determine

whether RMG reasonably believed it had actual *implied* authority to conduct the telemarketing at issue in this case.

Carnival also contends that if Plaintiff is entitled to discovery about its nonmarketing business relationship with RMG, Carnival will have to produce information to demonstrate that its relationship with RMG is no different than its relationships with other travel agents. (5/1 Tr. 10, 33). This argument is not persuasive to the Court. Whether there is an agency relationship or whether RMG exceeded its actual authority will be determined on the facts of that relationship, not in comparison with other travel agencies. Indeed, it's the principal's duty to monitor each agent to make sure that it is not exceeding its authority. *ABN AMRO*, 595 F. Supp. 2d at 822.

RCL/NCL contend that it will be "exorbitantly expensive" to produce nonmarketing business information because they will need to redact credit card information, social security numbers, passport numbers, and other personal information. (4/17 Tr. 80, 84). But Plaintiff agrees that Defendants do not need to produce customer-centric ESI, including emails which contain booking confirmations, credit card numbers, passport numbers, or sensitive HIPAA details. (4/17 Tr. 89; 5/1 Tr. 13, 23–24, 29). Further, Plaintiff agrees that "email blasts" sent out to 90,000 travel agencies are not relevant and need not be produced. (4/17 Tr. 70–72, 77).

Unlike RCL/NCL, Carnival's objection to producing nonmarketing business information is "not about burden." (5/1 Tr. 41). Instead, Carnival's objection is based solely on relevance, as described above. The Court performed an in camera review of

seven sample emails that Carnival contends are not relevant. (*See id.* 9, 27). Several of these emails (nos. 2, 5, 6) contain purely personal information—like weddings, funerals, birth announcements, and charity events—which the parties have agreed are not relevant and need not be produced. (*Id.* 35, 37; *see also id.* 9). But the other emails (nos. 1, 3, 4, 7), all of which discuss business-related topics, are relevant to the vicarious liability issue and must be produced.

**E. Conclusion**

The Cruise Line Defendants must produce all business-related ESI—whether telemarketing or otherwise—exchanged with RMG that are otherwise responsive to Plaintiff's discovery requests or the ESI protocols. The parties are required to meet and confer regarding the scope of superfluous information that need not be produced. Plaintiff has already agreed that "email blasts" sent to 90,000 travel agencies and customer-centric ESI need not be produced. To save the time and expense of carving out these exceptions as well as purely personal ESI, the Cruise Line Defendants are urged to consider Plaintiff's proposal that they produce all ESI between certain custodians at RMG and certain custodians at the Cruise Line Defendants. (4/17 Tr. 89, 93; 5/1 Tr. 12–13).

E N T E R:

Dated: June 8, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge