UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**PHILIP CHARVAT, on behalf of himself and others similarly situated,**

**Plaintiff,**

v.

**ELIZABETH VALENTE, et al.,**

**Defendants.**

No. 12 CV 5746

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks an order compelling defendant Carnival Corporation to produce certain documents listed on a privilege log and withheld as privileged. (Dkt. 303 (Mot.) at 13 & Ex. 17 (Privilege Log)). For the reasons stated below, the motion is granted in part and denied in part.

### I. DISCUSSION

In January 2011, Carnival received four complaints from consumers, asserting that defendant Resort Marketing Group (RMG) was engaged in prohibited telemarketing activities and misrepresenting its relationship with Carnival. (Dkt. 329 (Resp.) at 5). During its investigation into these consumer complaints, Carnival retained outside counsel to advise the most appropriate method for preventing RMG from making further misrepresentations. (*Id.* 5; *see* Mot. 6–7). Carnival asserts that it has "produced a majority of the communications related to [its] investigation." (*Id.*

5 & n.4). Carnival contends, however, that the 14 documents listed on the Privilege Log[1] "relate specifically to legal advice sought by Carnival from outside counsel" and are properly withheld as privileged. (Resp. 5).

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Thus, "because the privilege is in derogation of the search for the truth, it is construed narrowly." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citation omitted); see *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (scope of privilege should be "strictly confined within the narrowest possible limits"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004) ("The Illinois Supreme Court has . . . stated that it is the attorney-client privilege, not the duty to disclose, that is the exception and, therefore, the privilege ought to be strictly confined within its narrowest possible limits.") (citation omitted).

---

[1] The Privilege Log lists 16 documents but two were inadvertently listed twice: document 4 is the same as 5, and document 9 is the same as 11. (Resp. 1 n.1).

After conducting an in camera review of the documents described on the Privilege Log and considering the parties' arguments, the Court rules as follows.

**A. Documents 1, 2, 6, and 8**

Documents 1, 2, 6, and 8 contain correspondence between Carnival's outside counsel and Carnival employees for the purpose of investigating the legality of RMG's use of Carnival's trade name in its telephone solicitations. (Resp. 7; *see* Privilege Log). Plaintiff concedes that these documents are privileged. (Mot. 7, 11). In any event, the Court finds that these documents are protected by the attorney-client privilege. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) ("[F]actual investigations performed by attorneys as *attorneys* fall comfortably within the protection of the attorney-client privilege.") (emphasis in original).

**B. Documents 3 and 7**

Documents 3 and 7 are emails between Nora Hernandez, a Carnival paralegal, and other Carnival employees, for the purpose of either gathering information at the request of outside counsel or reflecting on counsel's legal advice. (Mot. 11; Resp. 8; *see* Privilege Log). Plaintiff contends that "a paralegal is not an employee, and communications with a paralegal are not entitled to any more protection than communications with any other non-attorney." (Mot. 11) (quoting *Naham v. Haljean*, No. 08 C 519, 2010 WL 3025574, at *2 (N.D. Ill. July 30, 2010)). But *Naham* involved a pro se plaintiff who had hired a paralegal and then argued that their communications were privileged. 2010 WL 3205574, at *2. The *Naham* court concluded that the attorney-client privilege did not apply because there was no attorney in-

volved in the relationship between Naham and the paralegal. *Id.* Regardless, the attorney-client privilege attaches to communications concerning matters sought by counsel or for the purpose of disseminating legal advice. *Stopka v. Alliance of Am. Insurers*, No. 95 C 7487, 1996 WL 204324, at *5 (N.D. Ill. Apr. 25, 1996) ("The attorney-client privilege applies to communications made by corporate employees concerning matters pertinent to their corporate duties if sought by the corporation's attorney in order to formulate and render legal advice to the corporation.") (citing *Upjohn*, 449 U.S. at 394); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 5 (N.D. Ill. 1980) (finding documents reflecting the necessary dissemination of legal information among non-attorneys privileged).

**C. Documents 4, 9–10, 12, and 15–16**

Plaintiff argues that because documents 4, 9–10, 12, and 15–16 are communications between Carnival employees who are neither attorneys nor paralegals, they are not protected by attorney-client privilege. (Mot. 11–12). After carefully reviewing these communications, however, the Court finds that they are all directly related to gathering the information sought by outside counsel or reflect upon counsel's legal advice. *See Stopka*, 1996 WL 204324, at *5; *Sneider*, 91 F.R.D. at 5.

**D. Documents 13 and 14**

Documents 13 and 14 are email communications exchanged between Angie Morales, another Carnival paralegal, and Alexandra Missagia, director of worldwide sales for Carnival, summarizing conversations they had with Tom Panici, account manager with responsibility for RMG, in March 2011. Morales drafted the email

with the intention of sending it to Mike Julius, Managing Director of U.S. Sales for Carnival.

While this email exchange is contained within an email chain disseminating outside counsel's advice, the March 2011 conversations predated counsel's request for information in April 2011. Further, the Court concludes that the information described in the March 2011 conversation with Panici was not "necessary" to disseminate counsel's advice. *Compare Sneider*, 91 F.R.D. at 5 (finding documents reflecting the necessary dissemination of legal information among non-attorneys privileged). Thus, the facts described in documents 13 and 14 are neither directly related to information sought by outside counsel nor reflect upon counsel's legal advice.

Documents 13 and 14 shall be produced.

**E. Work Product**

Carnival also contends that the documents are protected by the work product doctrine. (Resp. 9–11; *see* Privilege Log). The work product doctrine, formally codified in Rule 26, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). The intent of the work-product doctrine "is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions." *Al-*

lendale Mut. Ins. Co. v. Bull Data Sys., Inc., 145 F.R.D. 84, 87 (N.D. Ill. 1992); see Hickman v. Taylor, 329 U.S. 495 (1947).

Plaintiff contends that the work product doctrine cannot apply in *this* lawsuit because they were prepared in anticipation of separate litigation. (Mot. 12). On the contrary, courts generally hold that when documents have been prepared in anticipation of litigation, but not in anticipation of the litigation in which work product protection is asserted, the documents should still be treated as work product. David M. Greenwald, *Protecting Confidential Legal Information*, § IV.A.3.c, at 223 (2012) (collecting cases); *see Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (Work product protection "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related."); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 182 (N.D. Ill. 2006) (concluding that the work product doctrine is best served by extending it to subsequent litigation).

Here, Carnival hired outside counsel to determine whether it should take legal action against RMG with respect to how RMG was representing its relationship with Carnival. (Resp. 10). Thus, documents 1–12 and 15–16 are protected from disclosure by the work product doctrine. They were prepared either in response to outside counsel's request for information or to disseminate counsel's legal advice. Documents 13 and 14, however, as described above, are outside the scope of the work product doctrine. *Allendale*, 145 F.R.D. at 87 ("If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for

litigation, they are outside the scope of the work product doctrine."). Documents 13 and 14 were not shared with counsel; instead, they were created to provide background for a business decision. *Allendale*, 15 F.R.D. at 87. Documents 13 and 14 contain no strategies, legal theories or mental impressions. *Id.* (The intent of the work-product doctrine "is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions."). In sum, Carnival has not met its burden to establish that documents 13 and 14 were created in anticipation of imminent litigation. *E.E.O.C. v. Commonwealth Edison*, 119 F.R.D. 394, 395 (N.D. Ill. 1988) ("A party that asserts the work product privilege bears the burden of establishing that *the primary motivating purpose* behind the creation of a document or investigative report was to aid in possible future litigation.") (emphasis added) (citation omitted).

**F. Sanctions**

Plaintiff also requests spoliation sanctions or instructions given Carnival's admitted destruction of computer files belonging to Morales and Hernandez. (Mot. 12–13). "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010). Motions seeking spoliation sanctions result from an alleged failure to preserve relevant evidence. "A party has a duty to preserve evidence, including any relevant evidence over which the party

has control and reasonably knew or could reasonably foresee was material to a potential legal action." *Krumwiede v. Brighton Assocs., L.L.C.*, 05 C 3003, 2006 WL 1308629, at *8 (N.D. Ill. May 8, 2006).

Carnival acknowledges deleting the computer files belonging to Morales and Hernandez consistent with its routine business practices of deleting files 30 days following the termination of employment with Carnival. (Resp. 11). Hernandez left Carnival in September 2011 and Morales in October 2011. (*Id.*). The RMG investigation concluded in July 2011. Thus, as Carnival asserts, "at the time of their respective departures from the company, Carnival had completed its investigation of RMG and did not anticipate any imminent litigation against the travel agency." (*Id.*).[2]

Nevertheless, Plaintiff argues that Carnival cannot on the one hand contend that certain documents authored by Morales and Hernandez were "work product" created in "anticipation of litigation" and on the other hand assert that it routinely deleted their computer files because it did not "anticipate any imminent litigation." (Mot. 12; *see* Resp. 11). But work product is exempt from mandatory disclosure regardless of the status of the anticipated litigation. *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 28 (1983) ("attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared"); *see Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) ("The work product privilege extends beyond the termination of litigation."). Indeed, work-product protection con-

---

[2] The instant lawsuit was filed in July 2012.

tinues even after the prospect of anticipated litigation disappears. *Nat'l Public Radio v. Bell*, 431 F. Supp. 509, 512 (D.D.C. 1977). Thus, although Carnival was free to delete Morales's and Hernandez's files in September and October 2011 because there was no reasonably foreseeable litigation at that time, their emails prepared as part of the RMG investigation remain privileged.

In any event, Plaintiff has not provided any evidence that Carnival acted in bad faith. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (A showing of bad faith "is a prerequisite to imposing sanctions for the destruction of evidence."). There is no evidence that Carnival's routine deletion of former employees' files in accordance with an established document retention policy was done for the purpose of hiding adverse information. *See Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("That the documents were destroyed intentionally no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information.").

## II. CONCLUSION

Plaintiff's Motion to Compel Carnival Corporation & PLC to Produce Documents Relating to its 2011 Investigation [303] is **GRANTED IN PART AND DENIED IN PART**. Carnival shall produce documents 13 and 14. All other documents on the Privilege Log are protected from disclosure by the attorney-client privilege and the work product doctrine. Plaintiff's request for sanctions is **DENIED**.

E N T E R:

Dated: July 1, 2015

*(signature: Mary M Rowland)*

MARY M. ROWLAND
United States Magistrate Judge