**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Philip Charvat, on behalf of himself and others similarly situated,<br>        Plaintiff,<br><br>    v.<br><br>Elizabeth Valente, Resort Marketing Group, Inc., Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., and NCL (Bahamas), Ltd.,<br>        Defendants. | Case No. 1:12-cv-05746<br><br>Hon. Judge Andrea R. Wood<br>Hon. Mag. Judge Mary M. Rowland |

**MOTION TO STRIKE AND EXCLUDE
<u>SUPPLEMENTAL DALEY REPORT</u>**

Defendants attached a new 768-page "Supplemental" report from their expert as part of their September 1, 2016, class certification opposition and *Daubert* motion. The report is untimely. On January 8, 2016, at the request of the parties, Judge Rowland issued the following order:

> **Docket Text: MINUTE entry before the Honorable Mary M. Rowland:** …
>
> **At the parties' request, the expert discovery schedule [424] is revised as follows:** … **Defendants' expert report is due 2/19/2016** …
>
> **Absent very extenuating circumstances, no more extensions to the expert discovery schedule will be granted.** ….

Docket Entry 431 (emphasis added; paragraph breaks supplied). Defendants did not ask for an extension, and did not request leave to submit a supplemental report. Plaintiffs have been prejudiced by this late submission: the report comes three months after they filed their class certification motion—and more than six months after Daley's deposition on the issues for which she was originally designated under Fed.R.Civ.P. 26(a)—even though the schedule to which the parties agreed calls for the completion of expert discovery *before* class certification briefing.

1

Most of the report is untimely in substance too: the vast majority of materials upon which it is based were available to both Daley and defendants before they deposed plaintiff's expert, and before they produced her original Fed.R.Civ.P. 26(a)(2) report.

The majority of the report is also inadmissible and improper under Fed.R.Civ.P. 26(a)(2). For example, paragraphs 17-73 contain alleged "facts" about plaintiff's expert's life that Ms. Daley located through internet searches and phone calls. Submission of facts must be done through fact witnesses, rather than expert witnesses.

This report is an impermissible departure from the Court's schedule, is substantively improper and appears to be an attempt by defendants to "back door" otherwise inadmissible (and in many cases, untrue) facts through submission of an "expert" report. For these reasons, and for the reasons below, the Supplemental Report of Peggy Daley should be stricken.

## I.     BACKGROUND

This class action seeks redress for prerecorded voice telemarketing calls made by iterations of defendant Valente's business, including Resort Marketing Group, Inc. ("RMG"), on behalf of defendants Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., and NCL (Bahamas), Ltd. (collectively, "Cruise Defendants"), in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. DE 463, 3d Am. Compl. ("TAC") ¶¶ 1-3, 30-33.

These illegal telemarketing calls were made to plaintiff Charvat and millions of consumers across the country, including for more than a year-and-a-half after this lawsuit was filed. TAC ¶ 84. Plaintiff has limited the proposed class to a narrow subset, representing hundreds of thousands of illegal calls on three campaigns RMG identified as using prerecorded messages that mentioned the cruise lines, and which included calls to Mr. Charvat. RMG Suppl. Interrog. Resp. No. 4, Exhibit B at 1-3.

On February 20, 2016, defendants disclosed a 53-page, single-spaced, Fed.R.Civ.P. 26(a)(2) report of Margaret ("Peggy") Daley.

On September 1, 2016, defendants untimely disclosed a 22-page, single-spaced Supplemental Report and Declaration from Ms. Daley. The report and its exhibits span 768 pages. For purposes of this motion, plaintiff attaches only the report itself, at Exhibit A.

## II.   LEGAL STANDARD

The Federal Rules "do 'not distinguish between expert and lay witnesses, but rather between expert and lay testimony.'" *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (quoting Fed. R. Evid. 701 advisory committee's note (2000 amends.)). "Lay opinion testimony most often takes the form of a summary of first-hand sensory observations[,] … [and] is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (citations omitted).

"Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case. It brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *Id.* "Expert testimony in the form of opinions and facts is permitted when the testimony is based upon sufficient facts or data, is the product of reliable principles and methods and when the applicable principles and methods have been applied reliably to the facts of the case." *Maloney v. Cent. Aviation, Inc.*, 450 F. Supp. 2d 905, 911 (W.D. Wis. 2006) (citing Fed. R. Evid. 702).

Federal Rule of Evidence 702 requires that expert testimony must satisfy four requirements in order to be admissible. First, the expert must be qualified "by knowledge, skill,

experience, training, or education." Fed. R. Evid. 702. Then, even if the expert is qualified, the testimony will only be admitted if: (1) it is based upon sufficient facts or data; (2) it is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*; *see also U.S. v. Ozuna*, 561 F.3d 728, 736 (7th Cir. 2009) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."). Even if testimony is relevant and reliable, it must nevertheless still "fit" the facts of the case and assist the trier of fact. *Daubert*, 509 U.S. at 591.

## III. ARGUMENT

### A. Daley's Supplemental Declaration and Report Are Untimely.

After much in-court and out-of-court wrangling, Judge Rowland set an agreed expert schedule, and deadline for class certification motion, on January 6, 2016. The entire minute order reads:

> Docket Text: MINUTE entry before the Honorable Mary M. Rowland: Status hearing held and continued to 2/26/2016 at 9:30 AM. The parties may participate telephonically by using the Court's conference line: 8664345269, Access Code: 3751971. Defendant Elizabeth Valente appeared pro se and was reminded that as a corporation, Defendant Resort Marketing Group cannot appear pro se. The parties confirmed that Jason Rader was deposed and Plaintiff produced his expert report that included list of phone numbers for the purported class, which includes approximately 700,000 calls involving 366,000 consumers. **At the parties' request, the expert discovery schedule [424] is revised as follows**: Plaintiff's expert shall be deposed by 2/5/2016; **Defendants' expert report is due 2/19/2016**; Defendants' expert shall be deposed by 3/25/2016. **Absent very extenuating circumstances, no more extensions to the expert discovery schedule will be granted**. Plaintiff shall file his motion for class certification by 4/15/2016. The Cruise Lines represented that by 1/11/2016, they will provide their existing business relationship (EBR) matches from their databases against the purported class members' phone numbers, which will contain sufficient information to confirm that the EBR existed prior to the purported robocall. The Cruise Lines and Valente confirmed that their experts are working with Resort Marketing Group's databases to identify any EBR defenses and that all such information will be included in their expert reports. Mailed notice (gel, )

Docket Entry 431, emphasis added.

The Court has been "forced to devote considerable time and resources to address the matter of the deficient report—time and resources that instead could have been devoted to reaching a speedy resolution of [plaintiff]'s suit[.]" *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). In a case pending since 2012 with more than 500 docket entries, the injection of this *second* report has required even further motion practice and inefficiencies in this action. Because defendants have no substantial justification for failing to timely comply with the expert disclosure and reporting requirements of Fed. R. Civ. P. 26(a)(2), exclusion is "automatic and mandatory" under Fed. R. Civ. P. 37(c)(1), and Daley's Supplemental Report must be excluded.[1]

### B. Plaintiff Is Prejudiced by the Late Report.

"Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is especially important." *Finwall v. City of Chicago*, 239 F.R.D. 494, 496 (N.D. Ill. 2006), *objections overruled*, 239 F.R.D. 504 (N.D. Ill. 2006). The purpose of the expert report is "to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). To match its importance, "[t]he consequence of non-compliance with Rule 26(a)(2)(B) is 'exclusion of an expert's testimony ... unless the failure was substantially justified or is harmless.'" *Meyers*

---

[1] *Ciomber*, 527 F.3d at 641 ("Failure to comply with Rule 26(a)(2)'s requirements results in ... the offending party ... not [being] allowed to introduce the expert witness's testimony as evidence on a motion, at a hearing, or at a trial.... This sanction is automatic and mandatory unless the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless.") (quotations and citations omitted).

5

*v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) (quoting *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir.2009)); *see* Fed. R. Civ. P. 37(c)(1).[2]

Plaintiff will be prejudiced if the Court were to permit these late disclosures. He relied upon the Court-ordered, agreed-upon sequencing of class certification and expert disclosures set by Judge Rowland in formulating his arguments as to class certification. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004) (rejecting argument that formal disclosure of experts is a "pointless formality," noting that the failure to disclose causes prejudice).

### C. Daley's Supplemental Declaration and Report Are Reckless and Unsupported.

Daley's supplemental report may be divided into four categories. These categories are listed below, along with arguments as to why, aside from the timing, each section is improper.

#### 1. *Autodialer Database Clarifications, Based upon Post-Depo Email Exchanges.*

The first part of the supplemental report, ¶¶ 5-17, is apparently a follow-up to her first report and deposition, where Ms. Daley – who has never seen an autodialer in person, let alone used one[3] – tries to supplement her "expert" opinions through attachment of, and reference to, emails with the robodial company Asteria.

If defendants wanted to supplement their report, they should have requested leave to do so, and should have requested such leave before plaintiff filed his motion for class certification. They could have done so: the email exchange Ms. Daley relies upon in "clarifying" her deposition testimony happened on April 26, 2016-April 27, 2016, more than *two weeks before* plaintiff filed his May 15, 2016 class certification motion. There was no justification for such a

---

[2] Unless substantially justified or harmless, exclusion is "'automatic and mandatory.'" *Miksis v. Howard*, 106 F.3d 754, 760 (7th Cir. 1997) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).

[3] *Lee v. Global Tel*Link Corp.*, No. 2:15-cv-02495 (C.D. Cal.), DE 95-1 at 3, Daley Dep. at 21 (Aug. 12, 2016), Exhibit C (Daley answering "no" when asked just last month if she had any expertise in autodialer systems, and admitting that she'd only analyzed autodialer data on a total of three occasions).

delay, and the reason is clear: defendants waited to disclose these exchanges so that they could see plaintiff's motion before deciding to disclose it at all. Such an ambush is not proper, and was rejected when Judge Rowland set the expert and class certification schedule. The supplemental report should be stricken for this reason.

### 2. What Ms. Daley Thinks about Mr. Hansen's Life and Experience.

Although Ms. Daley never met Mr. Hansen before this case, Paragraphs 17-63 of her supplemental report purport to opine on the propriety of the past twenty-six years of Mr. Hansen's life, qualifications, and experiences.

Ms. Daley spends the bulk of her "expert" declaration attacking plaintiff's expert's veracity. Because Ms. Daley was not present for Mr. Hansen's life, she bases the factual assertions in her report on bits and pieces located through telephone calls to former employers, documents snipped from online news reports, and Mr. Hansen's Facebook page and public records. There are at least two things wrong with this submission.

First, Ms. Daley offers these opinion materials as an "expert" in fraud detection: "it is my opinion as a professional investigator and Certified Fraud Examiner…" Supp. Rep. at ¶ 18. Ms. Daley was not previously disclosed as an expert of this type. The disclosure is therefore untimely.. To be sure, a party may gather this type of information and cross-examine the witness about his credentials or experience, and defendants did this at Hansen's February 5, 2016 deposition. *See, e.g.,* Hansen Dep. at 63-128, available at Docket Entry 521-3. But counsel is not permitted to "shore up" shortcomings in deposition questioning through "expert" testimony like that which has been submitted here. *Nimely v. City of New York*, 414 F.3d 381, 397–98 (2d Cir. 2005) ("[D]etermining the weight and credibility of a witness's testimony.... belongs to the jury[;] ... expert opinions that constitute evaluations of witness credibility, even when such

7

evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702.") (citations omitted).

While evidence given by affidavit may generally be considered, "an affidavit must be based on personal knowledge" to be admissible. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 371 (7th Cir. 2015); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Ms. Daley's testimony is not based upon personal knowledge: it's instead based upon inadmissible internet research. And the testimony, if it were admissible, is precisely the sort of he-said-she-said fodder that a jury can understand without the help of expert witnesses. It is not of the sort that requires an appraisal of facts through the lens of "a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002).

This portion of the declaration is inadmissible as lay witness testimony, too. "Lay opinion testimony most often takes the form of a summary of first-hand sensory observations…." *Conn*, 297 F.3d at 554. But, for example, Ms. Daley was not there when Mr. Hansen worked with Laptop Training Solutions some twelve years ago. Instead, she went through the Internet and dug up newspaper articles, which she attaches to her declaration as the "truth." Of course, newspaper articles, themselves, are hearsay and inadmissible. *Taylor v. City of Chicago*, No. 14-737, 2015 WL 6561437, at *12 (N.D. Ill. Oct. 29, 2015) (citing Fed.R.Evid. 801(c) and *Mayor of Philadelphia v. Educ. Equality League*, 415 U.S. 605, 617–18 & n. 15 (1974), and describing a newspaper story where a party was quoted as "double hearsay"). And if defendants wanted to

submit the other types of exhibits, pleadings from other matters, and depositions Mr. Hansen (and others) gave as far back as 2014, they should have done so in Ms. Daley's earlier report, and should have questioned Hansen about them in his deposition.

### 3. Ms. Daley Now Thinks Names and Addresses Are Tough to Obtain.

Although her original report, Docket Entry 502-1, did not mention cellular telephones or reverse lookups at all, Ms. Daley tries to proffer another new "opinion" in paragraphs 63 through 73, pronouncing that she knows Lexis-Nexis databases are insufficient to try to locate the names and addresses of class members. She claims she knows this because she's a private investigator, ¶64, because her business cell phone owner was incorrectly listed as that of a colleague on a Lexis database, ¶ 72 because she has done lots of undisclosed prior "casework" on this subject and because she herself conducted a reliability testing of LexisNexis's reverse lookup. ¶73.

This is another example of defendants proffering a late witness, for a proposition they should have addressed in briefing or Ms. Daley's opening report. Daley—likely due to her lack of expertise in this area—neglects to mention that the use of reverse lookups and cell phone and ported number lists are routinely used in litigation to determine whether a number is a cell phone. *E.g., Booth v. Appstack, Inc.*, No. 13-1533, 2016 WL 3030256, at *12 and n. 13 (W.D. Wash. May 25, 2016) (concluding that "Plaintiffs sufficiently confirmed and demonstrated that the recipient devices were indeed cellular devices" in case in which Mr. Hansen used similar method to determine which numbers from class list were assigned to cell phones at time of call, noting that any discrepancy "can be adequately addressed at the claims stage"). And besides, there exist other ways to obtain the names and addresses of people who received calls through subpoenas to phone carriers, *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), and direct mail notice to class members' addresses is not required. *Mullins v.*

*Direct Digital, LLC*, 795 F.3d 654, 665-66 (7th Cir. 2015). Publication notice is sufficient if it is the best practicable notice, and class members may self-identify through affidavit. *Id*.

In any event, this Daley submission is too late, and should be stricken.

### 4.  *Sources of Opt-In Consent.*

In paragraph 74 of her supplemental report, Ms. Daley says she did some unexplained "additional analysis" about some websites with which defendants have no relationship, and claims that 5,738 of the class members might have opted in on those websites. Of course, Ms. Daley is not a fact witness, and she has no idea what this alleged opt-in data is, or where or how it originated. Exhibit D, Daley Dep. at 224:2-4 ("I am not here to testify about the validity of the consents that are, purport to be contained within the lead lists."). She doesn't know whether there is a relationship between RMG and these websites, and doesn't opine on this, either. Exhibit D, Daley Dep. at 156:22-157:3 ("I didn't really talk about any of the web sites…. I didn't do any analysis on the IP addresses here…. I've done no investigation with regard to this issue."), Exhibit D, 173-179, 191:11-20 (admitting that she "can't testify specifically about what any individual did or didn't do" on 123FreeTravel.com), Exhibit D, 194-195. Again, this opinion is specious, late, and should be stricken.

### IV.  CONCLUSION

Because defendants have no substantial justification for failing to comply with the expert disclosure and reporting requirements of Fed. R. Civ. P. 26(a)(2), exclusion is "automatic and mandatory" under Fed. R. Civ. P. 37(c)(1).

Dated: September 28, 2016

                      Respectfully submitted,
                      PHILIP CHARVAT, on behalf of
                      himself and others similarly situated,

                      By:  /s/Alexander H. Burke

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Edward A. Broderick
BRODERICK LAW, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327
ted@broderick-law.com

Matthew P. McCue
LAW OFFICE OF MATTHEW P. MCCUE
1 South Ave., 3rd Floor
Natick, MA 07160
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mmccue@massattorneys.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

     I hereby certify that on September 28, 2016, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                                                           /s/Alexander H. Burke