**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Philip Charvat on behalf of himself and others similarly situated, | ) ) | |
| Plaintiff, | ) | Case No. 1:12-cv-5746 |
| | ) | |
| v. | ) | The Honorable Andrea R. Wood |
| | ) | |
| Elizabeth Valente, Resort Marketing Group, Inc., | ) | Magistrate Judge Mary Rowland |
| Carnival Corporation & PLC, Royal Caribbean | ) | |
| Cruises, Ltd., NCL (Bahamas) Ltd. | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION..................................................................................1

II. RELEVANT HISTORY OF THIS LITIGATION AND ANTICIPATED MOTION PRACTICE HAD THE PARTIES NOT COME TO A PROPOSED RESOLUTION.................2

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............4

    A. The Strength of Plaintiff's Case Compared to the Settlement Favors Preliminary Approval........................................................................5

    B. The Potential Length, Complexity, and Expense of Further Litigation Favors Preliminary Approval................................................................7

    C. The Opinion of Counsel Supports Preliminary Approval. ......................9

    D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval......................................................9

IV. TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ......................10

    A. The Settlement Class.....................................................................10

    B. The Settlement Fund ....................................................................10

    C. Direct and Published Notice...........................................................11

    D. Opt-Out and Objections Procedure .................................................13

    E. Claims Process ............................................................................13

    F. Release .....................................................................................16

V. The Court Should Certify the Class for Settlement Purposes. ...........................17

    A. For Settlement Purposes, the Rule 23(a) Factors Are Met. ..................18

        1. The Settlement Resolves Numerosity.......................................18

        2. The Settlement Demonstrates Common Issues Among Settlement Class Members...............................................................................18

        3. For Purposes of Settlement, Typicality Is Satisfied....................19

4.     Plaintiff and His Counsel Are Adequate Representatives. .........................20

B.     The Rule 23(b)(3) Factors Are Met. .......................................................................21

C.     The Notice Should Be Approved in Form and Substance. .....................................22

VI.     CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) .................................................................. 19, 22

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
No. 09-1162, 2012 WL 3027953 (W.D. Mich. July 24, 2012) ................................ 22

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .................................... 5, 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................... 21, 22

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ................................................................................. 4, 9

*Babineau v. Fed. Exp. Corp.*,
576 F.3d 1183 (11th Cir. 2009) .............................................................................. 18

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) .................................................................................. 22

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ............................................................................. 20

*Chicago Teachers Union, Local 1 v. Board of Educ.*,
307 F.R.D. 475 (N.D. Ill. 2015) ....................................................................... 19, 20

*Drossin v. Nat'l Action Fin. Servs., Inc.*,
255 F.R.D. 608 (S.D. Fla. 2009) ............................................................................ 22

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................ 22

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) .................................................................................... 5

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................ 19

*Green v. Serv. Master On Location Servs. Corp.*,
No. 07-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ...................................... 8

*Hinman v. M and M Rental Center*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ..................................................................... 20

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................... 4, 5, 6

*In re Monitronics Int'l, Inc. TCPA Litig.*,
No. MDL 13-2493, 2016 WL 7413495 (N.D. W. Va. Dec. 22, 2016) ................... 6, 7

*In re Southwest Airlines Voucher Litig.,*
   No. 11-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)......................................5

*Ira Holtzman, C.P.A. v. Turza,*
   728 F.3d 682 (7th Cir. 2013) ...............................................................................19

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ....................................................................4, 5, 6, 9

*Keele v. Wexler,*
   149 F.3d 589 (7th Cir. 1998) ................................................................................20

*Kessler v. Am. Resorts Int'l,*
   No. 05-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ....................................4

*Kirkpatrick v. J.C. Bradford & Co.,*
   827 F.2d 718 (11th Cir. 1987) ..............................................................................20

*Klay v. Humana, Inc.,*
   382 F.3d 1241 (11th Cir. 2004) ............................................................................18

*Mais v. Gulf Coast Collection Bureau, Inc.,*
   944 F. Supp. 2d 1226 (S.D. Fla. 2013) ..................................................................6

*Muro v. Target Corp.,*
   580 F.3d 485 (7th Cir. 2009) ................................................................................20

*Oshana v. Coca-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006)................................................................................20

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ..............................................................................................22

*Pruitt v. City of Chicago,*
   472 F.3d 925 (7th Cir. 2006) ...............................................................................18

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,*
   281 F.R.D. 327 (E.D. Wis. 2012)..........................................................................22

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) .................................................................................4

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................7

*Siding & Insulation Co. v. Combined Ins. Group, Ltd.,*
   No. 11-1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012)................................22

*Silbaugh v. Viking Magazine Servs.,*
   278 F.R.D. 389 (N.D. Ohio 2012)........................................................................22

*Sparkle Hill, Inc. v. Birch Mat Corp.,*
   No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012) ..............................22

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
   463 F.3d 646 (7th Cir. 2006) .......................................................................4, 5, 9

*Thomas v. Taco Bell Corp.,*
  879 F. Supp. 2d 1079 (C.D. Cal. 2012) .................................................. 6

*Toney v. Quality Res., Inc.,*
  75 F. Supp. 3d 727 (N.D. Ill. 2014) ...................................................... 6

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.,*
  No. 10-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) .................. 22

*Versteeg v. Bennett, Deloney & Noyes, P.C.,*
  271 F.R.D. 668 (D. Wy. 2011) .............................................................. 8

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ...................................................................... 19

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2013) ........................ 17, 22

*In re Joint Petition Filed by Dish Network, LLC,*
  28 FCC Rcd. 6574 (2013) .................................................................... 2

Manual for Complex Litigation, Fourth, § 21.612 (2004) ........................ 17

**Rules**

Fed. R. Civ. P. 23 ................................................................................ 18

Fed. R. Civ. P. 23(a) ........................................................................... 18

Fed. R. Civ. P. 23(a)(1) ....................................................................... 18

Fed. R. Civ. P. 23(a)(4) ....................................................................... 20

Fed. R. Civ. P. 23(b)(3) ....................................................................... 21

Fed. R. Civ. P. 23(c)(2)(B) ............................................................. 22, 23

## I.       INTRODUCTION

As this Court is well aware, after five years of intense litigation that involved production of thousands upon thousands of documents and other discovery, extensive discovery motion practice, hundreds of pages submitted in class certification briefing and the parties' preparation of summary judgment motions, Plaintiff reached a proposed class settlement[1] with Defendants, Resort Marketing Group, Inc. and its principal, Elizabeth Valente (collectively, "RMG"), and Carnival Corporation & PLC ("Carnival"), Royal Caribbean Cruises, Ltd. ("Royal"), and NCL (Bahamas) Ltd. ("Norwegian") (collectively referred to as the "Cruise Defendants"). The proposed Settlement warrants preliminary approval because it provides significant recovery and relief to thousands of consumers and, if approved, would bring certainty and closure to this Action. Had the case not settled, this Action would undoubtedly continue to be contentious and costly to litigate the remaining issues of the Cruise Defendants' alleged vicarious liability for unlawful automated calls initiated by RMG.

This unopposed Motion seeks preliminary approval of a settlement class based on the Parties' proposed Settlement Agreement, which establishes a non-reversionary Settlement Fund of between $7,000,000 and $12,500,000, from which Settlement Class Members can make a claim for a cash payment.  The class is limited to only those Settlement Class Members whose phone numbers appear in the Call Records contained within the Dialer Database produced by RMG in discovery.  The ultimate amount of the Settlement Fund will depend on the number of claims filed.  A Settlement Class Member may recover up to $300 per call, with a cap at three calls, on any of their phone numbers that are part of the class and contained in the Call Records.

---

[1]  *See* Settlement Agreement, and the accompanying exhibits, attached hereto as <u>Exhibit A</u> ("The Settlement"). Capitalized Terms used throughout this memorandum are defined in the Settlement Agreement, and are incorporated by reference. Although the Defendants do not oppose this motion for purposes of approving the Settlement, they do not endorse Plaintiff's allegations, nor his recitations of fact or law, and deny all liability in the action.

As detailed herein, the Parties' proposed Settlement Agreement is exceedingly fair and well within the range of preliminary approval. Plaintiff, therefore, respectfully requests the Court to enter an Order (i) granting preliminary approval to the Settlement, (ii) approving the proposed notice plan, and (iii) scheduling a final fairness hearing.

## II.   RELEVANT HISTORY OF THIS LITIGATION AND ANTICIPATED MOTION PRACTICE HAD THE PARTIES NOT COME TO A PROPOSED RESOLUTION

On July 23, 2012, Plaintiff filed his Complaint and filed an Amended Complaint shortly thereafter. (DE 1, 23). The Cruise Defendants moved to dismiss the Amended Complaint based on numerous grounds and to stay discovery pending a ruling on their Motion to Dismiss. (DE 28, 31, 37). In response, Plaintiff sought leave to file a Second Amended Complaint, which the Defendants opposed (DE 52). The Court granted the Plaintiff's Motion to Amend and allowed Plaintiff leave to file a Second Amended Complaint, which the Defendants moved to dismiss. (DE 59, 62, 67, 68, 108-109). At the same time, Plaintiff sought to obtain discovery from RMG and a third party, which the Defendants opposed. (DE 39, 41, 59, 60, 71, 79). The court granted the Cruise Defendants motion to stay discovery pending a ruling on their motions to dismiss. (DE 79).

On April 11, 2013, Judge Zagel stayed this litigation as to the Cruise Defendants entirely pending a decision from the Federal Communications Commission ("FCC") as to whether Plaintiff could sue for vicarious liability under the TCPA for calls that Defendants did not initiate. (DE 117). After the FCC issued a Declaratory Ruling determining that companies may be held vicariously liable for calls they do not initiate, *see In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6587 (2013), the Cruise Defendants moved to sequence discovery, which was opposed by Plaintiff. (DE 134, 136, 141-142, 144). Plaintiff also moved to compel discovery from RMG. (DE 137). On July 1, 2013, the Court denied the Cruise

Defendants' Motions to Dismiss, but continued to limit discovery. (DE 141, 143, 144, 145).

On November 19, 2013, this matter was re-assigned to this Court. Plaintiff requested to open discovery as to the Cruise Defendants, which was granted, and on March 20, 2014, this Court referred oversight and resolution of discovery matters in this case to Magistrate Judge Rowland to oversee and resolve discovery in the case, a referral that resulted in many discovery hearings and discovery rulings. (DE 177, 181, 184). Between March 2014 and August 2016, Magistrate Judge Rowland held over 30 discovery hearings and this Court held 16 status conferences. The parties also engaged in 15 depositions requiring travel to four states, sought third party discovery, the Cruise Defendants exchanged voluminous documents and the parties extensively analyzed RMG's dialer database records. Both sides also retained expert witnesses who each produced Rule 26 reports. Finally, following the completion of class action discovery, on May16, 2016, Plaintiff filed a class certification motion totaling 1,020 pages with exhibits. (DE 493). The Defendants responded by filing a Response totaling 1,990 pages with exhibits, a motion to strike Plaintiff's sole expert (total briefing amounting to 3,487 pages) and moved to strike a key witness for Plaintiff (total briefing of 403 pages). (DE 492, 520, 521, 530, 531, 547, 548, 551, 553). The Plaintiff was preparing a motion for summary judgment on the issue of consent and the Cruise Defendants were preparing to file summary judgment and other related motions as to all vicarious liability issues in this case, which would have been filed had this Settlement not been reached. The 566 total docket entries in this case amply demonstrate that this litigation was contentious, hard fought, and resulted in an extensive and detailed factual investigation into the allegations at issue.

III.     **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

Federal Rule of Civil Procedure 23(e) "requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, this Court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002)). While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether a proposed settlement is fair, reasonable, and adequate. *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. at 345 (quoting *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) (quotations omitted).

At the preliminary approval stage, courts consider the following four factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby,* 75 F.3d at 1199). Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l,* No. 05-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong v. Bd. of Sch. Directors of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998)). In addition to these factors, the Seventh Circuit has also identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.,* 753 F.3d

718, 723-26 (7th Cir. 2014). None of these concerns apply to this proposed settlement because it creates a non-reversionary settlement fund recovery for the entire class with class members receiving real cash relief after completing a short and simple claim form.

### A. The Strength of Plaintiff's Case Compared to the Settlement Favors Preliminary Approval.

The first and most important settlement approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *AT&T Mobility,* 270 F.R.D. at 346 (quoting *Synfuel,* 463 F.3d at 653). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07-2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel,* 463 F.3d at 653) (internal quotations omitted); *see also Eubank.,* 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.,* 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.,* No. 11-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T,* 270 F.R.D. at 347 (quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted). The Agreement (1) creates a settlement fund of at least $7 million and not to exceed $12.5 million, (2) with none of that money reverting to Defendants, and (3) with the completion of a short and simple claim form, and (4) class members

5

will receive real cash relief. *In re AT&T,* 270 F.R.D. at 347 (quoting *Isby,* 75 F.3d at 1200). The proposed Settlement warrants approval because when compared to other similar TCPA actions and when viewed in light of the risks of a jury trial and potential appeals, the Settlement Class receives a more immediate and certain monetary benefit.

From the inception of the action through the present, the Parties have litigated this case in the shadow of uncertainty regarding the central legal questions presented in this case. As of the time that the settlement was reached, Plaintiff believes he filed a strong motion for class certification that would have been granted by this Court. However, one of the most significant hurdles for Plaintiff to overcome in this case is whether the Cruise Defendants, who never directly placed any automated telemarketing calls to Plaintiff or the Settlement Class Members, could be held vicariously liable for alleged TCPA violations committed by their alleged agent, RMG.[2]  The Cruise Defendants would have argued that actual agency could not be established given the lack of evidence that they exerted any control over the manner and method of RMG's automated calls. The Cruise Defendants would also have provided evidence that RMG was the only party in this case that exerted control over the manner and method of the telemarketing calls to consumers in this case. The Plaintiff would, in turn, have produced conflicting evidence in support of his claim of vicarious liability.  As for apparent agency, the Cruise Defendants would have claimed there was no evidence of direct or indirect communication with the Plaintiff to instill in him a belief that RMG was the Cruise Defendants' authorized agent that is generally

---

[2] *See Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 742-43 (N.D. Ill. 2014); *In re Monitronics Int'l, Inc. TCPA Litig.,* No. MDL 13-2493, 2016 WL 7413495, at *11 (N.D. W. Va. Dec. 22, 2016); *Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F. Supp. 2d 1226 (S.D. Fla. 2013), *rev'd in part on other grounds*, 768 F.3d 1110 (11th Cir. 2014) (to satisfy the level of "control" necessary to establish vicarious liability under the TCPA, plaintiffs must establish that defendants, as the principals, maintained control over, and supervised, key aspects of the undertaking); *Thomas v. Taco Bell Corp.,* 879 F. Supp. 2d 1079, 1081 (C.D. Cal. 2012) (granting summary judgment for Taco Bell because plaintiff was unable to show "that Taco Bell controlled the manner and means by which the text message was created and distributed").

recognized under federal agency law. *Monitronics*, 2016 WL 7413495, at *9-11. As far as ratification is concerned, the Cruise Defendants would have argued that RMG admitted that it made the calls for its own benefit to increase membership in its travel and vacation club without the knowledge, consent or authorization of the cruise lines both before and after the Plaintiff filed his complaint. The Defendants would claim, therefore, that it would be difficult for Plaintiff to prove that the Cruise Defendants ratified calls placed after Plaintiff filed his Complaint, assuming Plaintiff survived summary judgment on the issue, which was uncertain at best. *Id.* For all of these reasons, it would be very difficult and costly to respond to the Cruise Defendants' summary judgment and related motions and even if Plaintiff survived those motions, to take the case to trial, because recovery is by no means certain if this case had been tried. The risk, therefore, with Plaintiff's case is that class certification could be granted, but Plaintiff could ultimately lose on vicarious liability, which would amount to a pyrrhic victory.

The proposed Settlement avoids the unfavorable possibility of prevailing on class certification and losing on vicarious liability, and it creates a Settlement Fund out of which each and every Settlement Class member will have the opportunity to receive recovery. Given the monetary relief obtained for the class and the relative strength of Plaintiff's case, the first preliminary approval requirement favors a finding that this settlement is "fair, reasonable, and adequate," the first and most important factor strongly supports approving the settlement.

**B.      The Potential Length, Complexity, and Expense of Further Litigation Favors Preliminary Approval.**

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Despite Plaintiff's confidence that the Court would have certified the proposed class, Plaintiff also realizes that class certification is far

from automatic in TCPA cases. *Compare Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wy. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv. Master On Location Servs. Corp.*, No. 07-4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification."). The Cruise Defendants also presented substantial grounds for denial of class certification concerning the individual nature of agency claims, a challenge to Plaintiff's expert, that the Call Records have no method of demonstrating that calls to the proposed class were cruise-related, and other legal and factual issues. As such, whether the Court would have certified the class in this matter was not at all certain and created a significant risk that, despite years of work and investigation, there could be no recovery for the class given the limited resources of RMG. Add to that the ultimate question of whether the Cruise Defendants were vicariously liable for alleged illegal telemarketing calls made by RMG addressed in the preceding section, the proposed settlement eliminates the possibility of prevailing on class certification and losing on vicarious liability. Even if Plaintiff survived summary judgment on vicarious liability issues, and if, as Plaintiff believes, he would have prevailed at trial, it is certain that any judgment would have been appealed. The Cruise Defendants have raised challenges to just about every conceivable issue in this case, and they have preserved each and every one of them for a potential appeal, and would have appealed not only the judgment but also the decision to certify the Class and any potential denial of their vicarious liability summary judgment motions, *Daubert* and other related motions. Plaintiff strongly believes he would prevail on any appeal taken by the Cruise Defendants, but losing any

8

of these issues on appeal could reduce or eliminate a jury award. Settlement entirely avoids that possibility, and this factor therefore strongly supports preliminary approval.

### C. The Opinion of Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby,* 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.* Class Counsel are well experienced in TCPA litigation as best demonstrated by the attached declaration. *See* Exhibit B attached hereto.

### D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval.

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel,* 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Gr*p., 2011 WL 3290302, at *8 (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted). This factor is not a concern where settlement is "reached at a very late stage, after the issues ha[ve] been clearly identified, liability and impact ha[ve] been decided, and a massive record ha[s] been compiled." *See Armstrong,* 616 F.2d at 325. The parties in this case reached a settlement with the assistance of a neutral third-party, Bruce Friedman of JAMS,[3] who mediated the case in Miami Florida on March 18, 2017, after nearly five years of intense litigation. As discussed above, the parties have conducted substantial discovery, fully briefed class certification and while summary judgment motions had not yet been filed by Plaintiff or the

---

[3] While the Parties did not reach a settlement during that mediation, they set the parameters for their continued negotiation. Those negotiations continued over the course of several months, and culminated in the Settlement Agreement that Plaintiff now moves the Court to preliminarily approve.

9

Cruise Defendants, the parties are well aware of the strengths and weaknesses of their respective positions on the substantive claims that would have been made clear in those motions.

## IV. TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

### A. The Settlement Class

The proposed Settlement Agreement would establish a Settlement Class defined as:

> All Persons in the United States who were the owner, subscriber or user of residential or cellular telephone numbers located in RMG's Call Records and who received pre-recorded telemarketing calls from RMG, which referred to the trade names of any of the Cruise Defendants between July 23, 2009 through March 8, 2014. The class is limited to those phone numbers contained in the Call Records of RMG as defined in the Agreement. Excluded from the Settlement Class are the following: (i) any trial judge that may preside over this Action; (ii) the Cruise Defendants; (iii) any of the Released Parties; (iv) Class Counsel and their employees; (v) the immediate family of any of the foregoing persons; (v) any member of the Settlement Class who has timely submitted a Request for Exclusion by the Objection/Exclusion Deadline; (vi) any person who has previously given a valid release of the claims asserted in the Action; and (vii) persons who received or may have received a call or calls referencing the goods and services of any of the Cruise Defendants, but which were not made by Defendant RMG (a/k/a "Travel Services").

### B. The Settlement Fund

The proposed Settlement Agreement establishes a Settlement Fund between $7,000,000 and $12,500,000 that will be used to pay class member claimant payments, Settlement Administration Expenses, Attorneys' Fees and Costs, and any Incentive Award to Plaintiff. The ultimate size of the Settlement Fund will depend on the number of claims filed. Settlement Class Members may receive up to $300 for each telemarketing call made to a Class Member's residential or cellular telephone line. The maximum number of calls a Settlement Class Member may recover for is three (3) per each telephone line. The most any one Class Member may receive is up to $900.00 per each telephone line. Settlement Class Members will share in the

distribution of the Settlement Fund pro rata if insufficient funds remain in the Settlement Fund to pay each Class Member $300 per call, with a three call cap per telephone line, after the payment of Settlement Administration Expenses, Attorneys' Fees and Costs, and any Incentive Award. By way of example:

- If the total payments at $300 per call, with a maximum of three calls per unique number (plus payment of reasonable litigation expenses and administration costs) results in an amount beneath the Floor, then the remaining funds (the difference up to $7,000,000) will be donated *cy pres* to the National Consumer Law Center or other recipient as mutually agreed to by the parties, after the payment of attorneys' fees, administration costs, and an incentive award.

- If the total payments at $300 per call, with a maximum of three calls per unique number (plus payment of expenses and administration costs) are in between the Floor and the Ceiling, then each class member who submits a claim will receive $300 per call with a three call cap.

- If the total payments at $300 per call with a maximum of three calls per unique number (plus payment of expenses and administration costs) exceeds the Ceiling, then class members filing claims will receive a pro rata share of the common fund after payment of the fee award and expenses, incentive awards, and administration costs.

### C.  Direct and Published Notice

Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause notice to be disseminated to the Settlement Class as provided in the Settlement Agreement in accord with Rule 23 of the Federal Rules of Civil Procedure. The costs and expenses of notice shall be deemed part of the Settlement Administration Expenses to be exclusively paid from the Settlement Fund.

- ***Actual Notice and Claim Form***. Beginning within thirty (30) calendar days following the entry of the Preliminary Approval Order, the Settlement Administrator shall cause a singular Notice and Claim Form to be mailed via first-class U.S. mail, return service requested, to the names and addresses associated with the phone numbers of class members that appear in the same telemarketing campaigns that included calls to Plaintiff (the "Charvat Campaigns"). First, the Settlement Administrator will recommend a reasonable plan to identify these class members using reverse lookups, subpoenas to phone carriers, or other reasonable means

11

recommended by the Settlement Administrator. Second, these class members will receive actual notice from the Settlement Administrator informing these class members of their right to file a claim. The notice will also provide a simple Claim Form to allow class members to submit a claim via regular mail and on-line. The Settlement Administrator shall perform investigations deemed appropriate by the Settlement Administrator in an attempt to identify complete and current address information for each class member whose number appears in the Charvat Campaigns. The Settlement Administrator shall promptly re-mail any Notice and Claim Form returned as non-deliverable with a forwarding address. For all other returned mail, the Settlement Administrator shall perform data searches of the U.S. Postal Services National Change of Address database and/or any other reasonably available databases available to the Settlement Administrator, and perform any other reasonable steps to obtain current address information for any Notice and Claim Form returned to Settlement Administrator, and shall re-mail such Notice and Claim Form one additional time to the most current address information obtained by the Settlement Administrator. All costs associated with the Notice and Claim Form, including, but not limited to, all costs of research, address determination and confirmation, data searches, and printing, publishing, mailing, and re-mailing shall be considered Settlement Administrative Expenses to be exclusively paid from the Settlement Fund.

- **Publication Notice:** Class members whose numbers are not included in the Charvat Campaigns but whose numbers are contained in the Call Records will receive publication notice with instructions as to how to file a claim on-line. The Class Administrator has determined and proposed the best notice practicable as to these class members. Class members receiving publication notice will be directed to a web site maintained by the class administrator for the purposes of this litigation ("Settlement Web-Site"). Class members receiving publication may also request that the Class Administrator mail to their attention the Long Form Notice.

- **Settlement Web-Site:** The Settlement Website will provide potential class members with a mechanism pursuant to which they can check to determine if the phone number(s) they owned, used or subscribed to during the Class Period are included in the Call Records. Consumers whose phone number matches a phone number contained in the Call Records will then be directed as to how to file a claim. The Settlement Website shall also provide Persons in the Settlement Class access to this Agreement with all exhibits referenced herein, Class Notice, including, but not limited the Online Claim Form, the Motion for Preliminary Approval, and the Preliminary Approval Order. The substance contained on Long Form Notice will also appear on the Settlement Web-Site. All costs associated with the creation, operation, maintenance, and hosting of the Settlement Website, including the preparation of all documents provided therein, shall be considered Settlement Administrative Expenses to be exclusively paid from the Settlement Fund.[4]

---

[4] Class Counsel, through the Settlement Administrator, shall be responsible for serving the required CAFA Notice(s) within ten (10) calendar days after filing the motion seeking the Preliminary Approval Order.

### D. Opt-Out and Objections Procedure

After receiving notice, Settlement Class Members will have one hundred and twenty (120) days after the entry of the Preliminary Approval Order to exclude themselves from the Settlement or object to its approval. The deadlines for filing opt-out requests and objections will be conspicuously listed in the Notice, as well as on the settlement administrator's website. The process for filing exclusions and objections will be explained in the Notice. With regard to objections, the Notice will inform the Settlement Class of the date of the Final Approval Hearing and will inform the Settlement Class that the Final Approval Hearing will be the only opportunity for them to appear and have their objections heard. The Notice also informs Settlement Class Members who choose to participate in the Settlement that they will be bound by the release.

### E. Claims Process

Settlement Class Members must file claims by the Claims Deadline, which is one hundred and twenty (120) days after the entry of the Preliminary Approval Order. Settlement Class Members may assert a claim either by mail or on-line at the Settlement Website maintained by the Settlement Administrator under penalty of perjury that they have a claim. Settlement Class Members who receive written actual notice will be informed of the phone number called. A class member returning a Claim Form must check a box, state under penalty of perjury that they were the owner, user or subscriber of that residential or cellular telephone number during the Class Period and sign and date the form. The Settlement Administrator will then determine how many times the Settlement Class Member was called in order to determine the value of their individual claim. Consumers who receive published notice may determine if they are a member of the Settlement Class by accessing the Settlement Website which will

13

provide inquiring consumers with a mechanism to determine if their phone number is included in the Call Records. If the inquiring consumer is, in fact, a member of the Settlement Class, they will then be instructed as to how to file a claim. Settlement Class Members who submit claims based on Publication Notice and are not part of the Charvat Campaigns must attest under penalty of perjury both that they were the owner, user or subscriber of the residential or cellular telephone number during the Class Period and that they recall receiving on that number pre-recorded calls from a third party promoting cruise related goods or services of Carnival, Royal Caribbean or Norwegian cruise lines. Class Members filing claims online must also provide their name, phone number and address to the Settlement Administrator and electronically sign and date the claim. The Parties have agreed to work with one another, and with the Settlement Administrator, to identify and address fraudulent claims submissions. All Parties will also have an opportunity to identify fraud and to bring such concerns to the attention of the Settlement Administrator, Class Counsel, Cruise Defendants' counsel and, if necessary, the Court.

Any Settlement Class Member who seeks to recover from the Settlement Fund must timely return a completed and signed Claim Form. If returned via mail, the Claim Form must be mailed to the address stated in the Class Notice and must be postmarked on or before the Claims Deadline. The Claim Form may also be submitted online via the Settlement Website and must be submitted on or before the Claims Deadline. Any Settlement Class Member who fails to timely return a completed and signed Claim Form by the Claims Deadline shall not be eligible to participate in any distribution from the Settlement Fund.

The Settlement Administrator shall review all submitted Claim Forms to determine if such forms were timely received and will determine if the submitting person is eligible for distribution from the Settlement Fund by confirming that the submitting person's phone number

is contained in the Call Records. The Settlement Administrator shall also confirm that potential Settlement Class Members have declared under penalty of perjury that they were the subscriber, owner or user of the particular telephone number during the Class Period. The Settlement Administrator shall also confirm that those consumers who received notice via Publication Notice have declared under penalty of perjury that they recall receiving on that number pre-recorded telemarketing calls from a third party promoting cruise related goods or services of Carnival, Royal Caribbean or Norwegian Cruise lines. The Settlement Administrator shall provide an accounting of all such costs and expenses and all sums received from the Cruise Defendants no later than fourteen (14) days prior to the Final Approval hearing. As necessary, the Settlement Administrator may contact potential Settlement Class Members to gather additional or omitted information up to three (3) times in order to determine their eligibility for distribution(s) from the Settlement Fund, or to correct deficiently filed claims.

On a rolling basis after the Settlement Class has been notified of the Settlement, the Settlement Administrator shall notify Class Counsel and Defendants' Counsel in writing of those Persons who have submitted a Claim Form that the Settlement Administrator has determined: (i) are untimely, not signed, not dated, or otherwise unapproved for failure to comply with any requirement set forth in the Settlement Agreement; and (ii) are valid and proper such that the submitting Person is entitled to distribution from the Settlement Fund. On a rolling basis, the Cruise Defendants shall send written notice to the Settlement Administrator and Class Counsel, challenging any individual claims determinations of the Settlement Administrator in an attempt to resolve them without the Court's intervention. The Cruise Defendants may challenge Claims on a rolling basis, but in any event must object to a Claim no later than thirty (30) days following the deadline by which the Settlement Administrator is required to provide the Parties with final

notice of its determination of Approved Claims (assuming the Settlement Administrator has advised the Cruise Defendants as to the status of all claims on a rolling basis after Notice was provided to the Class). Such challenges not submitted within the time period will be deemed automatically waived. Within five (5) days following its receipt of the Cruise Defendants challenges, the Settlement Administrator shall provide notice to the Class Members as to which claims are challenged, and these Class Members shall submit to the Settlement Administrator a response to the challenge, if any, within fourteen (14) days of the Settlement Administrator's delivery of notice. If the Settlement Class Member does not timely submit the supplemental information, the Cruise Defendants' challenge shall be automatically sustained, and the Settlement Class Member will receive nothing. If the Settlement Class Member provides a response to the Cruise Defendants' challenge and the Cruise Defendants continue to pursue the challenge, the Parties shall attempt to resolve such objections within twenty-one (21) days after the deadline by which Class Members are to submit their response to the Cruise Defendants' objections. Any such challenge to claims determinations of the Settlement Administrator not resolved by the Parties shall be submitted in writing to the Court for final, binding, and non-appealable determination at the Final Approval Hearing. Subject to the foregoing, the determination by the Settlement Administrator of the eligibility of any Person submitting a Claim Form for distribution from the Settlement Class Recovery shall be final and shall not be subject to any further review or appeal. Those Persons who timely submit a Claim Form, and who are determined to be eligible to receive distribution(s) from the Settlement Class Recovery shall receive such distributions pursuant to Section 4 of this Settlement Agreement.

**F.    Release**

The Release as defined at Section 2.38 of the Settlement Agreement releases the

Defendants from liability for all causes of action arising from each and every telephone call that is the subject of the Action. In exchange for settlement benefits, Plaintiff and participating Settlement Class Members will release the Defendants and related parties from any and all claims by the Settlement Class that relate in any way to the telemarketing calls that are the subject of this Action. Such calls are evidenced by the Call Records contained in the Dialer Database.

## V.     The Court Should Certify the Class for Settlement Purposes.

For settlement purposes only, the Parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiff as the Class Representative and his counsel as Class Counsel to represent the Settlement Class. "The validity of use of a temporary settlement class is not usually questioned." Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:22 (4th ed. 2013). The Manual for Complex Litigation, Fourth, § 21.612 (2004), explains the benefits of settlement classes:

> Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. (citation omitted). Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined in the Settlement Agreement and also appears above. As detailed below, the Settlement Class meets all of the applicable certification requirements.

Plaintiff seeks certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law or fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and its counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009). In this case, the evidence already gathered is more than sufficient to support class certification for settlement purposes.

### A. For Settlement Purposes, the Rule 23(a) Factors Are Met.

#### 1. The Settlement Resolves Numerosity.

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is easily satisfied here where the number of potential Settlement Class Members numbers in the millions. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 plaintiffs would be unmanageable").

#### 2. The Settlement Demonstrates Common Issues Among Settlement Class Members.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the plaintiff must demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words,

commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality may be shown when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Id.*

**For purposes of the Settlement only**, the parties have resolved that many common questions applicable to the Settlement Class exist, including:

- Did the calls made by RMG use an artificial or prerecorded voice" under Section 227(b)(1)(A) of the TCPA?
- Are class members entitled to TCPA statutory damages?
- Were the calls made with the prior express consent of the called party?

For purposes of examining the Settlement, commonality is satisfied. As the Seventh Circuit held, "[c]lass certification is normal in litigation under § 227, because the main questions…are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). The Settlement also ensures that all Class members have identical claims; both factually and legally. Fed. R. Civ. P. 23(b)(3); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

### 3. For Purposes of Settlement, Typicality Is Satisfied.

To satisfy Rule 23(a)(3)'s typicality requirement, a plaintiff must possess the same interest and have suffered the same injury as the other class members. "'[T]ypicality' reflects the Rule 23(a)(3) requirement that 'the claims or defenses of the representative parties [be] typical of the claims or defense of the class.'" *Chicago Teachers Union, Local 1 v. Board of Educ.,* 307 F.R.D. 475, 480-81 (N.D. Ill. 2015). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and

her claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). "This requirement 'directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)).

Here, the Plaintiff's claim is identical to the claims of the other Settlement Class Members in all material ways. The Plaintiff, and all other members of the Settlement Class suffered the same injury, and seek the same recovery under the same theory of liability. Nothing more is required, and typicality is satisfied for purposes of this Settlement.

### 4. Plaintiff and His Counsel Are Adequate Representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the proposed class representative must not have any interests antagonistic to those of the other members of the class, and he or she must be represented by competent counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

For purposes of the settlement, Plaintiff has no conflicting interests with Settlement Class Members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiff has demonstrated a desire and ability to protect class members' interests. Plaintiff has elected not to pursue solely his individual claims in this matter, but instead is prosecuting the case on behalf of

a class of persons who, like him, have been subjected to unlawful telemarketing. Plaintiff was deposed in this case and responded to multiple sets of discovery. Plaintiff's counsel have regularly engaged in major TCPA litigation, and have extensive experience in consumer class action lawsuits. (Affidavits of Plaintiffs' Counsel are attached as Exhibit B.) Accordingly, Plaintiff and Class Counsel will adequately represent the Settlement Class. The requirements of Rule 23(a) are, therefore, satisfied.

### B. The Rule 23(b)(3) Factors Are Met.

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent matters include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (3) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-616 (1997) (addressing predominance and superiority requirements). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

As an initial matter, the difficulties of managing a class action are vitiated by this proposed Settlement. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* at 620. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results." *Id.* at 615.

In this case, the aggregate claims of the Settlement Class are comprised of calculable damages in amounts that make it uneconomic for individuals to pursue these claims on their own. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Many decisions recognize the benefits of class certification in cases involving small individual recoveries, in the context of consumer cases generally,[5] and TCPA cases in particular.[6] For all these reasons, certifying the proposed Settlement Class is the superior means of resolving the issues in this case.

## C. The Notice Should Be Approved in Form and Substance.

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that the notice be reasonably disseminated to those who would be bound by the court's judgment. Notice is proper as long as the average class member would be able to understand it, *Newberg* § 11:53 at 167, and the substance of the notice describes the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). Further,

---

[5] *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a small possible recovery [of approximately $125] would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."), *cert denied*, 129 S. Ct. 608 (2008); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 617 (S.D. Fla. 2009).

[6] Many federal courts have certified TCPA actions. *See, e.g., Agne*, 286 F.R.D. 559; *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 10-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Sparkle Hill, Inc. v. Birch Mat Corp.*, No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-1162, 2012 WL 3027953 (W.D. Mich. July 24, 2012); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis. 2012); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012); *Siding & Insulation Co. v. Combined Ins. Group, Ltd.*, No. 11-1062, 2012 WL 1425093 (N.D. Ohio Apr. 23, 2012).

notice must also explain that settlement class members may enter an appearance through counsel or request to be excluded from the settlement class so as not to be bound by any judgment. *Id.*

As discussed in detail above, the Parties have agreed upon a multi-part notice plan that easily satisfies the notice requirements of both Rule 23 and Due Process. First, Actual Notice will be sent to approximately 400,000 members of the Settlement Class whose numbers appear in the Charvat Campaigns. Class members whose numbers are not included in the Charvat Campaigns but whose numbers are contained in the Call Records, will receive Publication Notice with instructions as to how to file a claim on-line. In sum, the proposed methods for providing notice to the Settlement Class fully comport with both Rule 23 and Due Process and should be approved by the Court.

## VI.   CONCLUSION

The proposed class action settlement is fair, reasonable, and adequate.  For the foregoing reasons, the proposed settlement is well within "the range of possible approval," and should be approved in all respects.  A proposed agreed order is submitted as <u>Exhibit C</u>.

<div style="margin-left:50%">

Respectfully submitted,

PHILIP CHARVAT, on behalf of
himself and others similarly situated

</div>

Dated: June 7, 2017

<div style="margin-left:50%">

By:  <u>/s/ Matthew P. McCue</u>

</div>

Matthew P. McCue (*pro hac vice*)
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
<u>mmccue@massattorneys.net</u>

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Edward A. Broderick (*pro hac vice*)
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have this, caused a copy of the foregoing document to be served via ECF on all counsel of record, as well as on defendants RMG and Elizabeth Valente at bvalente@tsncorporate.com, the e-mail at which Ms. Valente agreed to accept service of documents relating to this case.

.

   /s/ Daniel J. Marovitch

24