**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Philip Charvat, on behalf of himself and others similarly situated, | ) ) ) | Case No. 1:12-cv-05746 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| Elizabeth Valente, Resort Marketing Group, Inc., Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., NCL (Bahamas) Ltd., | ) ) ) ) ) | Hon. Judge Andrea R. Wood Hon. Mag. Judge Mary Rowland |
| Defendants. | ) ) | |

**MOTION FOR ATTORNEYS' FEES AND COSTS**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.    BACKGROUND AND SETTLEMENT ................................................................2

    A.    Background ................................................................................................2

    B.    Settlement ..................................................................................................5

III.    LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS ..........................7

IV.    ARGUMENT .........................................................................................................7

    A.    The Court Should Calculate Fees as a "Percentage of the Fund."...........7

    B.    Counsel's Request Is Within the "Market Rate." ....................................9

        1.    The Fee Comports with the Contract between Plaintiff and Counsel........11

        2.    The Requested Fee Reflects the Fees Awarded in Other Settlements. ......12

            a.    Pre-*Pearson* Percentage of the Fund Settlements .........................12

            b.    Post-*Pearson*: The *Pearson* Presumption Did Not Alter the Market Rate for Fees. .........................................................................14

        3.    Other Factors Support the Requested Fee.................................................15

            a.    Risk of Nonpayment ......................................................................15

            b.    Quality of Performance and Work Invested ..................................21

            c.    Stakes of the Case .........................................................................22

V.    CONCLUSION....................................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ....................................... 14

*Allen v. JPMorgan Chase Bank, NA*,
No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93) ............................................. 14

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) .................................................................................. 7

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12-4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) .................................... 8

*Balschmiter v. TD Auto Fin. LLC*,
303 F.R.D. 508 (E.D. Wis. 2014) .......................................................................... 18

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
480 F. Supp. 1195 (S.D.N.Y. 1979) ...................................................................... 13

*Bickel v. Sheriff of Whitley Cnty*,
No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ................................ 15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ............................................................................ 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................. 7

*Brey Corp. v. LQ Mgmt. LLC*,
No. 11-718, 2014 WL 943445 (D. Md. Jan. 30, 2014) .......................................... 19

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ............................................................................................. 18

*CE Design Ltd. v. CV's Crab House North, Inc.*,
No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) .......................................... 12

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) .................................................. 13

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) ................................................................................. 17

*City of Greenville v. Syngenta Corp Prot., Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012) ........................................................................ 13

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ................................. 7, 14

*Cummings v. Sallie Mae*,
    No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) ............................................ 12

*Desai v. ADT Sec. Servs., Inc.*,
    No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) ......................................... 12

*Donaca v. Dish Network, LLC.*,
    303 F.R.D. 390 (D. Colo. 2014) ............................................................................ 19

*Fitzhenry v. ADT Corp.*,
    No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ................................. 19

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ............................................................................... 9, 16

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) .......................................... 12

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ................................................................................ 11

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ........................................................................... 9

*Green v. DirecTV, Inc.*,
    No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ................................. 19, 20

*Greene v. Emersons Ltd.*,
    No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) ...................................... 13

*Gusman v. Comcast Corp.*,
    298 F.R.D. 592 (S.D. Cal. 2014) ........................................................................... 20

*Hanley v. Fifth Third Bank*,
    No. 12-1612 (N.D. Ill.) (Dkt. No. 87) ................................................................... 12

*Hinman v. M&M Rentals, Inc.*,
    No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) ............................................ 12

*Holtzman v. CCH*,
    No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33)........................................... 13

*In re Ampicillin Antitrust Litig.*,
   526 F. Supp. 494 (D.D.C. 1981) ...................................................................... 13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .............................................. 19, 20

*In re Bankcorp. Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ...................................................................... 13

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................... 8, 14, 21, 22

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)............................................................ 13

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .......................................................................... 9

*In re Dairy Farmers of Am., Inc.*,
   MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015)................... 15

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
   280 F.R.D. 364 (N.D. Ill. 2011)............................................................. 7, 13

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................ 22

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................... 13

*In re Synthroid Mkt. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ................................................. 7, 10, 11, 16

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ........................................................................ 9

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) .............................................................. 9

*Jamison v. First Credit Servs.*,
   290 F.R.D. 92 (N.D. Ill. 2013)................................................... 18, 19, 20

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ............................................................. 11, 16

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)....................................................... passim

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   944 F. Supp. 2d 1226 (S.D. Fla. 2013) ................................................................. 17

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................... 11

*Martin v. Dun & Bradstreet, Inc.*,
   No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) .............................................. 12

*McCue v. MB Fin., Inc.*,
   No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ..................................... 14

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
   No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) ......................................... 12

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ........................................................................ 9, 10

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)................................... 11

*Rose v. Bank of Am. Corp.*,
   No. 11-2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ................................ 22

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
   No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)..................................... 18

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
   No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) ........................................... 12

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) .............................................................................. 16

*Spano v. The Boeing Co.*,
   No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) .................................. 14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).......................................................................................... 18

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ......................................................... 7, 15, 16, 21

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ........................................................................ 11, 13

*Van Gemert v. Boeing Co.*,
   516 F. Supp. 412 (S.D.N.Y. 1981) ...................................................................... 13

*Will v. Gen. Dynamics Corp.*,
No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...................................................... 13

*Worsham v. Nationwide Ins. Co.*,
772 A.2d 868 (Md. App. Ct. 2001) ............................................................................................. 17

*Wright v. Nationstar Mortg. LLC*,
No. 14-1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016) ...................................................... 8

*Zolkos v. Scriptfleet, Inc.*,
No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ..................................................... 14

## <u>Statutes</u>

47 U.S.C. § 227 ............................................................................................................................. 1, 2

47 U.S.C. § 227(b)(1) ...................................................................................................................... 2

## I.     <u>INTRODUCTION</u>

On July 6, 2017, this Court preliminarily approved a proposed class action settlement between Plaintiff Philip Charvat and Defendants Resort Marketing Group, Inc. and its principal, Elizabeth Valente (collectively, "RMG"), and Carnival Corporation & PLC ("Carnival"), Royal Caribbean Cruises, Ltd. ("Royal"), and NCL (Bahamas) Ltd. ("Norwegian") (collectively, the "Cruise Defendants"). Dkt. 576. The Settlement requires Defendants to pay between $7,000,000 and $12,500,000 into a common fund for the benefit of millions of consumers to whom RMG made prerecorded telemarketing calls referencing the Cruise Defendants, in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Class Counsel have zealously prosecuted Plaintiff's claims for over five years, achieving the Settlement only after extensive first and third-party discovery and heavily-contested motion practice, including motions to dismiss, motions to compel, tens of thousands of pages of discovery, and thousands of pages of class certification briefing. The Settlement was reached only after an in-person mediation with Bruce Friedman of JAMS, followed by months of further negotiations between counsel for the parties.

As compensation for the substantial benefit conferred upon the Settlement Class and five years of grueling work, Class Counsel respectfully move the Court for an award of attorneys' fees equal to one-third of the Settlement Fund. While the amount of the Settlement Fund will depend upon how many class members submit claim forms, Counsel seeks one-third of the fund paid out; an amount that is well within the range of reasonableness. Additionally, Class Counsel also seek reimbursement of their out-of-pocket costs incurred in prosecuting the case, currently amounting to $211,193.05. This request should be approved because (1) it represents the market rate for this type of settlement and is in line with the Seventh Circuit's directive in *In re*

1

*Synthroid*, particularly as it is not a "mega-fund" case which yield lower percentages of settlement funds to attorneys, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case.

## II.   BACKGROUND AND SETTLEMENT

### A.   Background

This case concerns alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating telemarketing calls using an artificial or prerecorded voice without prior express consent. 47 U.S.C. § 227(b)(1).

Specifically, beginning in February 11, 2011, Defendant RMG (a/k/a "Travel Services") repeatedly called Plaintiff's phone with a prerecorded message informing Mr. Charvat that he had been "selected" to receive a cruise with the Cruise Defendants. Dkt. 463, 3d Am. Compl. ¶ 98, 104, 109, 116, Ex. 7. Mr. Charvat had not consented to receive these pre-recorded message calls from the Defendants. *Id.* ¶ 123. Rather, these were unsolicited telemarketing calls promoting Cruise Defendant cruises, made as part of a widespread robocalling campaign to consumer phone numbers purchased through third parties. *Id.* ¶ 84; Dkt. 492 at 14.

Plaintiff Charvat filed this action on July 23, 2012, and hard-fought litigation proceeded for years to follow. After Plaintiff amended his complaint on September 25, 2012, the Cruise Defendants moved to dismiss and to stay discovery. Dkt. 23, 26, 30, 32, 37. Class Counsel responded to the motions to dismiss and moved for leave to file a second amended complaint, which Defendants opposed. Dkt. 46, 47, 52. After Judge Zagel—to whom this case was originally assigned—granted leave to amend, Defendants again filed motions to dismiss, requiring Class Counsel to engage in further briefing. Dkt. 61, 66, 78, 92, 96, 104, 108, 112. On

April 11, 2013, Judge Zagel stayed the case as to the Cruise Defendants pending the FCC's anticipated declaratory ruling regarding vicarious liability issues in *In re Joint Pet. by DISH Network, LLC et al for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50 (FCC), and Class Counsel ultimately succeeded in defending against Defendants' dispositive motions after the FCC ruled in consumers' favor in May 2013. Dkt. 117, 141, 143. It is worth noting that Plaintiff Philip Charvat was the consumer who prosecuted the *Dish* action in the FCC on behalf of consumers, that Mr. Charvat was represented by Class Counsel team member Matthew McCue through a substantial portion of the *Dish* proceedings, that these efforts had a significant impact on this litigation (being the reason Defendants' motion to dismiss was denied), and was a real win for Americans who hate robocalls, generally.

On May 3, 2013, Defendants RMG and Valente filed answers to Plaintiff's complaint, along with a counterclaim by RMG against Plaintiff Charvat, personally, based on allegations that Mr. Charvat had violated Illinois law by recording the prerecorded-message call RMG had placed to his phone. Dkt. 123. Class Counsel successfully defended against this counterclaim, and RMG voluntarily withdrew it on May 1, 2014, after Class Counsel filed a motion for summary judgment. Dkt. 191.

Heavily contested proceedings continued in this action after the case was reassigned from Judge Zagel to this Court on November 18, 2013, and discovery disputes and motion practice persisted both before this Court and Magistrate Judge Rowland, to whom discovery matters were referred on March 20, 2014. Dkt. 162, 181, 184. Among other things, after discovering that the telemarketing about which this lawsuit relates continued to be made well after the suit was filed, Class Counsel successfully moved for leave to file a third amended complaint in order to capture that continued allegedly illegal calling, over Defendants' objection. Dkt. 308, 351, 443, 453, 454.

When Defendants submitted the affidavit of a third-party to suggest that Mr. Charvat was fishing for TCPA violations, Class Counsel went on the offensive, deposed the affiant, and obtained testimony confirming that the purported "opt-in" lead data Defendants claimed showed that Mr. Charvat consented to the calls at issue was fabricated. Dkt. 512-1, Pascale Dep. at 94. Similarly, when Defendants hired a third-party vendor to run a calling campaign to conduct an on-the-spot "survey" of putative class members about what they remembered from calls they received years ago without notice to Class Counsel or informing the recipients about the adversarial purpose of the call, Class Counsel sought to have the vendor's declaration stricken. Dkt. 477, 487, 489. While that motion was denied by Judge Rowland without prejudice in terms of a discovery sanction, the briefing forced Defendants to commit to having only proffered the declarant as a non-expert, lay witness, contemplating later consideration by *this* Court as to whether the survey should be admitted on evidentiary grounds. Dkt. 509 at 1.

Discovery in this case was particularly hard-fought. Class Counsel prepared and served multiple sets of written discovery requests on Defendants, worked with Mr. Charvat to respond to Defendants' requests and prepare both him and his daughter for their depositions, worked with Plaintiff's expert to ensure proper data analysis and prepare him for his deposition, and participated with defense counsel in a total of 15 depositions across four states. (Burke Decl. ¶ 15.) Class Counsel filed a total of seven motions to compel discovery in this action, Dkt. 131, 137, 159, 175, 246, 248, 303, and defended against numerous others, Dkt. 139, 179, 211, 213, 214, 241, 254, 433, 446. Defendants appealed some of Magistrate Judge Rowland's orders to this Court, requiring further briefing. Dkt. 232, 233, 236, 237, 238, 292, 294, 315, 327, 367, 430, 482, 504, 511, 512. This advocacy permitted the development of an ample evidentiary record, ensuring effective argument—and, ultimately, settlement negotiations—while protecting against

overreaching or improper discovery. The more than 570 docket entries in this case evidence Class Counsel's zealous advocacy on behalf of the class; indeed, between March 2014 and August 2016, Magistrate Judge Rowland held over *30 discovery hearings.*

With discovery completed, Plaintiff initiated class certification briefing on May 16, 2016. Dkt. 492. This, too, was heavily argued, with the parties submitting thousands of pages in briefing and exhibits, along with multiple motions to exclude the other side's expert or other evidence. Dkt. 492, 520, 521, 530, 531, 547, 548, 551, 553. Several months later, the parties decided to discuss the possibility of class-wide settlement, and met for an all-day mediation with Bruce Friedman of JAMS in Miami, Florida, on March 18, 2017, preceded by the submission of mediation briefs. (Burke Decl. ¶ 15.) The parties failed to reach a settlement, but through continued, arms' length negotiations between counsel for the parties over subsequent months, they ultimately reached the instant Settlement now before the Court. (Burke Decl. ¶ 15.)

**B.**    **<u>The Settlement</u>**

The Settlement requires Defendants to pay between $7,000,000 and $12,500,000 for the benefit of a Settlement Class defined as:

> [A]ll Persons in the United States who were the owner, subscriber or user of residential or cellular telephone numbers located in the RMG Defendants' dialer databases and who received pre-recorded telemarketing calls from the RMG Defendants, which referred to the trade names of any of the Cruise Defendants between July 23, 2009 through March 8, 2014. The class is limited to those phone numbers contained in the Call Records of the RMG Defendants as defined in the Agreement.

> Excluded from the Settlement Class are the following: (i) any trial judge that may preside over this Action; (ii) the Cruise Defendants; (iii) any of the Released Parties; (iv) Class Counsel and their employees; (v) the immediate family of any of the foregoing persons; (v) any member of the Settlement Class who has timely submitted a Request for Exclusion by the Objection/Exclusion Deadline; (vi) any person who has previously given a valid release of the claims asserted in the Action; and (vii) persons who received or may have received a call or calls

referencing the goods and services of any of the Cruise Defendants, but which were not made by Defendant RMG (a/k/a "Travel Services").

Dkt. 569-1, Agr. ¶ 2.46 (spacing provided). The Settlement requires Defendants to create a non-reversionary common fund of at least $7,000,000, or up to $12,500,000, as needed to pay the amount of all Approved Claims, Settlement Administration Expenses, any Incentive Award to Mr. Charvat, and Class Counsel's attorneys' fees and costs. *Id.* ¶¶ 2.49, 4.2. Settlement Class Members may recover up to $300 per call, with a cap at three calls, on any of their phone numbers that are part of the Class and contained in the Call Records obtained in this case. *Id.* ¶ 2.49. Should the amount in payments exceed the $12,500,000 cap, Cash Awards to Settlement Class Members will be reduced on a *pro rata* basis. *Id.* Conversely, any of the $7,000,000 minimum remaining in the Settlement Fund after distribution will be provided to the National Consumer Law Center or another approved recipient as *cy pres*. *Id.* ¶ 4.2. Notice and administration through Kurtzman Carson Consultants LLC ("KCC") is expected to cost approximately $800,000. (Burke Decl. ¶ 15.)

Plaintiff respectfully requests that the Court approve attorneys' fees equal to one-third of the Settlement Fund,[1] plus costs of $211,193.05. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved.

---

[1]      Under the terms of the Settlement, the Settlement Fund includes not only the total amount of Approved Claims, Settlement Administration Expenses, and the amount of any incentive award, but the total of Class Counsel's attorneys' fees and costs, as well. Agr. ¶ 2.49. Thus, unless there are enough claims to cause the fund to hit the cap, Class Counsel's requested fees do not affect the amount in Cash Benefits going to individual Settlement Class members who submit Approved Claims; the amount in attorneys' fees and costs is *in addition to* the Settlement Class Recovery.

III.    **LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS**

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

In common fund cases, courts have discretion to use one of two methods to determine whether the request reflects the market rate for legal services: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

IV.    **ARGUMENT**

A.    **The Court Should Calculate Fees as a "Percentage of the Fund."**

Courts in this District routinely hold that the percentage of the fund reflects the "market rate" for TCPA class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *Aranda v. Caribbean Cruise Line,*

7

*Inc.*, No. 12-4069, 2017 WL 1369741, at \*2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, \*17 (N.D. Ill. Aug. 26, 2016) (same); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"); The overwhelming preference for the percentage-of-the-fund approach makes sense because it best reflects the way fees work in such cases. In a non-fee-shifting matter like a personal injury or TCPA case, the only way for a lawyer to be paid is through a percentage of the client's recovery. It would be nonsensical for a client to pay a lawyer hourly for a TCPA case because the fees for hourly work would quickly eat up the client's possible recovery. An even stronger case can be made where the lawyer is very experienced because the higher hourly rate would surpass the client's recovery even more quickly.

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (using percentage-of-the-fund method in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative

8

simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir.

1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y.

1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier

to establish market based contingency fee percentages than to "hassle over every item or

category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F.

Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of

determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

**B.    Counsel's Request Is Within the "Market Rate."**

The Seventh Circuit has held that courts should determine this percentage by

approximating the market rate, and in *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975-80 (7th

Cir. 2003) ("*Synthroid II*"), itself determined the "market" fee as a percentage of the *entire*

settlement fund. More recently, in *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), the

Court established a presumption for fee requests, holding that notice and administration costs

should be deducted before calculating the percentage for attorney's fees.

However, *Pearson* did <u>not</u> overrule *Synthroid II*, and did <u>not</u> purport to lower the "market

rate" for attorney's fees in consumer class actions like this one. Instead, *Pearson* held that the

calculation for *comparing* settlements must account for costs as a benefit to counsel rather than a

benefit to the class. *Pearson* holds that district courts enjoy wide discretion to award whatever

fees are reasonable and appropriate; under the *Pearson* presumption, fees in any given settlement

should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782 (emphasis added).

Here, Plaintiff's fee request falls squarely within the *Pearson* presumption: Indeed, under the terms of the Settlement, more than 98% of the Settlement Class would have to fail to submit Approved Claims in order for the *Pearson* presumption of reasonableness to *not* be met.[2] To demonstrate, the following chart identifies the impact of varying claims rates under the Settlement, assuming estimated Settlement Administration Expenses of $800,000, approximate costs of $211,000, and approval of the requested incentive award of $50,000:

| Approved Claims | Settlement Class Recovery | Attorneys' Fees (33⅓% of Fund) | Settlement Fund | *Pearson* Presumption Met? |
|---|---|---|---|---|
| 20,000 (5% claims rate) | $6,000,000 ($300 each) | $3,530,500 | $10,591,500 | Yes (Fees = 37.0% of Fees + Class Recovery) |
| 30,000 (7.5% claims rate) | $7,272,333.34 ($242.41 each) | $4,166,666.66 | $12,500,000 (ceiling) | Yes (Fees = 36.4% of Fees + Class Recovery) |
| 40,000 (10% claims rate) | $7,272,333.34 ($181.80 each) | $4,166,666.66 | $12,500,000 (ceiling) | Yes (Fees = 36.4% of Fees + Class Recovery) |

The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *Synthroid I*, 264 F.3d at 719). Other factors are relevant, as well, including the risk counsel

---

[2]     Under the Court's preliminary approval order, implementation of the Notice plan commences the day of this filing; hence, data regarding the claims rate does not yet exist. Dkt. 576 at 5. Plaintiff will submit supplemental claim results closer to the date of the Final Approval Hearing.

undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

### 1.    The Fee Comports with the Contract between Plaintiff and Counsel.

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiff and his counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff entered into a retainer agreement with Class Counsel that reflects this fee range, 33⅓%, as up to 40% is normal in consumer TCPA cases in this District. (Burke Decl. ¶ 14.) Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

### 2.     The Requested Fee Reflects the Fees Awarded in Other Settlements.

#### a.     Pre-Pearson Percentage of the Fund Settlements

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. Some TCPA cases where this happened are as follows: *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill.

Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

Some other, non-TCPA cases where one-third of the entire fund was awarded, include: *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 WL 11558, at *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

13

> b.   *Post-Pearson: The Pearson Presumption Did Not Alter the Market Rate for Fees.*

The fee award requested here – 36.5% or less for anything more than a 6% claims rate, after deducting administration costs, expenses, and any service award – represents the post-*Pearson* market price, and is therefore reasonable. That the rate is within the market is reflected in the following fees approved by judges in this District in TCPA cases since *Pearson*:

- 36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

- 33%: *Charvat v. AEP Energy, Inc.*, No. 14-cv-03121, Dkt. No. 44, (N.D. Ill. November 20, 2015) (Zagel, J.).

- 38% of fund minus expenses, notice/admin costs, and service award: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.).

- 36% of fund minus notice/admin costs and service award: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.).

- 33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.).[3]

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL

---

[3]   The calculations here are for the first $10 million of the settlement. To the extent that these settlements exceeded $10 million, some of the Courts used a diminishing sliding scale.

1402018 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).[4] Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

### 3. Other Factors Support the Requested Fee.

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

#### a. Risk of Nonpayment

From changing regulatory precedent and Supreme Court jurisprudence, to the inability to establish an absence of predominating individualized issues sufficient for certification of a litigation class, Class Counsel faced substantial risk and uncertainty at the outset of this action that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk supports the requested fee award.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic

---

[4]    *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions, but such information is "basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed in July of 2012, the Court must look at the risks associated with the case on that date.

There was no guarantee that the Cruise Defendants might be held vicariously liable for the calls in this case; the *Dish* ruling was issued on May 9, 2013, nine months after the case was

16

filed. Indeed, courts were divided before that time as to whether vicarious liability attaches for telemarketing calls like those at issue here. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) ("[C]ourts have reached different conclusions about whether an entity on whose behalf a call is made can be liable under the [TCPA], announcing different measures for determining whether an independent contractor or an agent acts on behalf of a company."); *compare Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1243 (S.D. Fla. 2013) ("Congress chose to provide liability only for those who 'make' calls in violation of the TCPA."), *rev'd in part*, 768 F.3d 1110 (11th Cir. 2014), *with Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878 (Md. App. Ct. 2001) ("[T]he existence of an independent contractor relationship ... would not, in itself, insulate [defendant] from liability under the TCPA.").

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite that contentious class discovery would likely be required, with not only the several Defendants but also third parties who may have participated in making the calls at issue. Class Counsel also accepted the possibility that, given the class period going back several years before the suit was filed, and the fact that businesses often purge their call records on a regular basis, necessary class call data would likely be difficult to obtain or even destroyed, potentially obliterating any ability to identify class members and ultimately obtain class-wide relief.[5]

Moreover, even assuming sufficient discovery could be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification. This is a very real concern, as, for example, courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit*

---

[5] This concern proved to be well-founded: Defendants used the absence of historic call recordings in this case as a basis for arguing against class certification on an adversarial basis. Dkt. 520 at 29-30.

*Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA

action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same),

with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill.

Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view

that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*,

302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

And throughout much of this litigation, the FCC was considering numerous petitions,

many of which were made by industry advocates urging the FCC to loosen prohibitions against

robocalls like the ones at issue in this case, and the process before the FCC can be unpredictable.

For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior

orders that fax advertisements must contain specific language explaining how recipients can

"opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file

petitions with the FCC—a wholly unexpected and incongruous result from the consumer

perspective.[6] In fact, Judge Zagel stayed this case as to the Cruise Defendants while the FCC

considered the *DISH Network* petition regarding vicarious liability, a ruling ultimately made in

consumers' favor on May 9, 2013.[7] Dkt. 117. On July 10, 2015, the FCC also released an

omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, such as

consent under the statute.[8] And then there were the overhanging *Spokeo* and *Campbell-Ewald

Co.* cases before the Supreme Court affecting standing and defendants' ability to "pick-off"

named plaintiffs through a settlement offer or Rule 68 offer of judgment.[9] Any of these

---

[6]     *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.
[7]     See https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf.
[8]     *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.
[9]     *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Campbell-Ewald Co., v. Gomez*,
136 S. Ct. 663 (2016).

regulatory or legal proceedings could have had severe, negative impact on Plaintiff's case or the ability of Class Counsel to recover *any* compensation or expenses reimbursement for their years of prolonged advocacy on behalf of the Class in this matter.

Success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, or counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff). The risk was real. As detailed in the accompanying declarations of counsel, plaintiffs' lawyers lose TCPA cases regularly, both through summary judgment and through denial of class certification. (Burke Decl. ¶ 13); *see, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014) (denying class certification in TCPA action); *Fitzhenry v. ADT Corp.,* No. 14-80180, 2014 WL 6663379, at *8 (S.D. Fla. Nov. 3, 2014) (order denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. 11-718, 2014 WL 943445, at *1 (D. Md. Jan. 30, 2014).

One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class. Those facts are not (and cannot be) known by plaintiffs' counsel *ex ante*, and typically require contentious discovery and litigation before ever

19

becoming known. This case is no different; Class Counsel engaged in contested motion practice during discovery in an effort to determine the scope of the class. *E.g.,* Dkt. 175, 186. TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data). And, as this Court knows, non-settlement class certification in this case was particularly adversarial, involving thousands of pages of briefing and multiple ancillary motions. Dkt. 492, 520, 521, 530, 531, 547, 548, 551, 553. While Class Counsel were successful in fighting off dispositive motions by Defendants, even if the class was certified, success at trial was far from guaranteed.

Plaintiff believes that he would have prevailed on these issues, but success was by no means assured. Litigating these issues against Defendants would have risked recovering nothing for the class, and would have required significant additional expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would not be compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d at 1035–35 (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green*, 2010 WL 4628734, at *5 (granting summary judgment against TCPA plaintiff).

That risk was meaningful. Of course, the facts and circumstances of every case are different and must be individually considered and separately analyzed, but it bears noting that Class Counsel have lost a number of TCPA class actions without any recovery for the class or

receiving any compensation for their fees or costs. (Burke Decl. ¶ 13; McCue Decl. ¶ 12; Broderick Decl. ¶ 12; Paronich Decl. ¶ 9.)  To be sure: Class Counsel do not accept representation for cases they do not believe they will prevail in, but litigation is an uncertain and risky business, and those losses demonstrate such. In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% fee award in TCPA class settlement, where some class members may have agreed to be called, there were potential manageability issues in relation to the ability to determine from defendants' records whether class members consented, and FCC petitions similarly at issue in this case potentially could have affected the plaintiffs' claims).

### b.      Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial discovery, and adversarial negotiations to achieve a $7 to $12.5 million Settlement Fund for the benefit of the Settlement Class further supports the requested fee award.  *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after five years of arduous litigation. Each claimant will receive $300 for each of up to three telemarketing calls per phone number—an excellent result given that the TCPA itself provides for base statutory damages of $500 per violation without any fee shifting. Agr. ¶ 2.49; 47 U.S.C. § 227(b)(3). The Settlement also greatly exceeds recoveries in many other TCPA settlements.  Indeed, in *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-494 (N.D. Ill. 2015), the court approved $30 per claimant, saying it was within the range of approved TCPA settlements, citing *In re Capital One Tel. Consumer*

*Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (approving $34.60 per claimant), and *Rose v. Bank of Am. Corp.*, No. 11-2390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving recovery of between $20-$40 per claimant).

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. (Burke Decl. ¶¶ 2-10; McCue Decl. ¶¶ 3-9; Broderick Decl. ¶¶ 3-9; Paronich Decl. ¶¶ 3-6.) Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the outstanding settlement obtained for the class, and the half a decade spent in intense, adversarial litigation, zealously advocating on behalf of the class and Mr. Charvat, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

c.     <em>Stakes of the Case</em>

The stakes of the case further support the requested fee award. This case involves millions of Settlement Class Members who allegedly received unsolicited prerecorded telemarketing calls from RMG for the benefit of the Cruise Defendants. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as here each class member only received a small number of these telemarketing calls. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to the beginning of the class period, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance

22

of Class Counsel, the requested fee is reasonable and should be granted.

## V. <u>CONCLUSION</u>

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel attorneys' fees in the amount of one-third of the Settlement Fund, as well as a $211,193.05 reimbursement of their out-of-pocket costs.

Respectfully submitted,

PHILIP CHARVAT, on behalf of himself and others similarly situated

Dated: August 7, 2017

By: _/s/ Alexander H. Burke_____

Alexander H. Burke
Email:  aburke@burkelawllc.com
Daniel J. Marovitch
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Edward A. Broderick
Email:  ted@broderick-law.com
Anthony I. Paronich
Email:  anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone:  (617) 738-7080
Facsimile:  (617) 830-0327

Matthew P. McCue
Email:  mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone:  (508) 655-1415
Facsimile:  (508) 319-3077

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2017, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Alexander H. Burke*