**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Philip Charvat, on behalf of himself and others similarly situated, | ) ) ) | Case No. 1:12-cv-05746 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| Elizabeth Valente, Resort Marketing Group, Inc., Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., NCL (Bahamas) Ltd., | ) ) ) ) ) | Hon. Judge Andrea R. Wood Hon. Mag. Judge Mary Rowland |
| Defendants. | ) ) | |

**PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS
<u>AND INCORPORATED MEMORANDUM IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND SETTLEMENT ................................................................2

     A.     Background .................................................................................................2

     B.     Settlement ...................................................................................................7

III.  LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS ..........................8

IV.  ARGUMENT .........................................................................................................9

     A.     The Court Should Calculate Fees as a "Percentage of the Fund." ............9

     B.     Counsel's Request Is Within the "Market Rate." ...................................11

           1.     The Fee Comports with the Contract between Plaintiff and Counsel........12

           2.     The Requested Fee Reflects the Fees Awarded in Other Settlements. ......13

           3.     Other Factors Support the Requested Fee.................................................16

                 a.     Risk of Nonpayment ....................................................................16

                 b.     Quality of Performance and Work Invested ................................22

                 c.     Stakes of the Case ........................................................................23

     C.     A Lodestar Cross-Check Supports the Fee Request. ..............................23

V.    CONCLUSION....................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................... 14

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ............................................................................... 9

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12-4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) ...................................... 9

*Balschmiter v. TD Auto Fin. LLC*,
303 F.R.D. 508 (E.D. Wis. 2014) ......................................................................... 19

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
480 F. Supp. 1195 (S.D.N.Y. 1979) ...................................................................... 15

*Bickel v. Sheriff of Whitley Cnty*,
No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ................................ 14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................... 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................ 8

*Brey Corp. v. LQ Mgmt. LLC*,
No. 11-718, 2014 WL 943445 (D. Md. Jan. 30, 2014) ......................................... 18

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ......................................................................................... 21

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) ................................................. 14

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) .............................................................................. 20

*City of Greenville v. Syngenta Corp Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ................................................................... 14

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) .................................... 9

ii

*Cummings v. Sallie Mae*,
    No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) ............................................ 13

*Donaca v. Dish Network, LLC.*,
    303 F.R.D. 390 (D. Colo. 2014) ....................................................................... 18

*Fitzhenry v. ADT Corp.*,
    No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ................................ 18

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ...................................................................... 10, 17

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ......................................................................... 10

*Green v. DirecTV, Inc.*,
    No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ................................ 18, 21

*Greene v. Emersons Ltd.*,
    No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) ..................................... 15

*Gusman v. Comcast Corp.*,
    298 F.R.D. 592 (S.D. Cal. 2014) ........................................................................... 19

*Hanley v. Fifth Third Bank*,
    No. 12-1612 (N.D. Ill.) (Dkt. No. 87) ................................................................... 13

*Holtzman v. CCH*,
    No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33) ......................................... 13

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) ........................................................................... 15

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) ............................................................ 18, 21

*In re Bankcorp. Litig.*,
    291 F.3d 1035 (8th Cir. 2002) .............................................................................. 14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................. 9, 16

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997) ..................................................................... 15

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................................ 10

iii

*In re Dairy Farmers of Am., Inc.*,
  MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015)...................................................... 14

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
  No. 09-7670, 2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ...................................................... 9

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................................... 15

*In re Synthroid Mkt. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ................................................................................ 8, 11, 12, 17

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) ................................................................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989).......................................................................................... 10

*Jamison v. First Credit Servs.*,
  290 F.R.D. 92 (N.D. Ill. 2013)........................................................................................... 19, 21

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................................................. 12, 17

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)................................................................................... 10, 11, 14

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  944 F. Supp. 2d 1226 (S.D. Fla. 2013) ................................................................................... 20

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) .............................................................................................. 12

*Martin v. Dun & Bradstreet, Inc.*,
  No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) ................................................................ 13

*McCue v. MB Fin., Inc.*,
  No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ....................................................... 14

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ............................................................................................... 2, 11

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
  No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)..................................................... 12

iv

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ...................................................... 19

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) ...................................................... 13

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ...................................................... 17

*Spano v. The Boeing Co.*,
No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) ...................................................... 14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...................................................... 21

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ...................................................... 8, 16, 17, 22

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) ...................................................... 12, 14

*Van Gemert v. Boeing Co.*,
516 F. Supp. 412 (S.D.N.Y. 1981) ...................................................... 15

*Will v. Gen. Dynamics Corp.*,
No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...................................................... 14

*Worsham v. Nationwide Ins. Co.*,
772 A.2d 868 (Md. App. Ct. 2001) ...................................................... 20

*Wright v. Nationstar Mortg. LLC*,
No. 14-1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016) ...................................................... 9

*Zolkos v. Scriptfleet, Inc.*,
No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ...................................................... 14

## <u>Statutes</u>

47 U.S.C. § 227 ...................................................... 1, 2

47 U.S.C. § 227(b)(1) ...................................................... 2

## I.    <u>INTRODUCTION</u>

On July 6, 2017, this Court preliminarily approved a proposed class action settlement between Plaintiff Philip Charvat and Defendants Resort Marketing Group, Inc. and its principal, Elizabeth Valente (collectively, "RMG"), and Carnival Corporation & PLC ("Carnival"), Royal Caribbean Cruises, Ltd. ("Royal"), and NCL (Bahamas) Ltd. ("Norwegian") (collectively, the "Cruise Defendants"). Dkt. 576. Based on the claims rate, the Settlement will require Defendants to pay $12,500,000 into a common fund for the benefit of millions of consumers to whom RMG made prerecorded telemarketing calls referencing the Cruise Defendants, in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

Class Counsel have zealously prosecuted Plaintiff's claims for over six years, achieving the Settlement only after extensive first and third-party discovery and heavily-contested motion practice, including motions to dismiss and compel, tens of thousands of pages of discovery, and thousands of pages of class certification briefing. The Settlement was reached only after an in-person mediation, followed by months of further negotiations between counsel for the parties.

As compensation for the substantial benefit conferred upon the Settlement Class and six years of grueling work, Class Counsel respectfully move the Court for an award of attorneys' fees of $3,150,000—equal to one-third of the Settlement Fund exclusive of Settlement Administration Expenses and any Incentive Award. This request is well within the range of reasonableness, and represents a more than $1 million reduction in the intended fee request identified in the Class Notice, which will help offset unexpected additional notice costs for the benefit of the Class. Class Counsel also seek reimbursement of $207,548.05 in out-of-pocket costs. This request should be approved because it (1) represents the market rate for this type of settlement and is in line with the Seventh Circuit's directive in *In re Synthroid*, and (2) is

reasonable and appropriate in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case.

Counsel originally requested one-third of the gross settlement amount. Dkt. 579. However, the circumstances surrounding this Settlement have changed since that filing, which was made before word of this Settlement "went viral." Because of the unanticipated (and sometimes inaccurate) notoriety of this Settlement, the administrative costs have more than tripled from the originally-anticipated $800,000, to approximately $3,000,000. Such circumstances have caused Counsel to revise their fee request to ask for one-third of the net settlement, pursuant to the formula promulgated in *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), and *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

## II.    BACKGROUND AND SETTLEMENT

### A.    Background

This case concerns alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating telemarketing calls using an artificial or prerecorded voice without prior express consent. 47 U.S.C. § 227(b)(1).

Specifically, beginning in February 11, 2011, Defendant RMG (a/k/a "Travel Services") repeatedly called Plaintiff's phone with a prerecorded message informing Mr. Charvat that he had been "selected" to receive a cruise with the Cruise Defendants. Dkt. 463, 3d Am. Compl. ¶ 98, 104, 109, 116, Ex. 7. Mr. Charvat had not consented to receive these prerecorded-voice calls from Defendants. *Id.* ¶ 123. Rather, these were unsolicited telemarketing calls promoting Cruise Defendant cruises, made as part of a widespread robocalling campaign to consumer phone numbers purchased through third parties. *Id.* ¶ 84; Dkt. 492 at 14.

Plaintiff Charvat filed this action on July 23, 2012, and hard-fought litigation proceeded

2

for years to follow. After Plaintiff amended his complaint on September 25, 2012, the Cruise Defendants moved to dismiss and to stay discovery. Dkt. 23, 26, 30, 32, 37. Class Counsel responded to the motions to dismiss and moved for leave to file a second amended complaint, which Defendants opposed. Dkt. 46, 47, 52. After Judge Zagel—to whom this case was originally assigned—granted leave to amend, Defendants again filed motions to dismiss, requiring Class Counsel to engage in further briefing. Dkt. 61, 66, 78, 92, 96, 104, 108, 112. On April 11, 2013, Judge Zagel stayed the case as to the Cruise Defendants pending the FCC's anticipated declaratory ruling regarding vicarious liability issues in *In re Joint Pet. by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50 (FCC), and Class Counsel ultimately succeeded in defending against Defendants' dispositive motions after the FCC ruled in consumers' favor in May 2013. Dkt. 117, 141, 143. It is worth noting that Plaintiff Philip Charvat was the consumer who prosecuted the *Dish* action in the FCC on behalf of consumers, that Mr. Charvat was represented by Class Counsel team member Matthew McCue through a substantial portion of the *Dish* proceedings, that these efforts had a significant impact on this litigation (being the reason Defendants' motion to dismiss was denied), and was a real win for Americans who hate robocalls, generally.

On May 3, 2013, Defendants RMG and Valente filed answers to Plaintiff's complaint, along with a counterclaim by RMG against Plaintiff Charvat, personally, based on allegations that he violated Illinois law by recording the prerecorded-voice call RMG placed to his phone. Dkt. 123. Class Counsel successfully defended against this counterclaim, and RMG voluntarily withdrew it on May 1, 2014, after Class Counsel filed a motion for summary judgment. Dkt. 191.

Heavily contested proceedings continued in this action after the case was reassigned from Judge Zagel to this Court on November 18, 2013, and discovery disputes and motion practice

3

persisted both before this Court and Magistrate Judge Rowland, to whom discovery matters were referred on March 20, 2014. Dkt. 162, 181, 184. Among other things, after discovering that the telemarketing at issue continued post-suit, Class Counsel successfully moved for leave to file a third amended complaint to capture that continued allegedly illegal calling, over Defendants' objection. Dkt. 308, 351, 443, 453, 454. When Defendants submitted the affidavit of a third party to suggest that Mr. Charvat was fishing for TCPA violations, Class Counsel went on the offensive, deposed the affiant, and obtained testimony confirming that the purported "opt-in" lead data Defendants claimed showed that Mr. Charvat consented to the calls was fabricated. Dkt. 512-1, Pascale Dep. at 94. Similarly, when Defendants hired a third party to run a calling campaign to conduct an on-the-spot "survey" of putative class members on what they recalled from calls they received years ago without notice to Class Counsel or informing the recipients about its adversarial purpose, Class Counsel sought to have the vendor's declaration stricken. Dkt. 477, 487, 489. While that motion was denied by Judge Rowland without prejudice in terms of a discovery sanction, the briefing forced Defendants to commit to having only proffered the declarant as a non-expert lay witness, contemplating later consideration by *this* Court as to whether the "survey" should be admitted on evidentiary grounds. Dkt. 509 at 1.

Discovery in this case was particularly hard-fought. Class Counsel prepared and served multiple sets of written discovery requests on Defendants, worked with Mr. Charvat to respond to Defendants' requests and prepare both him and his daughter for their depositions, worked with Plaintiff's expert to ensure proper data analysis and prepare him for his deposition, and participated with defense counsel in a total of 15 depositions across four states. (McCue Decl. ¶ 14.) Class Counsel filed a total of seven motions to compel discovery in this action, Dkt. 131, 137, 159, 175, 246, 248, 303, and defended against numerous others, Dkt. 139, 179, 211, 213,

214, 241, 254, 433, 446. Defendants appealed some of Magistrate Judge Rowland's orders to this Court, requiring further briefing. Dkt. 232, 233, 236, 237, 238, 292, 294, 315, 327, 367, 430, 482, 504, 511, 512. This advocacy permitted the development of an ample evidentiary record, ensuring effective argument—and, ultimately, settlement negotiations—while protecting against overreaching or improper discovery. The more than 650 docket entries in this case evidence Class Counsel's zealous advocacy on behalf of the class; indeed, between March 2014 and August 2016, Magistrate Judge Rowland held over *30 discovery hearings.*

With discovery completed, Plaintiff initiated class certification briefing on May 16, 2016. Dkt. 492. This, too, was heavily argued, with the parties submitting thousands of pages in briefing and exhibits, along with multiple motions to exclude the other side's expert or other evidence. Dkt. 492, 520, 521, 530, 531, 547, 548, 551, 553. Several months later, the parties decided to discuss the possibility of class-wide settlement, and met for an all-day mediation with Bruce Friedman of JAMS in Miami, Florida, on March 18, 2017, preceded by the submission of mediation briefs. (McCue Decl. ¶ 14.) The parties failed to reach a settlement, but through continued, arms' length negotiations between counsel for the parties over subsequent months, they ultimately reached the instant Settlement now before the Court. (McCue Decl. ¶ 14.)

The Court preliminarily approved the Settlement at presentment on July 6, 2017. Dkt. 575. Since then, Class Counsel have actively overseen implementation of the Settlement terms in compliance with this Court's Preliminary Approval Order, Dkt. 576, including by responding to Class Member inquiries about the claims and documentation process, moving for appropriate modifications to the Settlement schedule and process in coordination with defense counsel, and by participation in seven separate hearings regarding status and implementation of the notice and other Settlement requirements. Dkt. 589, 595, 618, 619, 633, 653, 657; (Burke Decl. ¶ 12).

This case received massive media attention both locally and on the national stage, far beyond the typical TCPA class settlement.[1] While such coverage undoubtedly supplemented the already robust notice procedures this Court approved under the Settlement, *see* Dkt. 569-1, Agr. ¶¶ 7.0-7.9, the parties' inability to control the information these third-party media outlets disseminated raised concerns about consumer misunderstandings concerning the scope and nature of the Settlement: for example, by suggesting that claimants "might be owed $900" without explaining that any recovery was dependent on the number of valid claims submitted and could ultimately (and, given the high claims rate, will) be a *pro rata* share of the Settlement Fund. Thus, on September 25, 2017, in coordination with defense counsel, Class Counsel moved to modify the notice procedures and provide supplemental notice to claimants intended to undo the effect of any misunderstanding, which the Court granted on October 3, 2017. Dkt. 592, 596.

Similarly, after it became apparent that an unknown but substantial number of Indirect Notice Recipients' claims were likely fraudulent—for example, through bulk claim submissions, multiple claims on the same phone number, etc.—Class Counsel coordinated with Defendants and the Settlement Administrator to develop an e-mail notice plan and procedure to verify Indirect Notice Recipient claims through a request for supplemental documentation, which this Court approved on March 5, 2018. Dkt. 615, 620. After the Settlement Administrator identified a subset of claimants for whom e-mail notice was unavailable, on April 25, 2018, Class Counsel also moved to extend the verification period to effectuate direct postcard notice to such individuals, and to allow all claimants additional time to submit supporting documentation. Dkt.

---

[1]     *E.g.,* http://abcnews.go.com/WNT/video/class-action-lawsuit-targets-lawsuits-49260456; http://abc7ny.com/finance/heads-up-you-may-be-due-money-in-cruise-robocall-case/2314364/; http://insider.foxnews.com/2017/08/16/free-cruise-robocalls-class-action-settlement-payments-announced; http://6abc.com/finance/free-cruise-robocall-class-action-lawsuit-settled-claims-available/2317637/; http://www.miamiherald.com/news/nation-world/national/article167363227.html; http://boston.cbslocal.com/2017/08/16/free-cruise-robocall-settlement-claim/.

626. The Court granted that motion on May 2, 2018. Dkt. 634. Further, when made necessary by the sheer volume of claimant responses, Class Counsel coordinated with Defendants to seek an extension of the Court's schedule to permit the parties to complete the Settlement's claim review process, Dkt. 654, which the Court granted on June 20, 2018. Dkt. 658.

Class Counsel have also addressed Class Member questions concerning the Settlement directly, ultimately fielding over 600 inquiries, requiring Class Counsel to retain temporary staff to adequately and timely respond to Class Member questions. (Burke Decl. ¶ 12.) Class Counsel thus extended substantial efforts to ensure that Class Members' interests were zealously advanced and protected throughout this litigation and the immediate notice and claims process.

### B. The Settlement

The Settlement terms require Defendants to pay between $7,000,000 and $12,500,000 for the benefit of a Settlement Class defined as:

> [A]ll Persons in the United States who were the owner, subscriber or user of residential or cellular telephone numbers located in the RMG Defendants' dialer databases and who received pre-recorded telemarketing calls from the RMG Defendants, which referred to the trade names of any of the Cruise Defendants between July 23, 2009 through March 8, 2014. The class is limited to those phone numbers contained in the Call Records of the RMG Defendants as defined in the Agreement.

> Excluded from the Settlement Class are the following: (i) any trial judge that may preside over this Action; (ii) the Cruise Defendants; (iii) any of the Released Parties; (iv) Class Counsel and their employees; (v) the immediate family of any of the foregoing persons; (v) any member of the Settlement Class who has timely submitted a Request for Exclusion by the Objection/Exclusion Deadline; (vi) any person who has previously given a valid release of the claims asserted in the Action; and (vii) persons who received or may have received a call or calls referencing the goods and services of any of the Cruise Defendants, but which were not made by Defendant RMG (a/k/a "Travel Services").

Dkt. 569-1, Agr. ¶ 2.46 (spacing provided). The Settlement Agreement provides that Defendants will create a non-reversionary common fund of at least $7,000,000, or up to $12,500,000, as

needed to pay the amount of all Approved Claims, Settlement Administration Expenses, any Incentive Award to Mr. Charvat, and Class Counsel's attorneys' fees and costs. *Id.* ¶¶ 2.49, 4.2. Class Members had the opportunity to recover up to $300 per call, with a cap at three calls, on any of their phone numbers that are part of the Class and contained in the Call Records in this case. *Id.* ¶ 2.49. Where the amount in payments exceeds the $12,500,000 cap—as is the case here given the known claims rate—Cash Awards to Settlement Class Members will be reduced on a *pro rata* basis. *Id.* Any amount remaining in the Settlement Fund after distribution will be provided to the National Consumer Law Center or another approved recipient as *cy pres*. *Id.* ¶ 8.4. Notice and administration is expected to cost approximately $3 million. (McCue Decl. ¶ 17.)

Plaintiff respectfully requests that the Court approve attorneys' fees equal to one-third of the Settlement Fund exclusive of Settlement Administration Expenses and Incentive Award, or $3,150,000, plus costs of $207,548.05. As detailed below, the requested award is in line with the market rate for similar legal services in this jurisdiction, and fairly reflects the result achieved.

## III.  LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d

8

712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

In common fund cases, courts have discretion to use one of two methods to determine whether the request reflects the market rate for legal services: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *Am. Art China, Co. v. Foxfire Printing & Pkg., Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). "[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670, 2011 WL 13257072, at *3 (N.D. Ill. Nov. 30, 2011).

## IV.    ARGUMENT

Class Counsel's requested fee is reasonable and within the market rate, whether calculated through the percentage-of-the-fund or through lodestar cross-check. Consequently, the requested fees and costs should, respectfully, be awarded, as further set forth herein.

### A.    The Court Should Calculate Fees as a "Percentage of the Fund."

Courts in this District routinely hold that the percentage of the fund reflects the "market rate" for TCPA class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a

9

percentage of the recovery, consistent with the normal practice in consumer class actions"). The preference for the percentage-of-the-fund approach makes sense because it best reflects the way fees work in such cases. In a non-fee-shifting matter like a personal injury or TCPA case, the only way for a lawyer to be paid is through a percentage of the client's recovery.

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why it more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (using percentage-of-the-fund method in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998). Thus, here, where Class Counsel has secured a non-reversionary, common fund TCPA class settlement for the benefit of the Class, fees should be determined on a percentage-of-the-fund basis.

10

### B.      Counsel's Request Is Within the "Market Rate."

The Seventh Circuit has held that courts should determine this percentage by approximating the market rate, and in *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975-80 (7th Cir. 2003) ("*Synthroid II*"), itself determined the "market" fee as a percentage of the *entire* settlement fund. More recently, in *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), the Court established a presumption for fee requests, holding that notice and administration costs should be deducted before weighing the percentage for attorney's fees.

However, *Pearson* did <u>not</u> overrule *Synthroid II*, and did <u>not</u> purport to lower the "market rate" for attorney's fees in consumer class actions like this one. Rather, *Pearson* holds that district courts enjoy wide discretion to award whatever fees are reasonable and appropriate; under the *Pearson* presumption, fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782 (emphasis added).

Here, Plaintiff's fee request falls squarely within the *Pearson* presumption: Class Counsel's requested fee award, $3,150,000, is 33⅓% of the total of requested attorneys' fees plus anticipated direct Settlement Class benefits—well under the 50% deemed presumptively reasonable under *Pearson*.[2]

The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *Synthroid I*, 264 F.3d at 719). Other factors are relevant, as well, including the risk counsel

---

[2]      $3,150,000 Fee Award ÷ ($3,150,000 Fee Award + ($12,500,000 Settlement Fund - $3,000,000 Estimated Settlement Administration Expenses - $3,150,000 Fee Award - $50,000 Incentive Award)) = roughly 0.3333

undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

### 1. The Fee Comports with the Contract between Plaintiff and Counsel.

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiff and his counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled before trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff entered into a retainer agreement with Class Counsel that reflects this fee range, and has submitted evidence that between 33⅓% and 40% is the market rate in consumer TCPA cases in this District. (McCue Decl. ¶ 13; Burke Decl. ¶ 17.) Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*. *Taubenfeld*, 415 F.3d at 599.

### 2. The Requested Fee Reflects the Fees Awarded in Other Settlements.

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek*, 311 F.R.D. at 493–94 (citation omitted). Here, Class Counsel's request for fees totaling one-third of the Settlement Fund exclusive of Settlement Administration Expenses and any Incentive Award—or approximately 25% of the *entire* Settlement Fund—finds support in numerous other decisions. Some TCPA cases approving fees in this range from this District are as follows: *Charvat v. AEP Energy, Inc.*, No. 14-3121, Dkt. No. 44 (N.D. Ill. November 20, 2015) (awarding fees in TCPA class action settlement of one-third total Settlement Fund) (Zagel, J.); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215, Dkt. 63 (N.D. Ill. Jan. 16, 2014) (one-third of total payout) (Martin, J.); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (Gottschall, J.) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, Dkt. 243 (N.D. Ill. June 21, 2013) (Bucklo, J.) (one-third of the fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959, Dkt. 116 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (one-third of settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (one-third of fund plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776, Dkt. 100 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953, Dkt. 146 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156, Dkt. 225 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (same); *CE Design, Ltd. v.*

13

*Exterior Sys., Inc.*, No. 07-66, Dkt. 39 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (same).

Some other, non-TCPA cases supporting the reasonableness of Class Counsel's fee request include: *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33⅓% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (33.33% of the fund);[3] *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in N.D. Ill. where counsel were awarded fees amounting to 30–39% of settlement fund); *In re Ky. Grilled Chicken*, 2011 WL 13257072, at *5 (approving 32.7% of common fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price," citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of settlement

---

[3]     *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions, however such information is "basically non-existent" in a TCPA case like this one. *Kolinek*, 311 F.R.D. 501.

fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 WL 11558, at *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. 20th Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

Post-*Pearson*, some courts in this Circuit have employed a percentage-of-the-fund analysis that wholly excludes costs and any incentive award from the calculation under *Pearson*, while incorporating a percentage "risk adjustment" above the 30% the Seventh Circuit approved in *In re Synthroid Mktg. Litig.*, 325 F.3d at 979. *See, e.g., Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (awarding 38% of fund minus expenses, notice/admin costs, and service award) (Shah, J.); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (awarding 36% of fund minus notice/admin costs and service award) (Kennelly, J.); *Fulton Dental, LLC v. Bisco, Inc.*, 1:15-cv-11038, Dkt. No. 71 (N.D. Ill. Mar. 7, 2018) (Chang, J.) (awarding one-third of total settlement in TCPA junk fax case); *but see Castillo v. Noodles & Co.*, No. 16-3036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (finding, post-*Pearson*, that "Plaintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois.") (Wood, J.). As discussed below, from the outset and over the past half-decade this case has been litigated, Class Counsel undertook substantial risk that they would ultimately achieve nothing for their tireless efforts on behalf of the Class. As such,

Class Counsel's request for fees of one-third of the Settlement Fund exclusive of Settlement Administration Expenses and any Incentive Award—or about 25% of the overall Fund, itself—is not only presumptively reasonable under *Pearson*; but the modest 3⅓% risk adjustment Class Counsel seek above 30% is fully supported given the substantial risk undertaken. *See In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% fee award for first $10 million in TCPA class settlement); *Smith v. State Farm Mut. Auto. Ins. Co.*, 1:13-cv-2018, Dkt. No. 338 (N.D. Ill. Dec. 8, 2016) (St. Eve, J.) (awarding one-third of settlement amount after admin costs deducted). This is an extraordinary case that, respectfully, warrants comparable compensation.

In sum, Class Counsel's requested fee reflects fees approved by other courts in TCPA and other class cases in this Circuit. Consequently, the requested fee award is reasonable, and should be approved.

### 3. Other Factors Support the Requested Fee.

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

#### a. *Risk of Nonpayment*

From changing regulatory precedent and Supreme Court jurisprudence, to the inability to

establish an absence of predominating individualized issues sufficient for certification of a litigation class, Class Counsel faced substantial risk and uncertainty at the outset of this action that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk supports the requested fee award.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case,

not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed in July of 2012, the Court must look at the risks associated with the case on that date.

Here, success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating risked recovering nothing for the class, Plaintiff, or counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff). This risk was real. As detailed in the accompanying declarations of counsel, plaintiffs' lawyers lose TCPA cases regularly, both through summary judgment and through denial of class certification. (Burke Decl. ¶ 16); *see, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014) (denying class certification in TCPA action); *Fitzhenry v. ADT Corp.,* No. 14-80180, 2014 WL 6663379, at *8 (S.D. Fla. Nov. 3, 2014) (order denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. 11-718, 2014 WL 943445, at *1 (D. Md. Jan. 30, 2014).

For instance, Class Counsel pursued this action without knowing the size and scope of the class—information solely in the possession of Defendants and their vendors—and

18

anticipating (correctly) that identifying such information would require extensive, contentious discovery. *E.g.,* Dkt. 175, 186. TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data). Similarly, Class Counsel also accepted the possibility that, given the class period going back several years before the suit was filed, and the fact that businesses often purge their call records on a regular basis, necessary class call data would likely be difficult to obtain or even destroyed, potentially obliterating any ability to identify class members and ultimately obtain class-wide relief.[4]

Moreover, even assuming sufficient discovery could be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification. This is a very real concern, as, for example, courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same). As this Court knows, non-settlement class certification was particularly adversarial here, involving thousands of pages of briefing and multiple ancillary motions. Dkt. 492, 520, 521, 530, 531, 547, 548, 551, 553. A ruling denying certification would limit the case to Plaintiff's individual claims, which, given the TCPA's limited damages and lack of statutory fee shifting, would not permit counsel to be compensated

---

[4]     This concern proved to be well-founded: Defendants used the absence of historic call recordings in this case as a basis for arguing against class certification on an adversarial basis. Dkt. 520 at 29-30.

for their time and expenses even upon later success on the merits. 47 U.S.C. § 227(b)(3).

And even if the class were certified, success at trial was far from guaranteed. In fact, it wasn't even settled at the time of filing whether the Cruise Defendants *could* be held vicariously liable for the calls in this case: Before the FCC's *Dish* ruling was issued on May 9, 2013—nine months after the case was filed—courts were divided as to whether vicarious liability attaches for telemarketing calls like those at issue here. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) ("[C]ourts have reached different conclusions about whether an entity on whose behalf a call is made can be liable under the [TCPA], announcing different measures for determining whether an independent contractor or an agent acts on behalf of a company."); *compare Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1243 (S.D. Fla. 2013) ("Congress chose to provide liability only for those who 'make' calls in violation of the TCPA."), *rev'd in part*, 768 F.3d 1110 (11th Cir. 2014), *with Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878 (Md. App. Ct. 2001) ("[T]he existence of an independent contractor relationship ... would not, in itself, insulate [defendant] from liability under the TCPA.").

And throughout much of this litigation, the FCC was considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against robocalls like the ones at issue in this case, and the process before the FCC can be unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that fax advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC—a wholly incongruous result from the consumer perspective.[5] In fact, Judge Zagel stayed this case as to the Cruise Defendants while the FCC considered the *DISH*

---

[5]     *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.

*Network* petition regarding vicarious liability, a ruling ultimately made in consumers' favor on

May 9, 2013.[6] Dkt. 117. On July 10, 2015, the FCC also released an omnibus declaratory ruling

clarifying numerous relevant issues affecting the TCPA, such as consent or the definition of an

"automatic telephone dialing system" under the statute[7]—which itself was recently overturned in

part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). And then there were the overhanging

*Spokeo* and *Campbell-Ewald Co.* cases before the Supreme Court affecting standing and

defendants' ability to "pick-off" named plaintiffs through a settlement offer or Rule 68 offer of

judgment.[8] Any of these regulatory or legal proceedings could have had severe, negative impact

on Plaintiff's case or the ability of Class Counsel to recover *any* compensation or expenses

reimbursement for their years of prolonged advocacy on behalf of the Class in this matter.

      Plaintiff believes in the strength of his case, but success was by no means assured.  Class

Counsel pursued this action knowing that it would require significant expenditure of time,

money, and resources — including potentially substantial expert expenses — for which they

would not be compensated should they lose on summary judgment or fail to certify a class.  *See*

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d at 1035–35 (finding

class counsel incurred significant risk of nonpayment where, inter alia, they would have to

overcome dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying

certification in part because a class determination of consent would require "a series of mini-

trials"); *Green*, 2010 WL 4628734, at *5 (granting summary judgment against TCPA plaintiff).

      Thus, Class Counsel took on substantial risk in deciding to pursue this action, and to

continue pursuing it over the past six years.  Of course, the facts and circumstances of every case

---

[6]    See https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf.

[7]    *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

[8]    *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Campbell-Ewald Co., v. Gomez,*
136 S. Ct. 663 (2016).

are different and must be individually considered and separately analyzed, but it bears noting that Class Counsel have lost a number of TCPA class actions without any recovery for the class or receiving any compensation for their fees or costs. (*E.g.,* McCue Decl. ¶ 12; Burke Decl. ¶ 16.) To be sure: Class Counsel do not accept representation for cases they do not believe they will prevail in, but litigation is an uncertain and risky business, and those losses demonstrate such. In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award—one-third of the Settlement Fund exclusive of Settlement Administration Expenses and any Incentive Award, or about 25% of the Fund overall—is reasonable and should be granted.

### b. Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial discovery, and adversarial negotiations to achieve a $12.5 million Settlement Fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after six years of arduous litigation. The more than 650 docket entries in this action are a testament to the extraordinary efforts by Class Counsel in ultimately achieving the Settlement now before the Court, providing the class with meaningful relief that is expected to be in line with other TCPA settlements.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. (Burke Decl. ¶¶ 2-10; McCue Decl. ¶¶ 2-10; Broderick Decl. ¶¶ 2-10.) Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y.

2010). Given the outstanding settlement obtained for the class, and the half a decade spent in intense, adversarial litigation, zealously advocating on behalf of the class and Mr. Charvat, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

*c.*     *Stakes of the Case*

The stakes of the case further support the requested fee award. This case involves millions of Settlement Class Members who allegedly received unsolicited prerecorded telemarketing calls from RMG for the benefit of the Cruise Defendants.  The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as here each class member only received a small number of these telemarketing calls.  Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to the beginning of the class period, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief.  In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### C.     A Lodestar Cross-Check Supports the Fee Request.

Although "no Seventh Circuit case law suggests that a percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check[,]" *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015), a lodestar cross-check may further support the reasonableness of a fee request. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011). "A multiplier is, within the court's discretion, appropriate when counsel assume

23

a risk of non-payment in taking a suit.... [T]he multiplier is designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (remanding for multiplier determination, "as there was some probability that the suit would not result in success").

Here, the requested $3,150,000 award represents a multiplier of 1.17 of Class Counsel's lodestar of $2,685,207.50, which is well within the range of reasonableness in the Seventh Circuit. (McCue Decl. ¶¶ 20-21; Burke Decl. ¶¶ 12-14; Broderick Decl. ¶¶ 11-12); *see, e.g., Harman*, 945 F.2d at 974 (Seventh Circuit confirming that "[m]ultipliers anywhere between one and four have been approved"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (approving fee award with "multiplier of less than 2.5, which is not an unreasonable risk multiplier"); *Standard Iron Works v. ArcelorMittal*, No. 08-5214, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) ("[T]he requested lodestar 'multiplier' is approximately 1.97, which the Court finds is well within the range of reasonable multipliers awarded in similar contingent cases."). Thus, the reasonableness of Plaintiff's fee request is further supported by a lodestar cross-check, and it should, therefore, be approved.

## V.     <u>CONCLUSION</u>

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel attorneys' fees in the amount of one-third of the Settlement Fund exclusive of Settlement Administration Expenses and any Incentive Award, or $3,150,000, as well as a $207,548.05 reimbursement of their out-of-pocket costs.

Respectfully submitted,

PHILIP CHARVAT, on behalf of himself
and others similarly situated

Dated: September 10, 2018               By:  */s/ Alexander H. Burke*

Alexander H. Burke
Email:  aburke@burkelawllc.com
Daniel J. Marovitch
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288

Edward A. Broderick
Email:  ted@broderick-law.com
Anthony I. Paronich
Email:  anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone:  (617) 738-7080

Matthew P. McCue
Email:  mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone:  (508) 655-1415

*Counsel for Plaintiff and the Settlement Class*


## CERTIFICATE OF SERVICE

I certify that, on September 10, 2018, I caused the foregoing to be electronically filed

with the Clerk of the United States District Court for the Northern District of Illinois using the

CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Alexander H. Burke*