IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Phillip Charvat, on behalf of himself and others similarly situated,<br>  Plaintiff,<br><br>v.<br><br>Elizabeth Valente, Resort Marketing Group, Inc., Carnival Corporation & PLC, Royal Caribbean Cruises, Ltd., and NCL (Bahamas), Ltd.,<br>  Defendants. | Case No. 1:12-cv-5746<br><br><br><br>Hon. Judge Andrea R. Wood<br>Hon. Mag. Judge Mary M. Rowland<br><br>**JURY TRIAL DEMANDED** |

## JOINT PETITION OF OBJECTORS SHELTON, JOHNSON, AND DUNLAP FOR ATTORNEY FEES AND COSTS AND MEMORANDUM IN SUPPORT

Objectors Shelton, Johnson, and Dunlap (together, the "Successful Objectors") respectfully move this Court to award their counsel fees for having caused a reduction of over $1 million in Class Counsel's fee petition. Further, the Successful Objectors caused two free rounds of supplemental email notices (valued at $50,000 each) that positively impacted the claims rate, and they also secured a third round of opt-outs. Lastly, the Successful Objectors played a role in enticing the Cruise Defendants to contribute an additional $969,600 in costs. Accordingly, the Successful Objectors jointly move for fees in the amount of $211,588 (which they will apportion among their counsel unless the Court orders otherwise) and expenses in the amount of $1,860.70.[1]

---

[1] The Successful Objectors also have outstanding requests to reduce the incentive award for Mr. Charvat; to further reduce Class Counsel's fees; and to have more money flow to class members and less to KCC out of the residual funds. (Docs. 668, 669, 671, 672.) To the extent these still-pending objections bear fruit for the class, counsel for the Successful Objectors are further entitled to corresponding fees.

[ 1 ]

I.       **BACKGROUND.**

Over the past year, the Successful Objectors have invested a combined total of 279.98 of attorney time and 47.4 hours of paralegal time in this litigation, and they have incurred $1,860.70 in expenses and $6,925 in attorney fees for local counsel. During this same time, Class Counsel has reduced its fee petition by $1,016,666.66; the Cruise Defendants have contributed an additional $969,600.00; and KCC has agreed to slash its fees by $330,236.64 *and* not to bill an additional $100,000 for two supplemental notice emails. Thus, an additional $2,416,503.30 has essentially been added to the common fund, some of which is due to the efforts of the Successful Objectors.

      A.       <u>Objector Johnson Successfully Attacks the Low Payout Per Claimant.</u>

Last November, counsel for Objectors Shelton and Johnson (the "Ohio Objectors") provided the Court with a comprehensive analysis of the fairness of the overall settlement amount, and they argued that the market rate for similar TCPA class actions in this District is at least $30 per claimant. (Doc. 606, PageID #: 22874–82.) Objector Dunlap also attacked the low payout per claimant, suggesting that $20 to $40 was the *minimum* acceptable amount. (Doc. 607, PageID #: 22902–03.) The Ohio Objectors made an interesting gambit at the outset by expressly *disclaiming* any intention to attack Class Counsel's fees or the incentive award. (Doc. 606, PageID #: 22871, n.1.) This signaled that they would not back down unless the Cruise Defendants paid up. In January, the Ohio Objectors served discovery on the Cruise Defendants to further assess the adequacy of the settlement, putting pressure on the Cruise Defendants to justify the low payout per claimant.

[ 2 ]

The Successful Objectors' position that the amount per claimant was inadequate—and that therefore the common fund must be increased—has won out. Defendants contributed an additional $969,600.00. (Doc. 679-5, PageID #: 23482.) These same defendants currently contend that Objector Johnson *alone* has standing to pursue objections "against the amount of money to be awarded to claimants." (Doc. 681, PageID #: 23526, 23527 n.12.) And in their omnibus brief responding to all objections, Defendants invoked their additional contribution only *once*: in response to the Ohio Objectors. (Doc. 681, PageID #: 23540) ("[T]he parties and the settlement administrator have agreed to absorb [costs] in order to preserve the Settlement Fund available for disbursement to the Total Class Claimants. *Consequently, this Court should reject these media Objections by Shelton and Johnson*.") (emphasis added).

    B.    <u>The Successful Objectors Obtained an Additional $100,000 for Class Notice and an Additional Opt-Out Period.</u>

When the Parties moved to require supplemental documentation, the Successful Objectors argued that class members should be allowed another opportunity to opt out. (Doc. 617, PageID #: 22960–63.) Mr. Hilton, counsel for the Ohio Objectors, flew to Chicago to negotiate with defense counsel before the March 1, 2018 hearing and to "fill the void and advocate for the . . . class." (Doc. 635, PageID #: 23103:8–12.) He then argued at the March 6, 2018 status conference that a reminder email should be sent to claimants—a suggestion adopted by the Court as "fair" despite opposition by the Cruise Defendants. (Doc. 623, PageID #: 23009:19–13:1.) KCC waived its $50,000 fee for this service. (Doc. 679-2, PageID #: 23476.)

[ 3 ]

The reminder email proved essential to class notice. Some class members—such as Mark Dunlap—had the first round of emails go straight to "spam." (Doc. 629-1, PageID #: 23072.) Other class members did not receive the first email at all. *See, e.g.*, (Doc. 639, PageID #: 23139.) The Parties adopted the Successful Objectors' position regarding an extended opt-out period, too, allowing class members to exercise their rights, and increasing the payout for those who remained. (Doc. 626, PageID #: 23052.)

The Successful Objectors, by highlighting deficiencies in the Parties' wording of the previous notices and the need to inform class members of deadline extensions, then obtained an additional "final" round of emails. (Doc. 624; Doc. 629, PageID #: 23069.) Class Counsel acquiesced, even though the objectors contended this notice should be paid for out of its fees. (Tr., 5/1/18 Hr'g, at 29:1–6.) Once again, KCC waived its $50,000 fee. (Doc. 679-2, PageID #: 23476). The claims rate rose in response. As of late April, KCC had received "tens of thousands" of submissions. (Doc. 626, PageID #: 23052.) But after the notices, the total rose to 397,912. (Doc. 679-2, PageID #: 23472, ¶ 3.)

C.   Class Counsel Reduces Its Fee Request by Over a Million Dollars.

Objector Dunlap led the charge in attacking attorney fees, and he provided the only serious analysis of Class Counsel's original fee petition in the original group of objections last November. (Doc. 605, PageID #: 22862–63) (correctly identifying, among other arguments, that *Pearson* limits Class Counsel's recovery). Over Defendants' objections, the Court permitted the Ohio Objectors to pivot and attack attorney fees in April and May due to rising administration costs. (Doc. 629, PageID #: 23067–68); (Doc. 623, PageID #: 23017:16–23018:13).

[ 4 ]

The Successful Objectors then argued that Class Counsel should revise its fee petition. (Tr. 5/1/18 Hr'g at 37:16–22.) The Court indicated this was a "good suggestion," (*id.* at 39:7), and set a schedule for additional briefing. (Doc. 658.) The Ohio Objectors followed up with a brief clearly explaining the effect of *Pearson* and *Redman*. (Doc. 651, PageID #: 23232–34.) In response, Class Counsel amended its fee request and—following the case law outlined by the Successful Objectors—asked for a percentage of the *net* settlement fund, resulting in over a million dollars for the class. (Doc. 660, PageID #: 23258) (Class Counsel has "revise[d] their fee request to ask for one-third of the net settlement, pursuant to the formula promulgated in *Pearson* . . . and *Redman*.") Class counsel also revealed its lodestar, as the Successful Objectors had argued it should. (Doc. 651, PageID #: 23234; Doc. 660, PageID #: 23280.)

## II.    LAW.

"[G]iven the role of [objectors] in preventing cozy deals that favor class lawyers and defendants at the expense of class members, their requests for fees must not be slighted." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011). If the efforts of objectors' counsel result in "a settlement more favorable to the class," then "the objectors will receive a cash award that can be substantial." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). The Court may order the award "out of the relief awarded to the class members." *In re Trans Union*, 629 F.3d at 748. The award may also come out of class counsel's share. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 745 (7th Cir. 2018) (ordering $80,000 in payment out of class counsel's share); *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 417 (E.D. Wis. 2002).

### A. Objectors' Counsel Should Receive a Percentage of the Benefit Created.

With respect to objectors' counsel, "the equitable common-fund doctrine applies" just as it does to class counsel. *In re Sw. Airlines*, 898 F.3d at 744. "A proper attorneys' fee award is based on success obtained and expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008). In calculating an objector's fee, the Court should award a percentage of the benefit created using "the formula set forth in *Redman*." *Kaufman v. Am. Express Travel Related Servs.*, No. 07-cv-1707, 2016 U.S. Dist. LEXIS 26167, at *44–45 (N.D. Ill. Mar. 2, 2016), *aff'd*, 877 F.3d 276, 288 (7th Cir. 2017). This includes non-monetary benefits such as additional rounds of notice. *Id.*; *see also Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396–97 (D.N.J. 2012) (awarding a percentage of the value of a non-monetary benefit).

### B. To Determine the Appropriate Percentage, the Court Looks to Whether the Objector was the Primary or Joint Cause of the Benefit Created.

In practice, what percentage objectors' counsel may claim varies depends on whether the objector was primarily or "jointly" responsible for a benefit. Where an objector causes the Court to take a particular action that benefits the class, the Court may award objector's counsel a percentage based on the 30% baseline established under Seventh Circuit law. *Kaufman*, 2016 U.S. Dist. LEXIS 26167, at *44 (awarding objectors' counsel 34% of estimated $700,000 value of supplemental notice where "[b]ecause of the Intervenors' objections, the court hired [an expert] to review the notice program and ultimately to design and oversee enhancements.").

[ 6 ]

Reductions in class counsel's fees, meanwhile, follow a nuanced analysis. Where the arguments of objectors "merely expand[] upon the Court's previously expressed skepticism," and class counsel voluntarily reduces the amount of its fee petition, an award to objectors' counsel of 10% of the difference is "appropriate." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011). Where the Court would have reduced class counsel's award anyway, some courts simply award objectors their lodestar. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, No. CV-96-5238 (JG), 2004 U.S. Dist. LEXIS 8729, at *5 (E.D.N.Y. Apr. 27, 2004). Unless the record clearly reflected *beforehand* that an objector's arguments were superfluous, however, the Court should not deny fees merely because an argument has "already occurred to the judge." *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 842 F. Supp. 2d 346, 351 (D. Me. 2012) (an objector cannot "be certain" that the Court will act on concerns it has voiced).

Lastly, where objectors spur class counsel to negotiate a larger settlement, the objector is entitled to a slice of the pie as a "joint caus[e]" of the added value. *In re Trans Union*, 629 F.3d at 747. In such cases, an award to objectors' counsel of five to ten percent of the added value is justified. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 898 F.3d at 746 (10% of the value added to a renegotiated settlement was a "modest" fee request); *In re Trans Union*, 629 F.3d at 748 (where class counsel renegotiated settlement, adding $70 million to the fund, it was error to award only 3.9% to objectors' counsel rather than 5.9%); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (objector's counsel was entitled to 4.9% of additional $15 million).

**III.     ARGUMENT.**

First, the Successful Objectors should receive 30% of the additional $100,000 in measurable value that they contributed to class notice.  Second, the Successful Objectors should receive 15% of the $1,016,666.66 reduction they caused in Class Counsel's fee petition.  Third, because the Successful Objectors argued that the settlement should not be approved absent additional contributions to the common fund by the Cruise Defendants, and in response, those defendants contributed an additional $969,600, the Successful Objectors should receive 3% of this amount.

    A.    <u>The Successful Objectors Obtained a Valuable Supplemental Notice and Are Entitled to 30% of the Value Added.</u>

The Successful Objectors are responsible for the complimentary reminder email that KCC issued to 2.6 million "indirect notice" claimants on April 20, 2018 regarding the supplemental documentation process, as well as a "final" round of email notices ordered by the Court in its May 2, 2018 Order.  As evidenced by the hearing transcripts, Mr. Hilton was responsible for proposing and arguing for the reminder email—a supplemental notice which was opposed by counsel for the Cruise Defendants.

The "final" round of email notices was the brainchild of Mr. Hilton and Mr. McDonald, who together pointed out various deficiencies in the supplemental notice process.  The argument for another round of notice was ultimately adopted by the Court.  Although the Successful Objectors had argued that Class Counsel should bear the cost of the final notice, KCC ultimately swallowed this cost.  The value of these notices, as quoted by KCC, was $50,000 apiece, for a total of $100,000 in value added.

There can be no doubt that these supplemental notices "materially benefitted" the class. *Kaufman*, 2016 U.S. Dist. LEXIS 26167, at *44. Without these additional rounds of notice, some class members would not have known about their obligations to provide supplemental documentation—for instance, as attested to by Objector Dunlap, some notice emails went to "spam," whereas according to Phil Cooper, others "bounce[d] back" for any variety of reasons. (Doc. 626-1, PageID :23056–57, ¶ 6.) Further, the total number of submissions rose in response to the supplemental notices from "tens of thousands" to a grand total of 397,912 submissions.

The Successful Objectors respectfully request that they be paid 30% of the value of the supplemental notices. The situation here is like that in *Kaufman*, where "second and third rounds of notice might not have occurred absent the objections," and these notices "increased the claims rate." 2016 U.S. Dist. LEXIS 26167, at *43–44. Although the Court in that case acknowledged that "it would be disingenuous to attribute the additional . . . claims *entirely* to [objectors'] efforts," the Court still had "no doubt that counsel for Intervenors materially benefitted the class" and thus awarded 34% of the estimated value added to the class. *Id.* at *44 (emphasis added).

Obtaining the supplemental notices required counsel for the Successful Objectors to research and file briefs; overcome the Cruise Defendants' opposition; and argue at hearings (in Chicago and over the phone) on short notice. Thus, awarding objectors' counsel the 30% baseline—in recognition of the risks they took in accepting this case on a contingent basis, and their skill in obtaining effective results—is justified and in line with *Kaufman*, a decision affirmed by the Seventh Circuit.

[ 9 ]

B.    <u>The Successful Objectors Reduced Class Counsel's Fees by $1,016,666.66 and Should Receive 15% of This Amount.</u>

The Successful Objectors are responsible for Class Counsel's revised fee petition, which seeks $1,016,666.66 less in attorney fees than its original petition. This difference is explained by a point of law raised by the Successful Objectors: Under *Pearson* and *Redman*, Class Counsel is only entitled to seek a percentage of the *net* settlement fund, rather than the total settlement amount. Once the Successful Objectors fully explained the holdings of *Pearson* and *Redman*—and had prompted the Court to build into the schedule a revised attorney fee petition—Class Counsel essentially had no choice but to adopt the Successful Objector's (legally correct) analysis and ask for a lower amount.

Class Counsel would *not* have made this concession without the efforts of the Successful Objectors. As pointed out in Class Counsel's brief, in another post-*Pearson* and post-*Redman* case in this District, they petitioned for—and were awarded—a percentage of the *total* settlement, rather than the *net* settlement. (Doc. 660, PageID #: 23269–70) (citing *Charvat v. AEP Energy, Inc.*, No. 14-3121, Dkt. No. 44 (N.D. Ill. Nov. 20, 2015)). But for the participation of the Successful Objectors, Class Counsel would have had no reason to correct its fee analysis.

The Successful Objectors should receive credit for their arguments. Their "net settlement" approach, while mandated by Seventh Circuit law, is far from obvious. In fact, Class Counsel initially misread *Pearson* and included in its original fee petition a thoroughly confusing (and legally wrong) section titled "Post-*Pearson*: The *Pearson* Presumption Did Not Alter the Market Rate for Fees." (Doc. 579, PageID #: 22622.)

[ 10 ]

Further, when not aided by objectors, Courts in this District routinely grant a percentage of the total settlement rather than the net settlement. *See, e.g.*, *Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *9 (N.D. Ill. Nov. 29, 2016) (granting one third of the total settlement, without excluding incentive awards and administration fees); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 U.S. Dist. LEXIS 178977, at *8 (N.D. Ill. Dec. 23, 2016) (same). Therefore, just being familiar with *Pearson* was not enough; the Successful Objectors needed to demonstrate a deep understanding of the Seventh Circuit's holdings and develop a compelling argument.

Further, by the time the Court raised its skepticism about the amount of Class Counsel's fee award, it acknowledged that the issue was already "hotly contested" by the objectors. (Tr., 5/1/18 Hr'g, p. 27:19–25.) For this reason, *In re Puerto Rican Cabotage Antitrust Litigation*—where the objectors who convinced Class Counsel to voluntarily reduce its fee award were only awarded 10% of the difference—is distinguishable. In that case, the objectors merely "expanded" on an argument already made by the Court. 815 F. Supp. 2d at 468.

Here, nothing in the record as of November 3, 2017 (when Objector Dunlap attacked fees, Doc. 605) or as of April 29, 2018 (when the Ohio Objectors first expounded on *Pearson*, Doc. 629, PageID #: 23067–68) would have led the Successful Objectors to believe their arguments were unnecessary. Therefore, a more robust award of 15%—which is half of the 30% baseline, in recognition of the role played by the Court—is appropriate and would not result in a windfall for counsel for the Successful Objectors, who invested hundreds of hours and thousands of dollars in this case.

### C. The Successful Objectors Were a Joint Cause of Defendants' Additional $969,600 Contribution and Should Receive 3% of This Amount.

Objectors Shelton and Johnson originally objected *solely* on the basis that the amount of the settlement was too low, and that the settlement should be disapproved so that the parties could renegotiate a higher amount for the class. Although they later pivoted to target fees when administration costs rose, until that time, Mr. Hilton (their counsel) took the position that, given the high number of claimants—which had not been anticipated by the Parties—the Cruise Defendants needed to up the amount of their offer. In support of this quest, Objectors Shelton and Johnson served discovery on the Cruise Defendants to better assess whether the settlement should be approved.

The Cruise Defendants recognize that Objector Johnson—a "direct notice" postcard recipient who was a member of the so-called "*Charvat* campaigns"—had standing to pursue objections based on the amount of the settlement. This meant that if the amount per claimant were unsatisfactory to Objector Johnson, the Parties would potentially face a lengthy appeal. To up the amount per claimant, the Cruise Defendants contributed almost an additional million dollars.

Tellingly, in their omnibus brief in response to all objectors, the Cruise Defendants invoked their additional contribution exactly *once*: to respond to Objector Johnson's initial brief. Defendants are not running a charity, and when they contributed extra copper to the coffer, they did so with the aim of safeguarding the Settlement Agreement against objections. And by their own account, the *only* objector they were guarding against was Objector Johnson.

[ 12 ]

Although the Successful Objectors could—under *Levitt*, 898 F.3d at 746 and *Trans Union*, 629 F.3d at 748—seek five to ten percent of the additional contribution, they ask for a lesser amount of 3% because the Cruise Defendants agreed to pay the contribution prior to extensive litigation. Nevertheless, because the Cruise Defendants' contribution was in response to Objector Johnson's arguments, the Successful Objectors are entitled to a percentage-based fee. Their request of 3% is reasonable considering that, without the presence of Objector Johnson, the Cruise Defendants could argue that no other objector had standing to argue (and appeal) over the low payout per claimant.

D.   A Lodestar Cross-Check Validates the Requested Fee.

The Successful Objectors have spent 327.38 hours of attorney time on this matter for a lodestar of $110,128. Counsel for the Ohio Objectors has a lodestar of $71,213.50, consisting of 213.58 hours of attorney time and 14.4 hours of paralegal time. Decl. of Jonathan Hilton ("Ex. A") at ¶¶ 15–16. Douglas Harper, their local counsel, has a lodestar of $10,432, consisting of 16.3 hours of attorney time with a fair market value of $640 per hour. Decl. of Douglas Harper ("Ex. B") at ¶ 7.[2] Lacy, Price & Wagner has a lodestar of $28,482.50, consisting of 50.1 hours of attorney time and 35 hours of paralegal time. Decl. of W. Allen McDonald ("Ex. C"). Although "consideration of a lodestar check is not . . . required," *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011), timesheets are available for *in camera* review at the Court's request.

---

[2] Some of Mr. Harper's fees were actually incurred by the Ohio Objectors, who were unable to find local counsel who would accept this case on a contingency basis. Ex. A at ¶ 18. Mr. Harper provided a discounted rate of $250 per hour plus certain flat fees, for a total of $6,925. *Id.* Mr. Harper has 34 years' experience as a civil litigator, so this understates the market value of his time.

[ 13 ]

If the Successful Objectors are awarded their fee request of $211,588, then their lodestar multiplier will be roughly 1.92.  This is well within the range of reasonableness for multipliers, particularly where the work involved was complex and involved a significant risk of non-payment.  *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Multipliers anywhere between one and four . . . have been approved."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (approving fee award with "multiplier of less than 2.5, which is not an unreasonable risk multiplier").  Objectors are rarely paid for their efforts, so such a risk multiplier is entirely justified, particularly given the extraordinary results obtained.

### E.     The Successful Objectors Should Recover Their Expenses.

Objectors' counsel should recover its expenses in the amount of $1860.70.  These expenses were incurred by the Ohio Objectors, Ex. A at ¶ 17, and are quite lean compared to the benefits provided for the class.  Mr. Hilton's last-minute trip to Chicago resulted in at least $50,000 for class notice.  Further, the Ohio Objector's purchase of various hearing transcripts has allowed all parties to productively argue issues surrounding approval.  *See, e.g.*, (Doc. 681, PageID #: 23540, n.26.)  Lastly, the presence of the Successful Objectors' counsel at the Fairness Hearing later this month will allow them to further their clients' objections to the benefit of the class.

## IV.    CONCLUSION.

For the above reasons, the Successful Objectors move for $211,588 in fees and $1870.60 in expenses, to be paid out of either Class Counsel's fees or out of the relief awarded to the class members, as the Court decides.

[ 14 ]

                                                Respectfully Submitted,

Dated: October 15, 2018

                                                <u>/s/ Jonathan Hilton</u>

                                                Jonathan Hilton (Ohio 0095742)
*Admitted pro hac vice*
Tel: (614) 992-2277
Fax: (614) 427-5557
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
*Attorney for Objectors Shelton and Johnson*

<u>/s/ W. Allen McDonald</u>
W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865-246-0800
*Counsel for Mark C. Dunlap*

# CERTIFICATE OF SERVICE

    I, Jonathan Hilton, Esq., do hereby certify that on this 15th day of October, 2018, I caused true and accurate copies of the foregoing to be served via the CM/ECF system, which shall cause service upon all parties of record.

                                                                       By: <u>s/ Jonathan Hilton</u>